UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

ABSOLUTE ACTIVIST VALUE MASTER
FUND LIMITED, ABSOLUTE EAST
WEST FUND LIMITED, ABSOLUTE
EAST WEST MASTER FUND LIMITED,
ABSOLUTE EUROPEAN CATALYST
FUND LIMITED, ABSOLUTE GERMANY
FUND LIMITED, ABSOLUTE INDIA
FUND LIMITED, ABSOLUTE OCTANE
FUND LIMITED, ABSOLUTE OCTANE
MASTER FUND LIMITED, AND
ABSOLUTE RETURN EUROPE FUND
LIMITED,

CASE NO. 2:15-cv-328-FtM-29DNF

**ORAL ARGUMENT REQUESTED**

        Plaintiffs,

v.

SUSAN ELAINE DEVINE,

        Defendant.

**DEFENDANT'S MOTION FOR EXPEDITED DISCOVERY
AND RICO CASE STATEMENT**

Pursuant to Rules 16, 26, 30, 33 and 34 of the Federal Rules of Civil Procedure, Defendant Susan Elaine Devine respectfully requests that the Court (1) authorize her to engage in expedited, limited discovery in preparation for the preliminary injunction hearing and (2) order Plaintiffs to file a Racketeer Influenced and Corrupt Organizations Act ("RICO") Case Statement in aid of discovery and preparation for the preliminary injunction hearing.

On June 1, 2015, Plaintiffs filed their complaint alleging, *inter alia*, that Ms. Devine established a RICO enterprise with her ex-husband to conceal the proceeds of his alleged "penny stock scheme," where the substantive conduct with respect to the alleged scheme terminated no later than September 2007. *See* Docket Entry No. 2 (the "Complaint"). The allegations in the

Complaint are purportedly based upon a "massive investigative file" provided to Plaintiffs by Swiss authorities. *See id.* ¶ 5. The Complaint bases federal jurisdiction on alleged violations of the federal RICO statute, and also asserts state RICO claims, as well as unjust enrichment, and seeks damages, an accounting, disgorgement, and the imposition of a constructive trust. *See id.* ¶¶ 95-111. Plaintiffs also filed a motion to temporarily seal the case, which was granted the next day. *See* Docket Entry Nos. 1 & 7.

Contemporaneously with the filing of the Complaint, Plaintiffs filed an *Ex Parte* Motion for a Temporary Restraining Order and Preliminary Injunction, Limited Expedited Discovery, and Delayed Service (the "Preliminary Injunction Motion"). *See* Docket Entry No. 3. On July 1, 2015, the Court granted Plaintiffs' request for a TRO, forbidding Ms. Devine and "her officers, agents, servants, and employees" from "transferring, selling, alienating, liquidating, encumbering, pledging, leasing, loaning, assigning, concealing, dissipating, converting, withdrawing, or otherwise disposing of" any of her assets, or those of her children, located "anywhere in the world," including her primary residence in Naples, Florida. *See* Docket Entry No. 10, at 66-67. The Court stated that it would entertain an application from Ms. Devine for release of funds to pay normal living expenses and attorneys' fees. *Id.* at 68. The TRO was entered for a period of fourteen days. *Id.* at 67-68.[1]

The Court granted Plaintiffs' request for expedited discovery, ordering Ms. Devine to produce, within five days of service of the TRO, "documents sufficient to identify all assets, anywhere in the world, currently under her direct or indirect control." *Id.* at 68. The Court also granted Plaintiffs' request to depose Ms. Devine, on 48 hours' notice, within five days after she

---

[1] The Court subsequently extended the TRO for an additional 14-day period, until July 29, 2015. *See* Docket Entry No. 16.

2

provided financial disclosures. *Id.* The Court scheduled oral argument on Plaintiffs' request for a preliminary injunction on July 24, 2015. *Id.* at pp. 68-69.

Now, Plaintiffs wish to rush to a preliminary injunction hearing on July 24, 2015, and prevent Ms. Devine from mustering evidence in opposition to their injunction request. By this motion, Ms. Devine seeks limited, expedited discovery to allow her the opportunity to discover the evidence upon which Plaintiffs' claims are based, to establish the factual bases underlying Plaintiffs' claims so that Ms. Devine may confirm that those claims are not cognizable under RICO or are time-barred, and to identify the factual and legal nexus, if any, between the assets Plaintiffs seek to restrain and the unlawful conduct and harm alleged in Plaintiffs' Complaint. The narrowly-tailored discovery Ms. Devine seeks at this time, without prejudice to seek broader discovery at a later date, includes:

(1) all information received from Swiss authorities by Plaintiffs and all communications with Swiss authorities related to this action;

(2) any expert report or other evidence that Plaintiffs seek to introduce or rely upon in support of their request for a preliminary injunction, including any tracing of allegedly tainted funds and any damages study;

(3) corporate designee depositions of Plaintiffs pursuant to Fed. R. Civ. P. 30(b)(6) limited to the date of discovery of their injuries and any compensation they have received to date for the harms alleged in the complaint;

(4) the identities of the real parties in interest in this case, which relate to possible defenses of Ms. Devine; and

(5) any documents purporting to demonstrate that Ms. Devine allegedly knew that the funds she received by way of divorce were "proceeds of illegal activities" or that the divorce was a "sham."

Ms. Devine seeks an order permitting expedited discovery relevant to those issues and to the preliminary injunction hearing, including a reasonable number of interrogatories and requests for production, limited-scope depositions, and tailored third-party discovery.

Evidencing the disparity between the parties as they proceed to the preliminary injunction hearing, Plaintiffs have already announced that they will come to the hearing armed with the 219-page Swiss Report, "voluminous 'annexes,'" and documents from the Swiss Prosecutor's "massive investigative file."[2]  *See* Docket Entry No. 1 at ¶¶ 5, 26-27, 232.  Plaintiffs themselves sought expedited discovery to aid them in their argument and presentation of evidence at the preliminary injunction hearing, and the Court ordered Ms. Devine to provide Plaintiffs with detailed information "sufficient to identify all assets, anywhere in the world, currently under her direct or indirect control" and permitted Plaintiffs to take a deposition of Ms. Devine "limited [to] the identification of the assets under [her] direct or indirect control."  *See* Docket Entry No. 10 at 68, ¶ 2.

In granting Plaintiffs' *ex parte* request for unilateral, expedited discovery, this Court observed that it "has the discretion to authorize expedited discovery in aid of a preliminary injunction hearing, particularly where the discovery is narrow and essential and good cause exists."  *See* Docket Entry No. 10, at 65 (citing *ThyssenKrupp Elevator Corp. v. Hubbard*, Case No. 2:13-cv-202-FtM-29SC, 2013 WL 1953346, at *1 (M.D. Fla. May 10, 2013)).  Ms. Devine satisfies the same criteria here, and Plaintiffs cannot credibly claim prejudice from Ms. Devine's request for expedited discovery, as she will stipulate to continue the temporary restraining order (without an admission as to any of the allegations in Plaintiffs' complaint) until the preliminary

---

[2] In their Complaint, Plaintiffs state that the Swiss Prosecutor's Office provided them with "voluminous bank records," "emails sent by and to Devine," and transcripts of testimony of Ms. Devine and "certain other witnesses[]."  *See* Docket Entry No. 2 at ¶¶ 5, 26.  As it appears that Plaintiffs have only presented portions of the Swiss file which purport to support their case, Ms. Devine seeks discovery of the *entire* file of materials provided to

4

injunction hearing, thereby maintaining the *status quo* so long as funds for normal living expenses and reasonable attorneys' fees and costs are released.

In addition to expedited discovery, Ms. Devine also requests that the Court order Plaintiffs to file a RICO Case Statement to clarify and narrow the actionable allegations in Plaintiffs' Complaint, without which an analysis of Plaintiffs' likelihood of success on the merits is premature and unduly complicated. Those complications will only be compounded as the parties proceed with discovery and through trial, and now is the time to focus this matter on the alleged conduct at issue apart from the extraterritorial and third-party conduct woven theatrically throughout Plaintiffs' Complaint.

## ARGUMENT

**I.  This Court Should Grant Ms. Devine's Request for Expedited Discovery to Permit Her the Opportunity to Develop the Factual Record in Preparation for the Preliminary Injunction Hearing.**

The Federal Rules of Civil Procedure give district courts broad powers to permit expedited proceedings. *See* Fed. R. Civ. P. 16(a), 16(b), 16(c)(2)(F); *see also* Fed. R. Civ. P. 26(d), 33(a)(2), 34(b)(2)(A) (each discussing the Court's authority to alter the timing of discovery); Fed. R. Civ. P. 26(d), Advisory Committee Notes, 1993 Amendments (noting, regarding the amendment to subdivision (d), that expedited discovery is appropriate "in some cases, such as those involving requests for a preliminary injunction"). Courts routinely permit expedited discovery in the context of preliminary injunction hearings. *See, e.g.*, *ThyssenKrupp Elevator Corp. v. Hubbard*, Case No. 2:13-cv-202-FtM-29SC, 2013 WL 1953346, at *1-2 (M.D. Fla. May 10, 2013) (permitting discovery related to merits of plaintiff's claims, including nature,

---

Plaintiffs by the Swiss Prosecutor's Office, as well as all communications between Plaintiffs (and their counsel) and the Swiss Prosecutor's Office.

extent, and use of confidential information and nature and extent of customer solicitations, plaintiff's business interests).

Indeed, in granting Plaintiffs' *ex parte* request for expedited discovery in advance of the preliminary injunction hearing, this Court recognized and exercised that authority.[3] *See* Docket Entry No. 10, at 65 (citing *ThyssenKrupp*, 2013 WL 1953346, at *1). As the Court observed, "[f]actors bearing on the existence of good cause include: '*whether a motion for preliminary injunction is pending*; (2) the breadth of the requested discovery; (3) the reason(s) for requesting expedited discovery; (4) the burden on the opponent to comply with the request for discovery; and (5) how far in advance of the typical discovery process the request is made.'" *Id.* at 65-66 (*ThyssenKrupp*, 2013 WL 1953346, at *1, quoting *Biosense Webster, Inc. v. Scott*, 2013 WL 1611338, at *1 (M.D. Fla. April 15, 2013) (emphasis added)).[4]

These factors warrant the limited discovery Ms. Devine seeks here in advance of a preliminary injunction hearing.

### A. Ms. Devine's Requested Discovery Is Narrowly Tailored to Address Her Immediate Needs for the Preliminary Injunction Hearing.

Ms. Devine's proposed discovery is narrowly tailored to address her immediate need to obtain information relevant to Plaintiffs' Preliminary Injunction Motion and to develop and prepare for her presentation of evidence and argument at the preliminary injunction hearing.

In terms of the scope of the discovery Ms. Devine proposes, the vast nature of Plaintiffs' claims and the hundreds of allegations in Plaintiffs' Complaint cannot be understated. Moreover, Ms. Devine's worldwide assets have been temporarily frozen without any opportunity

---

[3] Plaintiffs themselves relied on this authority in their Preliminary Injunction Motion. *See* Docket Entry No. 3 at 24-25 & n.17 (citing authority in support of request for "expedited discovery in aid of a PI hearing").

[4] As the Court observed in *ThyssenKrupp*, the final factor is satisfied in the case of discovery related to preliminary injunction hearings because "it is earlier than typical discovery but not earlier than necessary for use at the upcoming preliminary injunction hearing." 2013 WL 1953346, at *1.

to be meaningfully heard and without regard to the expenses she faces for personal matters, for the care for her two children, and for professional expenses, including attorneys' fees for her defense. And the temporary freezing of Ms. Devine's assets has taken place without an opportunity for her to be heard on the merits of Plaintiffs' claims and the astonishing scope of the injunctive relief Plaintiffs are seeking.

Fundamental precepts of due process require that these issues, and the exchange of the information upon which Plaintiffs' have acknowledged their claims are based, be addressed well in advance of the preliminary injunction hearing. Accordingly, Ms. Devine seeks limited, expedited discovery to allow her the opportunity to discover the evidence upon which Plaintiffs' claims are based, to solidify Ms. Devine's position that the factual bases underlying Plaintiffs' claims are not cognizable under RICO, and to identify the factual and legal nexus, if any, between the assets Plaintiffs seek to restrain and the unlawful conduct and harm alleged in Plaintiffs' Complaint.

Plaintiffs' opposition to Ms. Devine's emergency motion for status conference indicates their opposition to Ms. Devine's request for any discovery. In their opposition, Plaintiffs argued that no discovery is necessary because they have complied "with Local Rule 4.05(b)(5), which provides that '[i]n addition to the summons, complaint and temporary restraining order, the papers served [by the moving party] must also include all motions, briefs, affidavits and exhibits submitted to the Court, as well as such additional affidavits or other papers upon which the moving party will rely in seeking to convert the temporary restraining order into a preliminary injunction.'" Docket Entry No. 22 at 4. Even if the term "other papers" in Local Rule 4.05(b)(5) could be read to encompass all hard-copy documentation Plaintiffs may introduce at the preliminary hearing – as opposed to just court filings – Plaintiffs do not appear to be representing

that they have produced or disclosed all information they may introduce or use at the preliminary injunction hearing – documented or undocumented, written or oral.

More importantly, Plaintiffs are not the arbiters of relevance under the Federal Rules of Civil Procedure. For example, it is clear that Plaintiffs have retained a tracing expert to compile the attachments to the complaint with respect to financial transactions. *See* Docket Entry No. 2 at Appendix 1 (Money Laundering Transactions) & Appendix 2 (Wire Fraud Transactions). It is also clear that Plaintiffs have employed or relied upon expert testimony in calculating its alleged losses. *Id.* at ¶'s 72-72. It is simply not sufficient to permit Plaintiffs to rely upon these summaries and/or reports, compiled after years of effort, without providing the reports and other supportive materials to Ms. Devine.

Moreover, Ms. Devine is entitled to not only evidence relevant to Plaintiffs' claims, but also evidence relevant to her *defenses*. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . ."). And Ms. Devine is entitled to not only evidence in Plaintiffs' possession, custody, or control, but also relevant evidence in the possession, custody, and control of third parties. Those third parties are an essential source of discoverable information given the worldwide nature of the claims and conduct alleged in Plaintiffs' complaint, and the inevitable conclusion that Plaintiffs will rely directly and indirectly upon layers of hearsay at the preliminary injunction hearing, as they appear to have done in their Complaint and Preliminary Injunction Motion. Again, an example may be instructive. Plaintiffs refer in their Complaint to a "cover letter" from Walch and Schurti that, in turn, refers in German to an opinion *not attached to the Complaint,* that Ms. Devine was part of a "sham divorce." Docket Entry No. 2, ¶ 117. Plaintiffs should not be able to rely on a cover letter with a statement in German with no support, and

8

certainly Ms. Devine should be able to ascertain the basis for the alleged statement in the cover letter.

Plaintiffs' objection to permitting Ms. Devine to engage in limited, expedited discovery is also puzzling because at the preliminary injunction hearing, it is Plaintiffs' burden to establish the likelihood of succeeding on the merits of their claims. *See* Docket Entry No. 22, at 4-5. Those merits issues include issues related to Ms. Devine's domestic conduct and knowledge – as opposed to the allegations pertaining to third parties' knowledge and conduct overseas. That information is critical because, in order to establish that their success is remotely possible, let alone likely, Plaintiffs must establish that Ms. Devine knew that the funds she received in connection with her divorce from her ex-husband Homm were "proceeds of illegal activities," that her divorce was a "sham," and that her conduct violated the U.S. laws upon which Plaintiffs base their predicate RICO acts.[5] Ms. Devine received funds from her ex-husband only as part of a divorce, and Plaintiffs' Complaint does not alleged otherwise. If Ms. Devine's divorce was not a "sham," the U.S. money laundering laws that Plaintiffs rely upon as RICO predicates protect the funds and property that she and her family received by way of a marital settlement agreement.[6]

---

[5] Plaintiffs elevate form over substance, arguing in opposition to Ms. Devine's request for a status conference that their prolix complaint provides sufficient notice of their claims. *See, e.g.*, Docket Entry No. 22, at 6 ("Such detail is provided in abundance in the complaint in this action."). But it is Plaintiffs' obligation to identify Ms. Devine's *domestic* conduct that forms the basis for the alleged predicate acts and damages. It is not Ms. Devine's obligation to locate the predicate needles within the Plaintiffs' haystack of a Complaint, in which the allegations relate almost entirely to extraterritorial conduct that is not within the purview of U.S. or Florida law. Ms. Devine also requests that Plaintiffs be ordered to file a RICO Case Statement, *infra*, for this same reason.

[6] Ms. Devine believes that the applicable case law establishes that marital settlement proceeds are protected from seizure and forfeiture under the money laundering laws. *See, e.g.*, 18 U.S.C. § 982(b)(1) (incorporating 21 U.S.C. § 853) and 21 U.S.C.§ 853 (n)(6)(B)). Therefore, once the funds are in the hands of a divorced spouse, the funds and property received are not subject to disgorgement under the money laundering laws as proceeds of illegal activity.

Discovery is also necessary to determine whether Plaintiffs' claims are time-barred.[7] While the statute of limitations defense may be fact-based, as Plaintiffs claim, whether their claims are time-barred is certainly a relevant inquiry for purposes of determining likelihood of success on the merits at the preliminary injunction stage.[8] Additionally, discovery is necessary regarding Plaintiffs' injuries – not only the nature and extent of injuries for which they seek compensation, but the date and circumstances of their discovery. Ms. Devine believes that discovery regarding Plaintiffs' injuries will confirm that the relief Plaintiffs seek is disproportionate and disconnected from the harm they suffered. Finally, discovery is necessary to determine if Plaintiffs even have standing to sue, including whether they still exist as legally cognizable entities (and, if not, when they ceased to exist) and whether they are the real parties in interest.

---

[7] Although Plaintiffs claim that they learned of the Swiss investigation in late 2012, and received portions of the Swiss investigative file regarding Ms. Devine in 2013, *see* Docket Entry No. 2, at ¶¶ 26-27, 232, Plaintiffs appear to have had notice of their potential claims against Ms. Devine at least by October 19, 2009, when they filed a lawsuit against her ex-husband, Homm, and others, including three "Jane Doe" defendants. *See Absolute Activist Value Master Fund et al. v. Ficeto*, 1:09-cv-08862 (S.D.N.Y.). Despite Plaintiffs' claims to the contrary, Docket Entry No. 22, at n.3, the injuries Plaintiffs allege in their Complaint are derivative of the injuries they alleged in the claims stayed in the S.D.N.Y. action, and they cannot conjure up a RICO claim premised on alleged subsequent money laundering of funds illicitly obtained abroad. *See, e.g.*, *Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 166 & n.9 (D.D.C. 2013) ("Krull Corporation's involvement was limited to the money laundering scheme, in which Dariga paid Defendant Mirtchev with money partially derived from Plaintiffs' businesses, through Krull (and other) bank accounts located both within and outside of the United States. Post-extortion money laundering between U.S. and foreign bank accounts is not sufficient to render a RICO scheme domestic.").

[8] This action need not languish on the docket until summary judgment when discovery will confirm that Plaintiffs, the subjects of media publications in 2007, knew the potential injury that forms the basis of their complaint in 2007, even before filing suit against Homm and others in the S.D.N.Y. action in 2009. *See, e.g.*, UPSTART BUSINESS JOURNAL, *After Rolex Robberies, the Homms Divorce, and the Fund Sinks* (Sept. 24, 2007), *available at* http://upstart.bizjournals.com/news/wire/2007/09/24/after-rolex-robberies-the-homms-divorce-and-the-fund-sinks.html?page=all, *last visited* July 17, 2015 ("Where does the ex-wife come in? It turns out they had just been through a divorce, and as part of the settlement, he gave her millions of shares of Absolute Capital. So Susan Devine Homm, with a 5.8 percent stake, is now a bigger shareholder in the firm that her ex-husband almost single-handedly crushed last week."); TODAY'S ZAMAN, *Hedge fund 'hero' who jumped the ship* (Sept. 24, 2007), *available at* http://www.todayszaman.com/business_hedge-fund-hero-who-jumped-the-ship_122960.html, *last visited* July 17, 2015 ("Sean Ewing, an Abcap co-founder who quit a few weeks ago, said: 'It's madness. This is a great business and one that could easily recover, except for the reputational damage. The business and wealth we created over three years has just gone down the toilet with one crazy action from Florian. I feel bitter.' A friend said the reason Homm was in Zurich at the weekend was to see his former wife, Susan Devine, but the meeting went badly. 'Homm had just handed over 4 million shares in Abcap to his wife and 2 million to his children. She will have lost a

Simply put, the scope of relevant, discoverable evidence surely exceeds the self-serving compilation of information Plaintiffs attached to their *ex parte* Preliminary Injunction Motion. It is remarkable Plaintiffs would argue that Ms. Devine is not entitled to discovery, when Plaintiffs themselves have sought, and been awarded, discovery in advance of the preliminary injunction hearing.

### B. Ms. Devine's Requested Discovery Will Impose No Undue Prejudice on Plaintiffs While the Temporary Restraining Order Is In Effect.

In terms of prejudice, the only party who has been prejudiced is Ms. Devine, against whom this Court has issued an *ex parte* temporary restraining order based on Plaintiffs' one-sided display of evidence and erroneous presentation of the law. The expedited discovery Ms. Devine seeks will work no undue hardship upon Plaintiffs. To the contrary, Ms. Devine proposes expedited discovery to supplement the discovery this Court already has permitted Plaintiffs to take of Ms. Devine, including financial disclosures and a deposition. The merit of Plaintiffs' claims is perhaps the most critical of the elements they must satisfy in order to obtain preliminary injunctive relief. If Plaintiffs are as confident in the information relayed to them by the Swiss prosecutors (then translated and pasted into their Complaint) and their claims as they argued in their Preliminary Injunction Motion and in opposition to Ms. Devine's request for a status conference, they should have nothing to fear from limited, expedited discovery into the merits of their claims at this stage. And Ms. Devine and her counsel will certainly cooperate with Plaintiffs' counsel to accommodate, within reason, any difficulties that may arise in connection with expedited discovery.

---

fortune.' The Abcap drama added to the fears of investors who were already jittery from the credit crisis. With hedge funds queuing up to float, how many others were so vulnerable to the whims of their star managers?").

11

Based on Ms. Devine's need for narrowly-tailored discovery and the absence of any prejudice to Plaintiffs, Ms. Devine respectfully requests that the Court grant her Motion and issue an order, setting forth the following:

1) Ms. Devine may engage in discovery in connection with Plaintiffs' Preliminary Injunction Motion commencing immediately upon receipt of the Court's Order granting this motion.

2) Ms. Devine may serve written discovery within seven (7) days of the entry of the Court's Order, and answers and objections and/or production for inspection and copying all responsive documents are due within fourteen (14) days of the date of service.

3) Ms. Devine may serve ten (10) Interrogatories. The Interrogatories shall not contain subparts that would increase the number of Interrogatories beyond the ten (10) permitted, except upon further agreement of the parties or Court order.

4) Ms. Devine may serve ten (10) Requests for Production of Documents directed to Plaintiffs.

5) In the Court's Order and Opinion of July 1, 2015 (Docket Entry No. 10), the Court permitted Plaintiffs a limited deposition of Defendant. Ms. Devine may conduct a limited deposition of each of the Plaintiffs (and, because the Plaintiffs are or were legal entities, the corporate representatives or employees for each of the Plaintiffs) with respect to the nature and extent of Plaintiffs' injuries, the dates on which Plaintiffs' sustained and discovered those injuries, and the compensation, if any, Plaintiffs have received to date on account of the wrongful conduct alleged in the Complaint. Additionally, Ms. Devine shall be permitted no more than five (5) non-party depositions in connection with Plaintiffs' Preliminary Injunction Motion (Docket Entry No. 3), except upon further agreement of the parties or Court order.

6) Plaintiffs shall identify all deponents within seven (7) days of service of responses to written discovery.

7) The depositions in connection with Plaintiffs' Preliminary Injunction Motion will take place at times and places selected by agreement of the parties and witnesses.

8) The parties shall use their best efforts to obtain responses from any third party who is served a subpoena for documents or deposition testimony. Any third parties served with a subpoena must comply or appear within the time specified in the subpoena, but in no event later than fourteen (14) days following service of the subpoena. Any objections raised by Plaintiffs to a subpoena served on behalf of Ms. Devine on a third party must be served within three (3) days of service of the subpoena.

9) All discovery for the preliminary injunction hearing in this matter must be completed within an adequate time determined by the Court to be sufficiently in advance of the preliminary injunction hearing to permit presentation of appropriate evidence at that hearing, which Ms. Devine suggests be twenty-one (21) days in advance of the preliminary injunction hearing.

II. **This Court Should Order Plaintiffs to File a RICO Case Statement to Streamline the Issues for the Preliminary Injunction Hearing and Trial.**

Without the filing of a RICO Case Statement that focuses this matter on the conduct at issue and the funds at issue, apart from the extraterritorial and third-party conduct spanning Plaintiffs' entire Complaint, analysis of Plaintiffs' likelihood of success on the merits is premature and unduly complicated. And if, as Plaintiffs have argued and alleged, they have, with the assistance of the Swiss prosecutors, compiled voluminous evidence of Ms. Devine's unlawful conduct, preparing and filing a RICO Case Statement ought to be a straightforward task. The preparation and filing of a RICO Case Statement will benefit all parties and the Court, streamlining the issues for the preliminary injunction hearing and, ultimately, trial, and minimizing waste of the parties' and judicial resources in the interim. After all, it does not require a fanciful imagination to see that without the preparation and filing of a RICO Case Statement, the parties will have to endure globe-trotting discovery involving literally dozens of third-parties beyond the subpoena power of this Court.

Plaintiffs should share in Ms. Devine's hope and expectation that simplification of the allegations and claims in this matter to only those that conceivably could establish liability against Ms. Devine is a benefit. But their opposition to Plaintiffs' request for a status conference indicates that Plaintiffs oppose this request, too. *See* Docket Entry No. 22, at 6 ("Furthermore, the purpose of a RICO case statement, in the jurisdictions that use it, is to provide additional detail regarding a plaintiff's RICO allegations. Such detail is provided in abundance in the Complaint in this action.").

13

Plaintiffs correctly observe that "a RICO case statement is not required by the Federal Rules, the Local Rules, or this Court's Rules" (*see id.*), but they overlook that it is within this Court's power and discretion to require them to prepare and file one, just as other courts have done in the absence of any mandatory rule. This Court has broad authority under Rule 16 to adopt procedures for managing difficult, complex actions such as this that "involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." Fed. R. Civ. P. 16(c)(2)(L) ("At any pretrial conference, the court may consider and take appropriate action on the following matters . . . (L) adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems"); Advisory Committee Notes, 1993 Amendment (regarding similarly worded provision of earlier Rule 16(c)(12), "the primary purpose of the changes in subdivision (c) are to call attention to the opportunities for structuring of trial . . . and to eliminate questions that have occasionally been raised regarding the authority of the court to make appropriate order designed either to facilitate settlement or to provide for an efficient and economical trial . . . notwithstanding the objection of a party"); *see also Northland Ins. Co. v. Shell Oil Co.*, 930 F. Supp. 1069, 1071-75 (D.N.J. 1996) (noting that power to order RICO case statements may derive from, among other things, the Judicial Improvements Act, the Civil Justice Reform Act of 1990, and Federal Rules 16 and 83, but that "the federal rule providing the strongest authority for the RICO Case Statement is Rule 16").

Courts in this district and across the country recognize and exercise this authority in the context of civil RICO claims.[9] *See, e.g., Gov't Empls. Ins. Co. v. KJ Chiropractic Ctr. LLC,*

---

[9] The Federal Judiciary Center's *Manual for Complex Litigation* addresses the utility of RICO Case Statements and even includes a form designed to encompass the details and specificity that plaintiffs should include in RICO Case Statements. *See Manual for Complex Litigation, Fourth*, available at http://www.fjc.gov/public/home.nsf/autoframe?openform&url_l=/public/home.nsf/inavgeneral?openpage&url_r=/public/home.nsf/pages/524, *last visited* July 17, 2015, at 702-03 ("The length and complexity of RICO complaints are

14

Case No. 6:12-cv-1138-Orl-36ADB, 2013 U.S. Dist. LEXIS 76794, at *5-*9 (M.D. Fla. Apr. 29, 2013) (discussing the "established practice" of RICO Case Statements in the Orlando division and the "detail and specificity" required in them); *Train, Inc. v. Pro-Ed, Inc.*, Case No. 92-CV-5510, 1993 U.S. Dist. LEXIS 2298, at *18 (E.D. Pa. Feb. 22, 1993) (notwithstanding lack of rule, "judges in this district can exercise their discretion in determining whether to utilize a RICO case statement to ensure that plaintiffs adequately assert the circumstances of any alleged RICO violation"); *Northland Insurance Co. v. Shell Oil Co.*, 930 F. Supp. at 1071-76 (confirming authority to require RICO case statements); *Manual for Complex Litigation, Fourth*, *available at* http://www.fjc.gov/public/home.nsf/autoframe?openform&url_l=/public/home.nsf/inavgeneral?openpage&url_r=/public/home.nsf/pages/524, *last visited* July 17, 2015.

Ms. Devine respectfully submits that this should Court exercise its discretion and its authority under Rule 16 to enter an order requiring Plaintiffs to prepare and file a RICO Case Statement, prior to the preliminary injunction hearing, that includes the information set forth in the form order contained in the Manual for Complex Litigation, *supra*, attached hereto as Exhibit "A."

## CERTIFICATE OF GOOD FAITH

---

sometimes related to the requirement to plead fraud with particularity in claims alleging mail and wire fraud as predicate acts, while in other circumstances they derive from an attempt to obscure non-compliance with Rule 8 and the inclusion of irrelevant or conclusory allegations. . . . Some courts faced with a RICO complaint that is unintelligible, confusing, or otherwise violative of Rule 8 have dismissed the complaint *sua sponte* and required the plaintiff to file a 'RICO case statement' along with an amended complaint. Such an approach conserves both judicial and party resources, and precludes the court, upon undertaking review of the sufficiency of a complaint, from having to 'forever sift through its pages.'"), at 705-06 ("The RICO case statement has proven useful in RICO litigation…. The RICO case statement, together with a reading of the complaint, will help narrow the issues and identify claims that lack merit, which can then be dismissed (with or without prejudice) before significant time and effort is spent. Finally, these statements can also help to 'focus discovery…and provide a blueprint for trial.'") (internal citations and quotations omitted), at 783-85 & n.1 (Form 40.54 ("Civil RICO Case-Statement Order") ("This order has been designed to establish a uniform and efficient procedure for deciding civil actions containing claims made pursuant to 18 U.S.C. §§ 1961–1968 ('civil RICO').").

Ms. Devine's undersigned counsel certify, in accordance with Local Rule 3.01(g), that they communicated with Plaintiffs' counsel concerning the issues raised in this motion, and were advised that Plaintiffs object to the relief sought in this motion.

## CONCLUSION

For the foregoing reasons, Ms. Devine respectfully requests that the Court grant this motion, authorizing her to engage in limited, expedited discovery of Plaintiffs and ordering Plaintiffs to prepare and file a RICO Case Statement.

Respectfully submitted,

By: __/s/ Carl F. Schoeppl_____
      Carl F. Schoeppl
      Trial Counsel
      Fla. Bar. No. 818518
SCHOEPPL & BURKE, P.A.
4651 North Federal Highway
Boca Raton, Florida 33431-5133
Phone: (561) 394-8301
Fax: (561) 394-3121
carl@schoepplburke.com


By: __/s/ Ian M. Comisky_____
      Ian M. Comisky
      Trial Counsel
      Fla. Bar No. 225304
BLANK ROME LLP
One Logan Square, 130 North 18th Street
Philadelphia PA 19103
Phone: (215) 569-5646
Fax: (215) 832-5646
Comisky-im@blankrome.com

*Attorneys for Defendant Susan E. Devine*

Dated: July 19, 2015

<b><u>EXHIBIT "A"</u></b>

40.54 Civil RICO Case-Statement Order[1]

[caption]

Order No. _____

It is ORDERED:

The proponent of the civil RICO claim shall file and serve [within \_\_ days of _____] a case statement that shall include the facts relied on to initiate the RICO claim. In particular, the statement shall use the numbers and letters set forth below, unless filed as part of an amended and restated pleading (in which latter case, the allegations of the amended and restated pleading shall reasonably follow the organization set out below), and shall state in detail and with specificity the following information:

1. State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c), and/or (d). If you allege violations of more than one section 1962 subsection, treat each as a separate RICO claim.
2. List each defendant, and state the alleged misconduct and basis of alleged liability of each defendant.
3. List the alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.
4. List the alleged victims, and state how each victim allegedly was injured.
5. Describe in detail the pattern of racketeering activity or collection of an unlawful debt alleged for each RICO claim. A description of the pattern of racketeering activity shall:
   (a) list the alleged predicate acts and the specific statutes allegedly violated by each predicate act;
   (b) state the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding each predicate act;
   (c) if the RICO claim is based on the predicate offenses of wire fraud, mail fraud, fraud in the sale of securities, or fraud in connection with a case under Title 11 of the U.S. Code, the "circumstances constituting fraud or mistake shall be stated with particularity," Fed. R. Civ. P. 9(b) (identify the time, place, and contents of the alleged misrepresentation or omissions, and the identity of persons to whom and by whom the alleged misrepresentations or omissions were made);
   (d) describe in detail the perceived relationship that the predicate acts bear to each other or to some external organizing principle that renders them "ordered" or "arranged" or "part of a common plan"; and
   (e) explain how the predicate acts amount to or pose a threat of continued criminal activity.
6. Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall
   (a) state the names of the individuals, partnerships, corporations, associations, or other entities allegedly constituting the enterprise;
   (b) describe the structure, purpose, roles, function, and course of conduct of the enterprise;
   (c) state whether any defendants are employees, officers, or directors of the alleged enterprise;
   (d) state whether any defendants are associated with the alleged enterprise, and, if so, how;
   (e) explain how each defendant participated in the direction of the affairs of the enterprise;

(f) state whether you allege [(i) that the defendants are individuals or entities separate from the alleged enterprise, or (ii) that the defendants are the enterprise itself, or (iii) that the defendants are members of the enterprise]; and

(g) explain, if you allege any defendants to be the enterprise itself or members of the enterprise, whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.

7. State whether you allege, and describe in detail, how the pattern of racketeering activity and the enterprise are separate or have merged into one entity.

8. Describe the alleged relationship between the activities and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

9. Describe what benefits, if any, the alleged enterprise and each defendant received from the alleged pattern of racketeering activity.

10. Describe the effect of the activities of the enterprise on interstate or foreign commerce.

11. If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:

    (a) state who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and

    (b) describe the use or investment of such income.

12. If the complaint alleges a violation of 18 U.S.C. § 1962(b), provide the following information:

    (a) describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise; and

    (b) state whether the same entity is both the liable "person" and the "enterprise" under section 1962(b).

13. If the complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following information:

    (a) state who is employed by or associated with the enterprise; and

    (b) state whether the same entity is both the liable "person" and the "enterprise" under section 1962(c).

14. If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.

15. Describe the alleged injury to business or property.

16. Describe the relationship between the alleged injury and violation of the RICO statute.

17. List the damages sustained by reason of the violation of section 1962, indicating the amount for which each defendant allegedly is liable.

18. Provide any additional information you feel would be helpful to the court in processing your RICO claim.

Dated: _____      _____
                                    United States District Judge

*Note:*

   1. This order has been designed to establish a uniform and efficient procedure for deciding civil actions containing claims made pursuant to 18 U.S.C. §§ 1961–1968 ("civil RICO").

## CERTIFICATE OF SERVICE

I, Ian Comisky, hereby certify that I have caused a true and correct copy of the foregoing to be served via CM/ECF upon the following persons, listed below on this date:

SPEARS & IMES LLP
David Spears
Linda Imes
Christopher W. Dysard
Benjamin Silverman
Sharanya Sai Mohan
51 Madison Avenue
New York, New York 10010
Tel: (212) 213-6996
Fax: (212) 213-0849
dspears@spearsimes.com
limes@spearsimes.com
cdysard@spearsimes.com
bsilverman@spearsimes.com
smohan@spearsimes.com

KOZYAK TROPIN & THROCKMORTON, LLP
Thomas A. Tucker Ronzetti
Kenneth Hartmann
Maia Aron
2525 Ponce de Leon Boulevard, 9th Floor
Miami, Florida 33134
Tel: (305) 372-1800
Fax: (305) 372-3508
tr@kttlaw.com
krh@kttlaw.com
ma@kttlaw.com

/s/ Ian M. Comisky
Ian M. Comisky

Dated: July 19, 2015