UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| ABSOLUTE ACTIVIST VALUE MASTER FUND LIMITED, ABSOLUTE EAST WEST FUND LIMITED, ABSOLUTE EAST WEST MASTER FUND LIMITED, ABSOLUTE EUROPEAN CATALYST FUND LIMITED, ABSOLUTE GERMANY FUND LIMITED, ABSOLUTE INDIA FUND LIMITED, ABSOLUTE OCTANE FUND LIMITED, ABSOLUTE OCTANE MASTER FUND LIMITED, AND ABSOLUTE RETURN EUROPE FUND LIMITED,<br><br>    Plaintiffs,<br><br>  v.<br><br>SUSAN ELAINE DEVINE,<br><br>    Defendant. | Case No. 2:15-cv-328-FtM-29DNF |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR EXPEDITED DISCOVERY AND RICO CASE STATEMENT**

Plaintiffs ("the Funds") submit this memorandum in opposition to the Motion for Expedited Discovery and RICO Case Statement filed by Defendant Susan Elaine Devine ("Devine") on July 19, 2015 (Doc. #31) ("Motion"), which is scheduled to be argued before the Court at a status conference on July 28, 2015.

**PRELIMINARY STATEMENT**

Devine's request for expedited discovery from the Funds and unidentified third parties in order to obtain evidence for use at the preliminary injunction ("PI") hearing is misguided and unreasonable, and it should be denied.

The supposedly "narrowly-tailored discovery" that Devine proposes to take (*see* Motion at 3, 12) is in fact anything but. At this preliminary stage of the proceedings, Devine seeks to use virtually every discovery tool authorized by the Federal Rules of Civil Procedure, including requests for production of documents, depositions of the Funds, depositions of third parties, and interrogatories. (*Id.* at 12-13.) Rather than being a rifle-shot seeking limited discovery that indisputably bears on a critical issue at the PI hearing, Devine's Motion is a shotgun blast, more closely resembling the broad discovery plan that a party would propose pursuant to Rule 26(f) when full discovery is set to commence. The inappropriate nature of Devine's Motion is confirmed by her explanations as to why she claims to need the requested discovery – for example, "to discover the evidence upon which Plaintiffs' claims are based." (*Id.* at 3.) That is the purpose of general merits discovery, not discovery in aid of a PI hearing.

The Motion is all the more improper because Devine seeks to engage in such broad discovery *unilaterally*. Devine complains that she has not yet had the opportunity to take merits discovery in this case (*e.g.*, *id.*), but the same is true of the Funds, which were authorized to take only very focused discovery of Devine's assets for purposes of implementing the temporary restraining order ("TRO"). There is every reason to believe that, with a full airing of the facts, Devine's position in this litigation will be substantially worse, not better, and there is no valid basis for permitting Devine to plunge into merits discovery prior to the PI hearing while requiring the Funds to sit by passively. To take just one example, assuming *arguendo* that Devine were able to elicit persuasive evidence bearing on the statute of limitations applicable to the Funds' federal RICO claims (*see id.* at 10 &

n.7), the Funds could neutralize that evidence with a more developed record of Devine's fraudulent concealment.[1] To grant Devine the right to take discovery from the Funds relating to the statute of limitations without granting a corresponding right to the Funds would ignore the reality of statute of limitations issues. And to order, at this preliminary stage, wide-ranging discovery by both parties relating to such a fact-intensive inquiry would be antithetical to the PI procedure.[2]

The Funds have offered to join with Devine in asking the Court to consolidate the PI hearing with the trial on the merits and to advance the trial date, with an extension of the TRO and merits discovery by both sides on equal footing. If Devine (and, of course, the Court) were to agree with this procedure, and in the course of discovery Devine learned of facts that completely undermine the Funds' entitlement to the TRO entered by the Court, Devine could move at any time to modify or vacate the TRO. *See generally St. Jude Med. S.C., Inc. v. Biotronik, Inc.*, 2007 WL 604967, at *2 (M.D. Fla. Feb. 22, 2007) (Steele, J.) (noting that "[a] trial court has broad discretion in deciding whether to dissolve an injunction" if it is no longer equitable). Consolidation is the appropriate mechanism for promptly commencing the discovery phase of this case – not Devine's unreasonable proposal.

---

[1] *See generally Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194-96 (1997) (fraudulent concealment is applicable to statute of limitations analysis for federal RICO claims).

[2] As discussed herein, even a successful attack on the Funds' federal RICO claims on statute of limitations grounds would not undercut the Funds' right to a PI, since each of the Funds' remaining claims also supports a PI and an asset freeze. This is another reason why the discovery requested by Devine is improper at this stage.

Regarding Devine's request for a RICO case statement, she acknowledges that such a statement is not required by any of the governing rules. (Motion at 14.) Furthermore, the model she proposes (*see id.*, Ex. A) seeks information that is already pleaded in detail in the Complaint and, in many instances, the subject of findings in the TRO. Her request for a RICO case statement should be denied as unnecessary.

## **ARGUMENT**

I. <u>Devine's Motion for Expedited Discovery Should Be Denied</u>

Devine seeks at least five substantive categories of unilateral expedited discovery in advance of the PI hearing:[3]

(1) all information received from Swiss authorities by Plaintiffs and all communications with Swiss authorities related to this action;

(2) any expert report or other evidence that Plaintiffs seek to introduce or rely upon in support of their request for a preliminary injunction, including any tracing of allegedly tainted funds and any damages study;

(3) corporate designee depositions of Plaintiffs pursuant to Fed. R. Civ. P. 30(b)(6) limited to the date of discovery of their injuries and any compensation they have received to date for the harms alleged in the complaint;

(4) the identities of the real parties in interest in this case, which relate to possible defenses of Ms. Devine; and

(5) any documents purporting to demonstrate that Ms. Devine allegedly knew that the funds she received by way of divorce were "proceeds of illegal activities" or that the divorce was a "sham."

---

[3] Although Devine sets out five categories of requested discovery in an itemized list (Motion at 3), she suggests elsewhere in the Motion that she is entitled to at least two other categories of discovery, relating to "Ms. Devine's *domestic* conduct" (*id.* at 9 n.5 (emphasis in original)) and "the nature and extent of Plaintiffs' injuries" (*id.* at 12). The threat of mission creep posed by Devine's requests – exacerbated by her extensive proposed program of discovery (*id.* at 12-13), which is largely unrestricted by subject matter – is reason alone to deny her Motion.

(Motion at 3.) Devine's Motion should be denied in its entirety because it is overbroad and the discovery it seeks is unjustified.

### A. Devine's Motion Is Overbroad

Devine's discovery requests are patently, and severely, overbroad. On a motion for discovery in advance of a PI hearing, a central inquiry is whether the requested discovery is narrowly tailored to obtain information relevant to the PI hearing. *See generally Thyssenkrupp Elev. Corp. v. Hubbard*, 2013 WL 1953346, at *1-2 (M.D. Fla. May 10, 2013). Courts consistently deny requests that seek "relatively broad discovery on issues going to the merits" of a case and that are not "narrowly tailored to reveal information related to the preliminary injunction as opposed to the case as a whole." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014).[4] Here, although Devine insists that her requests are "narrowly tailored" (Motion at 3, 6, 12), the Motion actually seeks discovery of the type parties request at the outset of full merits discovery, intended to flush out every detail about the Funds' case and proof. It is the very paradigm of an improper "broadside" unrelated to "the specific issues that will have to be determined at the preliminary injunction hearing." *Irish Lesbian & Gay Org. v. Giuliani*, 918 F. Supp. 728, 731 (S.D.N.Y. 1996).

Two examples illustrate the point. Item 1 on Devine's list seeks "*all information received from Swiss authorities by Plaintiffs and all communications* with Swiss authorities

---

[4] *See also XimpleWare Corp. v. Versata Software, Inc.*, 2013 WL 6405979, at *3 (N.D. Cal. Dec. 6, 2013) (denying request for expedited discovery that was "overbroad and . . . not narrowly tailored to obtain evidence relevant to [the plaintiff's] motion for preliminary injunction"); *Avaya, Inc. v. Acumen Telecom Corp.*, 2011 WL 9293, at *2 (D. Colo. Jan. 3, 2011) ("Expedited discovery should be limited . . . and narrowly tailored to seek information necessary to support expedited or preliminary relief."); *L'Occitane, Inc. v. Trans Source Logistics, Inc.*, 2009 WL 3746690, at *2 (D. Md. Nov. 2, 2009) (denying requested expedited discovery because it was "not narrowly tailored to obtain information relevant to a preliminary injunction determination").

5

related to this action." (Motion at 3 (emphasis added).) This item is not limited to a particular subject. Rather, styled as a Rule 34 "all documents" request, it seeks a dump of "all" information received by the Funds from the Swiss authorities, and "all" communications between them, in hopes that something useful will turn up. Even the request's supposed limiting principle, "related to this action," is hopelessly vague.

Item 5 on Devine's list is equally flawed, as it seeks wide-ranging, unilateral discovery on facts that will be contested throughout the litigation ("any documents" demonstrating that Devine knew that assets transferred to her control were proceeds of illegal activities and that her divorce was a sham). Devine's request seems to be premised on the assumption that the Funds have not yet presented any evidence relating to these topics. To the contrary, the Funds have introduced into the record a number of relevant documents, many of which the Court relied upon to conclude that it is likely both that Devine knew that the assets transferred to her constituted proceeds of illegal activity[5] and that her divorce was a sham.[6] In her Motion, Devine does not attack the weight of any of the evidence supporting

---

[5] As evidence that Devine knew that the proceeds were derived from some form of illegal activity, the TRO cites, among other things, the backdated loan agreement used to conceal the ownership of valuable art and furniture (Dysard Declaration ("Dysard Decl."), Exs. 26-27); Devine's failure to disclose the economic purpose of certain transactions (*id.*, Ex. 14, at 90, Ex. 47); her admission in an email to her banker that she was willing to use deceptive financial transactions (*id.*, Ex. 14, at 187); her use of simulated cash transactions (*id.* at 160-71); and her transfer of CHF 1.4 million into accounts for the purchase of gold coins (*id.* at 163-64, 171-72). (TRO at 56-58.)

[6] As evidence that the divorce was a sham, the TRO cites, among other things, the false financial affidavits Homm and Devine submitted to the Florida court in connection with the divorce (Dysard Decl., Exs. 29-30); the numerous modifications to CSI's beneficiary structure; intimate emails between Homm and Devine after their formal divorce (*id.*, Exs. 33-34); Homm's will executed less than two months after the divorce devising half of his estate to Devine (*id.*, Ex. 35); and Devine and Homm's continued joint purchase and ownership of real property both during their divorce proceeding and after (*id.*, Ex. 37). (TRO at 27-36.)

the Court's conclusions on these topics.[7] She may elect to take on that evidence at the PI hearing, but the fishing expedition she proposes is inappropriate.

The extensive discovery program requested by Devine only magnifies the overbreadth of her Motion. In the period leading up to the PI hearing, she proposes to serve on the Funds ten interrogatories and ten requests for production of documents, to take Rule 30(b)(6) depositions of "the corporate representatives or employees for each of the Plaintiffs" (the number of representatives and employees for each Plaintiff is unspecified), and to take "no more than" five unspecified non-party depositions. (Motion at 12-13.) Devine's catalog of requested expedited discovery is incompatible with the very nature of a PI. The Federal Rules generally contemplate a 14- to 28-day span between the entry of a TRO (July 1, in this case) and the PI hearing, and more than 14 days only upon a finding by a court of good cause. *See* Fed. R. Civ. P. 65(b)(2). While the Funds appreciate that the Court's schedule may not permit a hearing within 28 days of the TRO, Devine should not be allowed to fill in the time with improper and costly unilateral discovery.

The overbreadth of Devine's Motion is obvious when it is compared to the Funds' request for expedited discovery. Devine argues that because the Court granted the Funds' request, fairness dictates that Devine should now be permitted to engage in extremely broad

---

[7] Devine does attack as "hearsay" a cover letter referring to Devine and Homm's sham divorce. (Motion at 8-9 (discussing Dysard Decl., Ex. 38).) Assuming *arguendo* the cover letter is hearsay, at the PI stage "a district court may rely on affidavits and hearsay materials that would not be admissible as evidence for entry of a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (internal quotation marks and citation omitted). More to the point, this cover letter is significant largely because it confirms what other evidence directly demonstrates: that the divorce was merely a step in Devine and Homm's money laundering scheme. Indeed, the TRO only cites the cover letter as general background. (TRO at 32-33.)

unilateral discovery (*see, e.g.*, Motion at 4), but the parties' requests are actually a study in contrasts. The Funds requested, and the Court granted, limited discovery with a very specific purpose: documents "sufficient to identify" Devine's assets and a single deposition of Devine "limited [to] the identification of the assets under [her] direct or indirect control." (TRO at 68.) This narrow discovery is designed to ensure that the TRO entered by the Court is effectively implemented. (*Id.* at 66.) Devine's requests, on the other hand, are indistinguishable from merits discovery.[8]

### B. The Categories of Information Identified by Devine Do Not Warrant Expedited Discovery in Advance of the PI Hearing

Even setting aside the stunning overbreadth of Devine's Motion, the categories of information she has identified simply do not warrant one-sided, expedited discovery prior to the PI hearing. The Funds have already put into the record an extraordinary amount of evidence in support of their claims, and Devine (who also has full access to her own communications and financial records, not to mention to Florian Homm himself) is well-positioned to challenge the Funds' motion for a PI as she sees fit.

*First*, information that the Funds received from the Swiss government in connection with its criminal investigation of Homm and others (item 1 on Devine's list) is described and cited in detail in the Complaint and the Funds' TRO papers, including the Swiss Report and the Meisterhans Indictment that the Funds translated (at significant expense) and attached to the Dysard Declaration (Doc. #4) as Exhibits 14 and 15, respectively. Further, Devine is no

---

[8] It also bears emphasis that the large majority of cases concerning expedited discovery in advance of a PI hearing address requests by *plaintiffs*, not a contested motion by a defendant. *See, e.g.*, *Guttenberg*, 26 F. Supp. 3d at 97-98; *XimpleWare*, 2013 WL 6405979, at *4; *L'Occitane*, 2009 WL 3746690, at *3; *Irish Lesbian & Gay Org.*, 918 F. Supp. at 731. *Thyssenkrupp*, cited by Devine (Motion at 5-6), concerned a joint request by both parties for limited, bilateral discovery. 2013 WL 1953346, at *1.

8

stranger to the Swiss investigation; she has participated actively in the proceedings, including providing two days of testimony (accompanied by counsel), consistent with the fact that more than €15 million worth of assets she controls have been frozen by the Swiss as proceeds of the Penny Stock Fraud. Additionally, Devine's ongoing relationship with Homm may well mean that she has access to information and materials from the Swiss investigation and other sources of which the Funds are currently unaware. Under these circumstances, any discrepancies between the information regarding the Swiss proceedings currently in the possession of the parties do not warrant expedited discovery in advance of the PI.

*Second*, regarding the evidence the Funds intend to seek to introduce at the PI hearing (item 2 on Devine's list), all such evidence was already provided to Devine with the TRO papers. *See generally* Local Rule 4.05(b)(5). To the extent Devine offers evidence or information in opposition to the PI, the Funds may present additional evidence, but the Funds cannot at this time anticipate what Devine will present and designate their responsive evidence for presentation at the hearing.

*Third*, regarding the date of the Funds' discovery of their injuries (item 3 on Devine's list), that information is already set out in detail in the Complaint and includes the undisputed facts that the Funds were not granted access to the Swiss evidence before June 2013 (Complaint ("Compl.") ¶¶ 5, 26, 232), the Swiss Report was not issued until December 2014 (*id.* ¶¶ 5, 27, 232), the voluminous evidentiary annexes to the Swiss Report were not made available to the Funds until between January and March 2015 (*id.* ¶¶ 5, 27, 232), and the Meisterhans Indictment was not issued until May 20, 2015 (*id.* ¶¶ 6, 14).

Furthermore, the discovery Devine seeks on this point, which is keyed to the statute of limitations for the two federal RICO claims, is futile, as it would not eliminate the basis for a PI and asset freeze. To begin, certain injuries alleged by the Funds, and found by the Court, are indisputably within the relevant limitations period. The statute of limitations for the Funds' federal RICO claims is four years from "when the injury was or should have been discovered," absent equitable tolling. *Lehman v. Lucom*, 727 F.3d 1326, 1331 (11th Cir. 2013) (quoting *Maiz v. Virani*, 253 F.3d 641, 676 (11th Cir. 2001)). Injuries recognized by the Court, including "the lost opportunity to recover certain money through mechanisms available in the Swiss proceedings resulting from Devine's transfers from Swiss accounts to evade imminent freeze orders," "the lost opportunity to recover certain money that Devine has dissipated or used to purchase functionally untraceable assets (such as gold)," "the costs associated with attempting to trace Devine's hidden assets around the world [and] recoupment of the Penny Stock Scheme proceeds," and "the continued deprivation of money taken from the Funds by means of the Penny Stock Scheme" (TRO at 58-59), all *occurred* in the last four years. Hence, discovery of these injuries is simply not an issue.[9]

---

[9] Devine cites two news articles published less than a week after Homm took flight in 2007 for the proposition that the Funds "knew the potential injury that forms the basis of their complaint in 2007." (Motion at 10 n.8.) This is a red herring. Actual, not "potential," injury is the touchstone of the federal RICO statute of limitations inquiry; as discussed, certain of the Funds' actual injuries (*e.g.*, the lost opportunity to recover fraud proceeds caused by Devine's transfer of funds to evade an asset freeze by Swiss authorities) had not yet occurred at that time. Furthermore, anodyne reports that Devine and Homm had divorced and that she had received ACM shares in the settlement did not reveal the basis for the Funds' claims against Devine, including that the divorce was part of a scheme to secretly transfer fraud proceeds from Homm to Devine in a manner that avoided public scrutiny, that Devine had knowingly engaged in financial transactions and various acts of deceit to conceal fraud proceeds, and that, for many years to follow, she would continue her criminal activity in league with Homm. Until materials were made available to the Funds in the Swiss investigation beginning in June 2013 (*see* Compl. ¶¶ 5, 26, 232) – including, most critically, bank records, to which the Funds had no prior access – the Funds had no way of knowing these facts.

But even assuming that Devine could establish definitively at this stage that the federal RICO claims are time-barred in their entirety, despite Devine's substantial acts of fraudulent concealment (*see* Compl. ¶¶ 222-32), at least three other claims remain: two Florida RICO claims and an unjust enrichment claim.[10] Devine seems to assume that if the federal RICO claims are dismissed, there would no longer be a basis for federal jurisdiction and the case would be dismissed. As pleaded (Compl. ¶ 22), however, this Court also has diversity jurisdiction under 28 U.S.C. § 1332(a)(2).[11]

Accordingly, even without the federal RICO claims, this Court would have subject matter jurisdiction,[12] and each of the remaining claims would support the asset freeze. In particular, in contrast to the federal RICO claims, the Florida RICO claims have a five-year statute of limitations that begins to run "after the conduct in violation of a provision of this

---

[10] The Funds have also asserted a constructive trust claim. (Compl. ¶¶ 308-12.) In the TRO, the Court ruled that "a constructive trust is not itself a cause of action." (TRO at 60-61 (quotation marks and citation omitted).)

[11] At the July 20 status conference, Devine's counsel argued that to establish diversity of citizenship in this case, the Funds must plead "the citizenship of each of the owners of or partners of each of the various Plaintiffs in the case." (Transcript at 19.) That is incorrect. Each of the Funds is a limited liability corporation registered in the Cayman Islands (Compl. ¶ 9), specifically, a "company limited by shares" under the Cayman Companies Law. In evaluating how an entity created under foreign laws should be treated for the purpose of determining diversity, courts look to the foreign law under which the entity was created and compare the characteristics of the entity with the characteristics of a U.S. corporation (which is a citizen of the location of its incorporation and its principal place of business) or a U.S. LLC (which is a citizen of every state of which any member is a citizen). *See Mirabella Found. v. St. Claire Livestock Invs. Inc.*, 2009 WL 5197842, at *4-5 (S.D. Fla. Dec. 23, 2009). A Cayman-registered "company limited by shares" is the equivalent of a U.S. corporation. *Cf. Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 582-83 (7th Cir. 2003) (because Bermuda company "limited by shares" was an entity "with perpetual existence, governed by a Board of Directors, able to issue tradable shares … and treated as independent of its equity investors," the court applied the rule governing citizenship of a corporation, rather than looking to the citizenship of each investor). Hence, the Funds are citizens of the location of their incorporation and their principal place of business – neither of which is Florida, Devine's domicile. *See generally Stern v. Bank of Am. Corp.*, 2015 WL 3440419, at *1 (M.D. Fla. May 28, 2015) (Steele, J.). Therefore, there is complete diversity in this case.

[12] Of course, even if the Court dismissed the federal RICO claims and diversity were lacking, the Court could exercise supplemental jurisdiction over the remaining non-federal claims. *See* 28 U.S.C. § 1367(a).

act terminates *or* the cause of action accrues." Fla. Stat. §§ 772.17, 895.05(10) (emphasis added). By the plain terms of the Florida RICO statute, therefore, the limitations period only begins to run from the "date of the individual defendant's last predicate act." *State v. Reyan*, 145 So.3d 133, 140 (Fla. App. 3d Dist. 2014); *accord Ziccardi v. Strother*, 570 So. 2d 1319, 1321-22 (Fla. App. 2d Dist. 1990). Here, because Devine committed any number of predicate acts in the last five years (*e.g.*, Compl. ¶¶ 203-15; TRO at 47), the Funds' Florida RICO claims are timely. And because those claims support an asset freeze no less than a federal RICO claim (*see* TRO at 63 n.16), the statute of limitations-related discovery proposed by Devine would not defeat a PI.

As for the "compensation [the Funds] have received to date for the harms alleged in the complaint" (also sought in Devine's item 3), such information is irrelevant to the restraint on Devine's ability to dissipate and further conceal tens of millions of dollars that should be disgorged to the Funds as their rightful property.

*Fourth*, regarding "the identities of the real parties in interest in this case" (item 4 on Devine's list), the Funds are at a loss to understand what Devine means. Devine contends that "discovery is necessary to determine if Plaintiffs even have standing to sue, including whether they still exist as legally cognizable entities (and, if not, when they ceased to exist) and whether they are the real parties in interest." (Motion at 10.) The nine Funds do in fact exist, and their status as the Plaintiffs in this action is set out in the caption and body of the Complaint. Devine may present any specific information she has on this topic at the PI hearing, but this unmoored request, premised on idle speculation, is not proper discovery in advance of the PI.

*Fifth*, regarding Devine's knowledge that the funds she received were proceeds of illegal activities and that the divorce was a sham (item 5 on Devine's list), the evidence upon which the Funds rely is set out in great detail in the Complaint (*see, e.g.*, Compl. ¶¶ 100-30) and the TRO (*see, e.g.*, TRO at 26-36, 55-58), and, as noted above, multiple documents backing up those allegations are already part of the record (*see, e.g.*, Dysard Decl., Exs. 26, 27, 29-30, 33-35, 37, 47, 78).

        C.        Devine's Stated Justifications Do Not Warrant
                Expedited Discovery for Use at the PI Hearing

Devine explains that she seeks expedited discovery "[1] to discover the evidence upon which Plaintiffs' claims are based, [2] to establish the factual bases underlying the Plaintiffs' claims so that [she] may confirm that those claims are not cognizable under RICO or are time-barred, and [3] to identify the factual and legal nexus, if any, between the assets Plaintiffs seek to restrain and the unlawful conduct and harm alleged in Plaintiffs' Complaint." (Motion at 3.) None of these stated justifications, however, provides a basis for the extraordinary discovery sought by Devine.

It is in merits discovery, conducted in the normal course, that Devine will "discover the evidence upon which Plaintiffs' claims are based," beyond the considerable evidence the Funds have already put into the record. Indeed, that general inquiry is the very essence of fact discovery under the Federal Rules. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]"). To require full fact discovery concerning the basis of a plaintiff's claims before ruling on a PI motion would improperly convert the PI hearing into a summary judgment exercise. *See Guttenberg*, 26 F. Supp. 3d at 98 (denying motion for expedited discovery in

support of a PI where discovery requests were "not narrowly tailored to reveal information related to the preliminary injunction" but instead went to "the central issue in this case").

Similarly, "establish[ing] the factual bases underlying Plaintiffs' claims," whether in an effort to attack the RICO claims or to invoke a statute of limitations defense, is not an appropriate objective for discovery in advance of a PI hearing. RICO claims present a host of legal and factual complexities, and a central purpose of merits discovery is to enable a defendant confronted with such claims to explore the plaintiff's evidence.[13] Likewise, a statute of limitations defense is necessarily a fact-bound issue that typically cannot be resolved until summary judgment or trial. *See, e.g.*, *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1252 (11th Cir. 2003); *Lesti v. Wells Fargo Bank*, 960 F. Supp. 2d 1311, 1322 (M.D. Fla. 2013) (Steele, J.). A defendant's entitlement to the defense – particularly in a case involving allegations of fraudulent concealment (*see, e.g.*, Compl. ¶¶ 222-32) – does not lend itself to a quick determination through a process of expedited, one-sided discovery. The Funds have already made numerous allegations and presented significant evidence relating to the RICO claims and the relevant statutes of limitations, and, at the PI hearing, Devine will

---

[13] Devine claims a need for expedited discovery so as to ascertain which of her activities were "extraterritorial," suggesting that any such activities lie beyond the reach of the Funds' claims. (Motion at 9 n.5.) As a factual matter, there is no shortage of domestic conduct in this case. Devine has long resided in Florida, where she participated in and directed the affairs of the enterprise, committed numerous crimes, and laundered millions of dollars of fraud proceeds. (*See, e.g.*, Compl. ¶¶ 217-21; Dysard Decl., Exs. 59-65, 88-92.) Further, as a matter of law, the most persuasive authority on the subject holds that civil RICO applies even to conduct abroad if "liability or guilt could attach to extraterritorial conduct under the relevant RICO predicate." *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 136 (2d Cir. 2014). Here, the Court found that the Funds are likely to establish that Devine violated 18 U.S.C. § 1956(a)(1)(B)(i) and 18 U.S.C. § 1957 (TRO at 58 & n.15), both of which explicitly provide that they apply to extraterritorial conduct committed by U.S. persons such as Devine. 18 U.S.C. § 1956(f) ("There is extraterritorial jurisdiction over the conduct prohibited by this section if . . . the conduct is by a United States citizen" and the transaction value exceeds $10,000); 18 U.S.C. § 1957(d)(2) (prohibiting conduct that "takes place outside the United States" if "the defendant is a United States person").

surely press her arguments regarding the supposed "flaws" she claims to have identified in those allegations and evidence. (Defendant's Motion for a Status Conference, Doc. #21, at 2.) To await full discovery on these issues before considering the Funds' motion for a PI would dismantle the expedited procedures established by the Federal Rules.

Nor does Devine's final stated justification – to identify any "factual and legal nexus" between the frozen assets "and the unlawful conduct and harm alleged in Plaintiffs' Complaint" – warrant expedited discovery in aid of the PI hearing. At this stage in the proceeding, the Funds have provided a sound basis for the asset freeze ordered by the Court: Homm masterminded a massive fraudulent scheme that caused the Funds to suffer losses exceeding $200 million while generating at least $115 million in profits for Homm; at least $45 million of the proceeds of the fraudulent scheme were channeled into accounts for which Devine and/or her children were beneficiaries; and Devine has acknowledged that the source of her wealth is Homm. (Compl. ¶ 7; Devine 5/30/12 Testimony (Dysard Decl., Ex. 13) at 3; *see also* TRO at 2, 21-22.)[14] The assets in question are located throughout the world, and the Funds learned about a number of them for the first time on July 22, when Devine provided the financial disclosure required under the TRO. Until the Funds have all of the underlying records relating to the disclosed assets, the Funds cannot reasonably be expected to trace the Penny Stock Scheme proceeds to those assets. Devine has it exactly backwards: during merits discovery, the Funds will require evidence from Devine on tracing, not *vice versa*.

---

[14] *See generally SEC v. Founding Partners Capital Mgmt.*, No. 09-CV-220, Doc. #56, at 7 (M.D. Fla. May 7, 2009) (Steele, J.) ("A district court may enter an order freezing all of a defendant's assets, even though the assets are not related to the alleged fraud and it is not certain whether disgorgement will be ordered or the amount of such disgorgement, if ordered. Such a freeze order may remain in effect until the district court determines whether it can make an informed determination of the amount of unlawful proceeds retained by the defendants, and, if it can, what amount may approximate.") (internal quotation marks and citation omitted).

II.      Devine's Motion for a RICO Case Statement Should Be Denied

Devine's motion for a RICO case statement should also be denied. She has not identified any material information she might glean from such a statement that is not already alleged in the Complaint, addressed in the Court's TRO, or both. *See Gutierrez v. Givens*, 1 F. Supp. 2d 1077, 1087-88 (S.D. Cal. 1998) (denying defendant's request for further particularization in a RICO case statement because "the purposes of the case statement requirement, notice to the defendant and the filtering out of meritless complaints, have been satisfied").

In support of her request for a RICO case statement, Devine relies upon the model Civil RICO Case-Statement Order ("Model Statement") contained in the Federal Judiciary Center's *Manual for Complex Litigation, Fourth* (2004).[15] (A copy of the Model Statement is attached as Exhibit A to Devine's Motion.) Devine already has virtually all of the information called for by the Model Statement. For example, the Model Statement requires a plaintiff to "[s]tate whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c), or (d)." (Item 1.) The Complaint clearly pleads violations of subsections (c) and (d) (Compl. ¶¶ 240, 274), and the Court has concluded that the Funds have a substantial likelihood of success on the merits of these claims (TRO at 59). The Model Statement also instructs a plaintiff to "[l]ist each defendant, and state the alleged misconduct and basis of alleged liability of each defendant" (Item 2) and to "[l]ist the alleged wrongdoers, other than the defendants" (Item 3). This information is pleaded in detail in the Complaint (Compl. ¶¶ 11-20) and is the subject of numerous findings in the Court's TRO.

---

[15] *Available at* https://public.resource.org/scribd/8763868.pdf.

(*See, e.g.*, TRO at 6-8, 21-25 (describing persons and entities involved in both the underlying Penny Stock Scheme and Devine's subsequent money laundering operation).) Similarly detailed allegations in the Complaint and findings in the TRO satisfy the Model Statement's requests for a list of "the alleged victims" (Item 4), a "description of the pattern of racketeering activity" (Item 5), a "description of the enterprise" (Item 6), and so on.

"The purpose of a RICO case statement is to enhance a vague complaint with additional details." *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, 17 F. Supp. 3d 207, 215 n.1 (E.D.N.Y. 2014) (quoting *DelRio-Mocci v. Connolly Props. Inc.*, 2009 WL 2989537, at *3 (D.N.J. Sept. 16, 2009)). The Complaint in this case is anything but vague. Because a RICO case statement would provide no meaningful information to Devine that she does not already have and would needlessly cause the Funds to incur additional expense, Devine's request should be denied.

## **CONCLUSION**

Devine has long supported an exceedingly lavish lifestyle for herself and her family with money she knew to be wrongfully taken from the Funds. Confronted with the Court's detailed analysis of her knowing acceptance and laundering of fraud proceeds, Devine does not seriously contest any of the Court's factual findings, which were supported by ample record evidence. Instead, she proposes extensive and unilateral expedited discovery for no legitimate purpose. For the reasons set forth above, the Funds respectfully request that Devine's Motion for Expedited Discovery and RICO Case Statement be denied in its entirety.

Dated: July 24, 2015

                                              Respectfully submitted,

                                   By: /s/ *David Spears*

| | |
|---|---|
| Thomas A. Tucker Ronzetti | David Spears |
| Florida Bar No. 965723 | Linda Imes |
| Kenneth Hartmann | Christopher Dysard |
| Florida Bar No. 664286 | Benjamin Silverman |
| Maia Aron | Sharanya Sai Mohan |
| Florida Bar No. 17188 | *Admitted Pro Hac Vice* |
| KOZYAK TROPIN & THROCKMORTON, LLP | SPEARS & IMES LLP |
| 2525 Ponce de Leon Boulevard, 9th Floor | 51 Madison Avenue |
| Miami, Florida 33134 | New York, New York 10010 |
| Telephone: (305) 372-1800 | Telephone: (212) 213-6996 |
| Facsimile: (305) 372-3508 | Facsimile: (212) 213-0849 |
| Email: tr@kttlaw.com | Email: dspears@spearsimes.com |
|        krh@kttlaw.com |        limes@spearsimes.com |
|        ma@kttlaw.com |        cdysard@spearsimes.com |
| |        bsilverman@spearsimes.com |
| |        smohan@spearsimes.com |
| *Counsel for Plaintiffs* | *Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

I, David Spears, hereby certify that on this 24th day of July 2015, I caused to be filed the foregoing Memorandum with the Clerk of the Court using CM/ECF.

By: /s/ *David Spears*