**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| ABSOLUTE ACTIVIST VALUE MASTER FUND LIMITED, ABSOLUTE EAST WEST FUND LIMITED, ABSOLUTE EAST WEST MASTER FUND LIMITED, ABSOLUTE EUROPEAN CATALYST FUND LIMITED, ABSOLUTE GERMANY FUND LIMITED, ABSOLUTE INDIA FUND LIMITED, ABSOLUTE OCTANE FUND LIMITED, ABSOLUTE OCTANE MASTER FUND LIMITED, AND ABSOLUTE RETURN EUROPE FUND LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> SUSAN ELAINE DEVINE, <br><br> Defendant. | Case No. 2:15-cv-328-FtM-29MRM |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO MODIFY TEMPORARY RESTRAINING ORDER TO RELEASE FUNDS FOR LIVING EXPENSES AND ATTORNEYS' FEES**

Plaintiffs ("the Funds") respectfully submit this memorandum in opposition to the Motion to Modify Temporary Restraining Order to Release Funds for Living Expenses and Attorneys' Fees (Doc. #44) ("Motion") filed by Defendant Susan Elaine Devine ("Devine"), which has been set for hearing on July 30, 2015.[1]

---

[1] This opposing brief has been prepared on extremely short notice. Devine filed the Motion on Sunday, July 26, and did not provide the Funds with redacted copies of two key exhibits to the Motion, Exhibits 3 and 4, until the evening of Monday, July 27. Pursuant to Judge McCoy's Amended Order of July 27 granting Devine's application to file under seal the four exhibits to her Motion (Doc. #48), the Funds have redacted from the electronically filed version of this brief all discussion of the contents of those exhibits. The Funds will provide an unredacted copy of this filing to Devine's counsel and an unredacted courtesy copy for the Court through the Clerk's office. The Funds will take instruction from the Court at tomorrow's hearing about whether an unredacted version of this brief should be filed publicly.

**PRELIMINARY STATEMENT**

In her Motion, Devine asks the Court to modify the July 1, 2015 temporary restraining order ("TRO") to release funds from ■ bank accounts totaling approximately ■■■, so that she may: (1) enjoy ■■■ in personal living expenses over the next year;[2] (2) pay legal expenses estimated at ■■■ over the next year;[3] and (3) ■■■■■■■■■■■■■■■■■■■■■■■ (and growing to roughly ■■■ as of the July 30 hearing, according to a back-of-the-envelope calculation).[4]  (Motion at 6-7, 13-14.)  If granted over the Funds' objection, such a modification would constitute a denial of the Funds' application for a preliminary injunction ("PI") to the extent of the funds released to her.  *See Mitsubishi Int'l Corp. v. Cardinal*



*Textile Sales, Inc.*, 14 F.3d 1507, 1516-17 (11th Cir. 1994) ("[I]t is appropriate to treat the district court's orders [granting an application to release funds for attorneys' fees] as denials of a preliminary injunction[.]"). Such a denial of the Funds' thoroughly documented and as yet unopposed application for a PI would be insupportable based on Devine's submissions and the availability of other assets to pay her expenses.[5]

The Funds do not dispute that a defendant who is subject to an asset freeze should be permitted to unfreeze assets sufficient to support reasonable living expenses and attorneys' fees if unencumbered funds are not sufficient to cover such expenses and fees. (*See* TRO at 62.) Here, however, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ produced by Devine pursuant to the TRO on July 22 (Motion, Ex. 2) ("Asset Schedule"), coupled with other available evidence, indicates that ▮▮▮▮▮▮ ▮▮▮[6] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Under these circumstances, Devine's proposal, which ignores the potentially untainted assets and seeks instead to unfreeze millions of dollars of evidently traceable fraud proceeds in 26 bank accounts, is patently unreasonable.

Devine acknowledges the existence of such arguably "separate" assets and has stated that she will move to unfreeze them at some unspecified later date (Motion at 2 n.1), but she

---

[5] Although Devine has been on notice of an impending PI hearing since July 9, she has repeatedly asked the Court to adjourn the date by which Devine must submit any opposition. (*E.g.*, Doc. #21, at 6.) With the TRO set to expire tomorrow, July 30, Devine has not offered any written opposition to the Funds' motion for a PI and made no effort to contest the Court's extensive factual findings.

[6] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3

has shown no interest in doing so promptly so as to avoid the need for the Court to assess the reasonableness of her proposed living and legal expenditures. Instead, she has moved to lift the restraint ██████████████████████████████████████████████████

██████████████████████████████████████████████████

████[7] That is, even though Devine may well be able to demonstrate, with relative ease, that many millions of dollars' worth of currently restrained assets should be unfrozen – thereby making them available to pay whatever astronomical amounts of expenses she chooses – Devine has strategically put that effort on the back burner ████████████████████

██████████████████████████████████████████████████

████████████████████████████

By opting not to simply seek release of untainted amounts sufficient to pay whatever she pleases, Devine forces consideration of the line items in her requests for living and legal expenses. Those requests are not supported by adequate disclosures and, in any event, are unreasonable by any measure, as they far exceed the expenses approved by courts in other cases. For example, Devine seeks the release of more than ████████████ to cover various "expenditures" for ██████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

---

[7] At the July 28 status conference, the Funds submitted to the Court a document marked Court Exhibit A, a modified version of the Asset Schedule included in Exhibit 2 to Devine's Motion. In that exhibit, the ██ ████████ that Devine seeks to unfreeze are highlighted in yellow.

4

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████ even a head of state would be hard-pressed to defend many of the itemized expenditures as necessary or reasonable. Devine's request for legal expenses similarly exceeds by a large multiple the expenses deemed reasonable in other cases.

Although Devine has not carried her burden of establishing her right to relief from the TRO, the Funds propose the following way forward, as discussed more fully herein. Assuming Devine will consent to the extension of the TRO until the Court rules on the Funds' pending motion for a PI, the Funds stipulate that they will consent, without further inquiry or analysis, to the immediate release from the freeze of the following assets, ████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[8] ███████████████████████████████████████

███████████████████████████████████████

████████████████████████████

## ARGUMENT

I. **Devine Has Failed to Carry Her Burden of Demonstrating That No Other Assets Are Available to Cover the Exorbitant Expenses She Claims**

Devine's Motion fails first and foremost because she is unable to show that the modification she seeks is necessary for her to have access to funds to pay living or legal expenses.

"Trial courts should . . . consider whether a release of living expenses will deplete the assets available for potential victims." *FTC v. Ideal Fin. Solutions, Inc.*, 2014 WL 4541191, at *2 (D. Nev. Sept. 9, 2014).[9] Similarly, Devine bears the burden of demonstrating that she "can secure the services of an attorney *only* if assets subject to the freeze order are released." *Federal Sav. & Loans Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987) (emphasis added); *accord FTC v. USA Fin., LLC*, 2008 WL 3165930, at *3 (M.D. Fla. Aug. 6, 2008) (denying application to unfreeze funds because, *inter alia*, "[Defendant] will have an alternate source of income outside of his frozen assets from which he can pay for his living expenses and attorney fees"); *cf. SEC v. Duclaud Donzalez de Castilla*, 170 F. Supp. 2d 427, 430 (S.D.N.Y. 2001) (indicating that a defendant cannot demonstrate need to unfreeze money if the "quantum of proof" exists to maintain an injunction and the defendant "offers no

---

[9] Some courts have further held that "[t]o succeed on a motion to modify [a] freeze to permit payment of attorneys' fees and other expenses, [a] defendant 'must establish that such a modification is in the interest of defrauded investors.'" *Richards v. Mountain Capital Mgmt. LLC*, 2010 WL 2473588, at *2 (S.D.N.Y. June 17, 2010) (brackets in original) (quoting *SEC v. Credit Bancorp Ltd.*, 2010 WL 768944, at *4 (S.D.N.Y. Mar. 8, 2010)).

6

evidence of his overall assets or income, and is a man of substantial means").[10]  Accordingly, "[a] determination to unfreeze assets for the purposes of living expenses or defense fees requires consideration of 'whether the defendants have other available funds by which to pay their attorneys.'"  *FTC v. 4 Star Resolution, LLC*, 2015 WL 4276273, at *1 (W.D.N.Y. July 14, 2015) (quoting *FTC v. OT, Inc.*, 467 F. Supp. 2d 863, 866 (N.D. Ill. 2006)).

Taking into account those assets that Devine claims are untainted and that the Funds have now agreed to release, Devine has failed to make the necessary showing.  Devine's Asset Schedule lists 

---

[10] Each of these cases – *Dixon*, *USA Financial*, and *Duclaud* – is cited as persuasive authority by Devine.  (Motion at 5, 8.)

[11] ▮.

[12] ▮

[13] ▮.

7

██████████████████████████████████████████████████████████████████████

████████████████████████

    ████████████████████████████████████████████████████

████████  ████  ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████  It is of no legal significance that Devine might have to be more aggressive in her efforts to sell the property than she would be in other circumstances. *See generally FTC v. IAB Mktg. Assoc., LP*, 972 F. Supp. 2d 1307, 1315 (S.D. Fla. 2013) ("[I]t is axiomatic that an asset freeze, set forth in the interest of preserving illegal proceeds from dissipating before there has been a final disposition on the merits, may have unpleasant consequences for the defendant, including foreclosures on real estate, injury to legitimate business enterprises and other personal hardship.") (quoting *SEC v. Schiffer*, 1999 U.S. Dist. LEXIS 9723, at *3 (S.D.N.Y. June 30, 1999)).

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

---

[14] ████████████████████████████████████████████████████████████████
████████████████████████████████████████████



That Devine might believe she could realize a greater value if she

9

waited two or three years to auction ▮▮▮▮ has no legal significance for present purposes.  *See IAB Mktg. Assoc., LP*, 972 F. Supp. 2d at 1315.

▮▮▮▮

▮▮▮▮  These assets, two of which can be sold at fair market value relatively quickly in active international markets for such rarities, will support all of Devine's expenses well into the future, including her living and legal expenses indefinitely, without restriction and without the supervision and approval of the Court.  Such an approach would also spare the Funds the hardship of having assets that constitute proceeds of the Penny Stock Scheme drained to support Devine's regal lifestyle and exorbitant legal expenses.

**II.    Devine's Preferred Order of Assets to Be Liquidated
to Pay Her Exorbitant Expenses Reflects a Cynical Strategy
to Inflict the Maximum Prejudice on The Funds**

▮▮▮▮

---

[17] ▮▮▮▮



[19]

Devine evidently views the current Motion as just the first wave of attacks against the asset freeze order. If she is successful in unfreezing the ▮▮▮▮▮, her attention is likely to turn to the assets she believes are untainted. (*See* Motion at 2 n.1.) And then, as the third wave, she will coordinate with her children to attack the asset freeze as it relates to any accounts for which the children are nominal beneficiaries. Indeed, in her Motion, Devine advises the Court that her "children are retaining separate counsel and anticipate filing a

---



motion to release certain of their unrestrained funds as well" (*id.*) –



### III. The Amount That Devine Seeks in Expenses Is Patently Unreasonable

If the Funds' proposal outlined above is not accepted and Devine's living and legal expenses must be scrutinized, then there is no other conclusion but that they are unreasonable. Her requested expenditures should be cut back dramatically.

As an initial matter, it is clear that where, as here, an asset restraint has been implemented to preserve fraud proceeds, a district court has the discretion to deny a defendant's request to spend *any* of that money on her own civil defense so as to ensure that all remaining ill-gotten gains remain available for return to the victims. *See, e.g.*, *FTC v.*

---

[20]

*World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989); *see also SEC v. Infinity Grp. Co.*, 212 F.3d 180, 197 (3d Cir. 2000); *CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995).  The fact that this causes difficulties for the defendant is not dispositive.  *See IAB Mktg. Assoc.*, 972 F. Supp. 2d at 1314-15 ("The Court appreciates that the asset freeze is difficult for [the defendants] and that things would be much easier if they could access the money they gained at [the victim's] expense.").[21]

Nonetheless, the Funds do not dispute that Devine should be able to access some of the currently frozen assets to support a *reasonable* lifestyle and to pay *reasonable* attorneys' fees.  Devine's Motion, however, seeks an extravagant lifestyle and enormous attorneys' fees far out of line with what has been permitted in any precedent identified by Devine or independently located by the Funds.

Devine's eye-popping request for  dwarfs any comparable award that the Funds have been able to identify.  In certain dated cases cited by Devine, defendants were allowed $1,000 per month for

---

[21] In a criminal case, the government may seize assets before trial that a defendant intends to use to pay a criminal defense attorney so long as probable cause exists to believe that the property will ultimately be forfeitable.  *See United States v. Monsanto*, 491 U.S. 600, 615 (1989); *United States v. Kaley*, 677 F.3d 1316 (11th Cir. 2012), *aff'd*, 134 S. Ct. 1090 (2014).  Although criminal defendants enjoy the backstop of the Criminal Justice Act panel, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."  *Wheat v. United States*, 486 U.S. 153, 159 (1988).  Accordingly, the Seventh Circuit has reasonably noted that a civil defendant's assertion of a right to use criminally-derived proceeds for a civil defense attorney are weaker, as "[i]t would be anomalous to hold that a civil litigant has any superior right to counsel than one who stands accused of a crime."  *SEC v. Cherif*, 933 F.2d 403, 417 (7th Cir. 1991).

[22] █████████

"necessary living expenses," *CFTC v. Muller*, 570 F.2d 1296, 1301 (5th Cir. 1978), and $3,500 a month for "personal expenditures," *Dixon*, 835 F.2d at 564. More recent cases located by the Funds have allowed monthly living expenses of $2,000, *Microsoft Corp. v. U-Top Printing Corp.*, 46 F.3d 1143, 1995 WL 7950, at *2 (9th Cir. 1995) (unpublished), or even $7,500, *SEC v. McGinnis*, 2013 WL 6500268, at *6 (D. Conn. Dec. 11, 2013). But Devine's request for more than $108,000 per month (when taking into account the "near-term" "one-term" expenses) exceeds these figures by many multiples.

Moreover, the very cases cited by Devine have rejected efforts to unfreeze fraud proceeds to pay for the kind of "luxuries" Devine insists are necessary for her to maintain. ███████████████████████████████████████████████████████████████████████████████

Yet *SEC v. Dowdell*, a case upon which Devine relies (Motion at 5, 8), notes that courts have viewed housekeepers and handy-men as are "luxuries" rather than "necessities" and that money otherwise preserved for victims should not be unfrozen to allow for these kinds of lavish expenses. 175 F. Supp. 2d 850, 854 (W.D. Va. 2001). *Dowdell* in turns relies on a case that declined a request to unfreeze additional money for an individual who sought money for "extraordinary items such as expensive hair car, lawn service (alleged to cost $583 a month), pool service, and cable television." *SEC v. Coates*, 1994 WL 455558, at *1-2 (S.D.N.Y. Aug. 23, 1994). ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

14



15

███████████████████████████████████████████████████████████

███████████████████████████████

      ████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████ ████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████

As with her requests for lavish living expenses, Devine's request to unfreeze ████████ ████████ for attorneys' fees far exceeds what is contemplated by relevant precedent. The largest amount of attorneys' fees approved in a case cited by Devine is $70,000. *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 575-76 (7th Cir. 1989). ████████████████

---

[24] ████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████

Evaluating which of Devine's expenditures are reasonable and necessary is much easier for Devine than for the Funds or the Court, yet she has taken a complete pass. ████ ███████████████████████████████████████████████████████████ ██████ The Funds submit that many of those expenditures, █████████████████ ███████████████████████████████████████████████ ██████████, should be eliminated under the circumstances.   Further, any partial lifting of the freeze to permit payment of expenses should be tailored to the reasonable expenditures to be incurred by Devine through the end of September 2015 – not, as she would have it, through next year.

---

[25] ███████████████████████████████████████████████████████████ █████████████████████████████

## **CONCLUSION**

For all of the foregoing reasons, the Funds respectfully request that the Court deny Devine's Motion.

Dated: July 29, 2015

                                            Respectfully submitted,

                                       By: /s/ *David Spears*

| | |
|---|---|
| Thomas A. Tucker Ronzetti | David Spears |
| Florida Bar No. 965723 | Linda Imes |
| Kenneth Hartmann | Christopher Dysard |
| Florida Bar No. 664286 | Benjamin Silverman |
| Maia Aron | Sharanya Sai Mohan |
| Florida Bar No. 17188 | *Admitted Pro Hac Vice* |
| KOZYAK TROPIN & THROCKMORTON, LLP | SPEARS & IMES LLP |
| 2525 Ponce de Leon Boulevard, 9th Floor | 51 Madison Avenue |
| Miami, Florida 33134 | New York, New York 10010 |
| Telephone: (305) 372-1800 | Telephone: (212) 213-6996 |
| Facsimile: (305) 372-3508 | Facsimile: (212) 213-0849 |
| Email: tr@kttlaw.com | Email: dspears@spearsimes.com |
|        krh@kttlaw.com |        limes@spearsimes.com |
|        ma@kttlaw.com |        cdysard@spearsimes.com |
| |        bsilverman@spearsimes.com |
| |        smohan@spearsimes.com |
| *Counsel for Plaintiffs* | *Counsel for Plaintiffs* |