UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ABSOLUTE ACTIVIST VALUE
MASTER FUND LIMITED,
ABSOLUTE EAST WEST FUND
LIMITED, ABSOLUTE EAST WEST
MASTER FUND LIMITED,
ABSOLUTE EUROPEAN CATALYST
FUND LIMITED, ABSOLUTE
GERMANY FUND LIMITED,
ABSOLUTE INDIA FUND LIMITED,
ABSOLUTE OCTANE FUND
LIMITED, ABSOLUTE OCTANE
MASTER FUND LIMITED, and
ABSOLUTE RETURN EUROPE FUND
LIMITED,

      Plaintiffs,

v.                          Case No: 2:15-cv-328-FtM-29MRM

SUSAN ELAINE DEVINE,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on Plaintiffs' Motion for Order Requiring Defendant to Show Cause Why She Should Not Be Held in Contempt for Violation of the Temporary Restraining Order (Doc. #115) and Affidavit of David Spears in support of same (Doc. #116), both filed on October 14, 2015. Defendant filed an Opposition to Plaintiffs' Motion (Doc. #128) on October 28, 2015.

Also before the Court is Laird Lile, as Custodian f/b/o Isabella Devine, Orion Corporate & Trust Services, Ltd, and the Hosifa Stiftung Foundation, 200017's Motion to Intervene (Doc.

#103), and Laird Lile, as Custodian f/b/o Conrad Homm, Orion Corporate & Trust Services, Ltd, the Hosifa Stiftung Foundation, 200017, and Conrad Homm's Motion to Intervene (Doc. #105), both filed on October 2, 2015. Plaintiffs filed a Memorandum in Opposition to the Motions to Intervene (Doc. #129) and Affidavit in support of same (Doc. #130) on October 30, 2015. Pursuant to leave of Court, putative intervenors filed a Joint Reply Memorandum in support of their Motions to Intervene (Doc. #139) on November 10, 2015.

## I.

### A. General Background

On June 1, 2015, plaintiffs filed a six-count Complaint against Ms. Susan Devine (defendant or Devine) alleging that Devine engaged in a money laundering enterprise with her ex-husband, Florian Homm, to conceal tens of millions of dollars fraudulently taken from the plaintiffs pursuant to an illegal "Penny Stock Scheme." (Doc. #2.) Concurrently with the filing of the Complaint, plaintiffs filed an *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction seeking to "restrain[] Devine from transferring or dissipating any and all assets in her name." (Doc. #3, p. 10.)

On July 1, 2015, this Court entered an Order granting plaintiffs' Motion for Temporary Restraining Order. (Doc. # 10.) The Court discussed in detail the intricate factual allegations

that form the basis of the claims.  (Id. at 1-49)  The TRO contains

the following pertinent provision:

> Defendant Susan Elaine Devine, her officers, agents,
> servants, and employees and any persons in active
> concert or participation with them are temporarily
> restrained and enjoined from directly or indirectly
> transferring, selling, alienating, liquidating,
> encumbering, pledging, leasing, loaning, assigning,
> concealing, dissipating, converting, withdrawing, or
> otherwise disposing of any money or other of Devine's
> assets, including: (i) any assets located in bank
> accounts or other financial accounts in Devine's name
> (or for her benefit or the benefit of her children) or
> the names of foundations benefitting or controlled by
> Devine, including but not limited to any account of Brek
> Stiftung, Loyr Stiftung, Hosifa Stiftung, Floma
> Foundation, and/or Levanne Stiftung, or otherwise under
> her direct or indirect control; (ii) Devine's residence
> in Naples Florida; and (iii) any other assets of any
> type, and in any form, held by Devine, or under her
> direct or indirect control, anywhere in the world.

(Id. at 66-67.)  Additionally, the Court ordered Devine to produce

"documents sufficient to identify all assets, anywhere in the

world, currently under her direct or indirect control . . . ."

(Id. at 67.)  The TRO has since been extended and modified by

various Court Orders (see, e.g., Docs. ##16, 55, 67), and has now

been extended through the trial on the merits. (See Doc. #83.)  At

no time since its entry has the TRO not been in place.

In response to the Court's July 1, 2015 Order requiring

production of documents identifying any and all assets under her

direct or indirect control, Devine produced a list of eighty-two

individually identified assets, eleven of which were shown as being

held by Devine for the benefit of Isabella and/or Conrad (her

children). (Docs. #116-1, 130-1.)  The putative intervenors seek to intervene as to nine of the eleven assets held for the benefit of Isabella and/or Conrad. (Docs. ##103, 105.)  Specifically, the intervenors seek to intervene as to:

> (1) Deutsche Bank Alex. Brown, asset held in the name of "Laird Lile Custodian FBO Isabella Devine," acct. ***-**9751;

> (2) Deutsche Bank Alex. Brown, asset held in the name of "Laird Lile Custodian FBO Isabella Devine," acct. ***-**3735;

> (3) Deutsche Bank Alex. Brown, asset held in the name of "Laird Lile Custodian FBO Conrad Homm," acct. ***-**9769;

> (4) Deutsche Bank Alex. Brown, asset held in the name of "Laird Lile Custodian FBO Conrad Homm," acct. ***-**3727;

> (5) Heritage International Bank & Trust Limited, asset held in the name of "Ciel Horizon Trust," 704566 (Isabella Devine and Conrad Homm are beneficiaries of the trust, each with equal interest);

> (6) PHZ-UND Handelsbank, asset held in the name of "Hosifa Stiftung," 200017 (Isabella Devine and Conrad Homm are beneficiaries, each with equal interest);

> (7) Fidelity Investments Account No. ***-7208, held in the name of Susan Devine FBO Conrad Homm;

> (8) Bank of America Account, Berkeley California, No. *** *****4389 in the name of Conrad Homm; and

> (9) Bank of America Account, Berkeley California, No. **** ****8491.

(See Doc. #103, pp. 2-3; Doc. #105, pp. 3-4.)

**B. Transfer of Custodianship**

Despite the TRO, on August 14, 2015, the custodianship of the four bank accounts held at Deutsche Bank Alex. Brown ("DB"), ending in 9751, 3735, 9769, and 3727, was transferred from Susan Devine to Laird Lile pursuant to

a "Resignation, Designation, Receipt of Notice, and Acceptance" relating to the four DB accounts. (Docs. #116-2; #116-3, pp. 3, 5-9.)  This was discovered when the October 2, 2015 motions to intervene disclosed that Devine had transferred custodianship of four bank accounts she had previously identified as being part of the assets under her direct or indirect control and subject to the Court's July 1, 2015 TRO. (Doc. #103-1, p. 6; Doc. #105, ¶ 5.)

**II.**

Plaintiffs seek an Order requiring defendant to (1) show cause why she should not be held in contempt for violating the Court's July 1, 2015 TRO by transferring control of the four custodial accounts held at DB; (2) cure the transfer of these accounts; and (3) disclose all actions she or anyone else has taken since the entry of the TRO to alter or modify in any way her ability to directly or indirectly control any of the assets subject to the TRO, "including change in control of any entity that itself has direct or indirect control over any such asset." (Doc. #115, p. 2.)

Defendant's Response asserts that the transfers did not violate the express terms of the TRO because only custodianship was transferred, and not the assets within the accounts. (Doc. #128, pp. 8-9.) Alternatively, defendant asserts that the custodial assets remain subject to the jurisdiction of the Court, the children have the right to protect the assets, and the language of the TRO is ambiguous. (Id. at 10-15.)

**A. Enforcement of the TRO**

A temporary restraining order which has been extended beyond the time period specified in Fed. R. Civ. P. 65 is treated as a preliminary injunction, Sampson v. Murray, 415 U.S. 61, 87 (1974), and as such is enforced through the district court's contempt power. Faught v. Am. Home Shield Corp., 660 F.3d 1289, 1293 (11th Cir. 2011). Parties cannot ignore the directives of a preliminary injunction simply because one or more lawyers think such action is appropriate. Levine v. Comcoa Ltd., 70 F.3d 1191, 1193-94 (11th Cir. 1995). A finding of civil contempt must be supported by clear and convincing evidence that (1) the "allegedly violated order was valid and lawful," (2) "the order was clear and unambiguous," (3) "the alleged violator had the ability to comply with the order," and (4) the order was violated. F.T.C. v. Leshin, 618 F.3d 1221, 1232 (11th Cir. 2010) (citing Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1296 (11th Cir. 2002)). "Once this prima facie showing of a violation is made, the burden then shifts to

the alleged contemnor to produce evidence explaining [her] compliance at a 'show cause' hearing." <u>Chairs v. Burgess</u>, 143 F.3d 1432, 1436 (11th Cir. 1998).  The parties do not dispute the first and third requirements, but focus solely on the second and fourth.

   **(1)  Clear and Unambiguous Order**

   Defendant asserts that the TRO is ambiguous because it is subject to at least two reasonable interpretations. (Doc. #128, pp. 13-14.)  Defendant contends that one reasonable interpretation is that the TRO only prevented "outright transfer[s] of restrained assets," and the change in custodianship is not such an outright transfer. (<u>Id.</u> at 14)  The Court disagrees.

   The Court's July 1, 2015 Order reviewed the complex factual background surrounding the "Penny Stock Scheme" and Devine's alleged subsequent attempt to hide the proceeds therefrom. (Doc. #10.)  The Court discussed at great length the allegations that the proceeds from the Penny Stock Scheme were transferred strategically among various accounts in an attempt to hide and protect the proceeds, including to those accounts held for the benefit of Isabella Devine and Conrad Homm. (<u>See</u> <u>id.</u>)  The Court clearly stated that the purpose of the TRO was to "maintain the status quo thereby ensuring that Devine will not have an opportunity to use or conceal the Penny Stock Scheme proceeds." (<u>Id.</u> at 62.)

The Court's TRO enjoined Devine from "directly or indirectly" transferring, assigning, converting, or otherwise disposing of any money or other assets. (Id. at 66-67.)  The Court went further to indicate that "money and other assets" included assets located in bank accounts or other financial accounts in Devine's name or for the benefit of her children and "any other assets of any type, in any form, held by Devine, or under her direct or indirect control, anywhere in the world." (Id.)  The TRO covered not only the accounts that were for the benefit of Devine's children, but also any and all other assets under the direct or indirect control of Devine.

The Court finds that the TRO clearly and unambiguously encompassed the four DB custodial accounts at issue.  Further, the TRO clearly enjoined the "direct or indirect" transfer or assignment of the accounts for the benefit of defendant's children and any other asset held by Devine or under her direct or indirect control.  The transfer/assignment of the custodianship of the accounts transferred the control of the accounts, including control of all of the funds located therein.  See Fla. Stat. § 710.114 (stating custodian of a UTMA account has "control" over the custodial property); N.Y. Est. Powers & Trusts Law § 7-6.12 (McKinney 2015) (same).  The Court finds that the TRO is clear and unambiguous.

Along with the entry of the TRO, the Court also granted plaintiff's motion for expedited discovery finding that the requested discovery was "narrowly tailored to identify the assets subject to the freeze." (Doc. #10, p. 66.) Specifically, the Court ordered Devine to produce

> documents sufficient to identify all assets, anywhere in the world, currently under her direct or indirect control, including, for every bank account or other financial account: the bank or entity, its location, the accountholder's name, the account number, and the current balance; and for every other asset, a description of the asset, its location, and its actual or estimated value.

(Id. at 68.) In response to the Order, Devine produced an itemized list which included the four DB custodial accounts. (Doc. #116-1.) Devine made no complaints that she did not understand the parameters of the TRO prior to producing the itemized list, and has never asserted these asserts were mistakenly listed.

### (2)  Violation of the Order

Defendant also asserts that the transfer of custodianship was not a violation of the TRO because it did not act to transfer the assets within the accounts, just the control over the account. (Doc. #128, p. 10.) The Court disagrees.

"[S]ubstantial, diligent, or good faith efforts [at compliance] are not enough; the only issue is compliance." F.T.C., 618 F.3d at 1232 (citing Combs v. Ryan's Coal Co., 785 F.2d 970, 984 (11th Cir. 1986)). As stated above, the purpose of

the TRO was to maintain the status quo by prohibiting Devine from transferring any proceeds allegedly obtained as a result of the Penny Stock Scheme.  (Doc. #10, p. 62.)  Following the entry of the TRO, defendant transferred custodianship of the four DB accounts to Laird Lile. (Doc. #116-2).  Now Laird Lile is seeking to intervene on behalf of Isabella Devine and Conrad Homm (Docs. ##103, 105), and intends to seek dissolution of the TRO on the basis that the custodial bank accounts are not subject to the TRO because they are no longer under the control of Devine.  (Docs. ##103, 103-1, 105.)  Thus, defendant appears to have transferred the custodianship of the accounts to Laird Lile in an effort to remove these "assets" from the scope of the TRO and evade the very purpose of the TRO.  The Court finds the transfer of custodianship of the DB accounts clearly violated the July 1, 2015 TRO.

  **(3)   Sanction**

    Since the unilateral transfer of custodianship of the DB accounts violated the TRO, and Devine should have come to the Court prior to relinquishing custodianship of the accounts, the issue becomes what remedy is appropriate.  It appears that the transfer of custodianship is in the best interests of the beneficiaries of those accounts, given the alleged conflict of interests as to the use of the funds.  As the Court understands it, none of the funds or assets in any of the four accounts have been dissipated by the new custodian, and the new custodian agrees that the accounts are

subject to the TRO and their assets will not be removed without an order from the Court. (Doc. #128-11, pp. 4-5.) With these acknowledgements, and the express order of the Court set forth below, the Court finds no prejudice to plaintiffs from defendant's actions so far. Additionally, the Court will order defendant to file a notice within seven days of the date of the Opinion and Order disclosing all actions she or anyone else has taken since the entry of the TRO to alter or modify in any way her ability to directly or indirectly control any of the assets subject to the TRO, including change in control of any entity that itself has direct or indirect control over any such asset.

### III.

Intervenors seek to intervene to protect the nine assets that list Isabella Devine and/or Conrad Homm as beneficiaries or sole owner(s). (Doc. #103, pp. 2-3; Doc. #105, pp. 3-4.) Intervenors assert that they are entitled to intervene as a matter of right because their motions are timely, they have an interest in the assets affected by the TRO, their interests are not adequately represented by defendant Devine, and disposing of the case without allowing intervention could impair their ability to protect their interests.

The legal arguments for intervention as a matter of right are clear:

> A party seeking to intervene as of right under Rule 24(a)(2) must show that: (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.

Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989). If the putative intervenor establishes the four prerequisities, the Court must allow the intervenor to intervene as a matter of right. Id.

## A. Timeliness

In determining timeliness of a motion to intervene, the Court

> must consider the length of time during which the [intervenors] knew or reasonably should have known of their interest in the case before moving to intervene, the extent of prejudice to the existing parties as a result of the [intervenors'] failure to move for intervention as soon as they knew or reasonably should have known of their interest, extent of prejudice to the [intervenors] if their motion is denied, and the existence of unusual circumstances militating either for or against a determination that their motion was timely.

Id. (citing United States v. Jefferson County, 720 F.2d 1511, 1516 (11th Cir. 1983)). The timeliness requirement is meant to "have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." Id.

Plaintiffs commenced the present action on June 1, 2015. (Doc. #2.) The TRO was entered on July 1, 2015, and served on Susan

Devine on July 14, 2015. (Doc. #17.)   Intervenors filed their Motions to Intervene on October 2, 2015 (Docs. ##103, 105), approximately two and a half months after Defendant, Susan Devine, was served with the TRO.   Currently, there is a pending Motion to Dismiss the Complaint, and the matter is still in its early stages.

The Court finds that the motions were timely filed.   While plaintiffs urge that Isabella and Conrad would have known about the TRO on the day that it was served on their mother, the Court does not have any factual information to establish that assertion. In any event, the Court finds that even if they did find out on the day that Susan Devine was served with the TRO, two and a half months is certainly a reasonable amount of time in this case to prepare and file their motions, and does not cause substantial delay or prejudice to the plaintiffs.   The deadlines outlined in the Case Management and Scheduling Order will not be substantially disrupted as the deadline to add parties or amend pleadings has not yet expired, and there is currently a pending Motion to Dismiss.   Accordingly, the Court finds that the motions are timely.

## B. Interest Relating to the Property or Transaction

An interest under Fed. R. Civ. P. 24(a)(2) means a "significantly protectable interest." Donaldson v. United States, 400 U.S. 517, 531 (1971).   "Intervention of right is only available if the interest asserted is 'direct, substantial, [and] legally

protectable.'" <u>Huff v. Comm'r of IRS</u>, 743 F.3d 790, 796 (11th Cir. 2014) (quoting <u>Athens Lumber Co., Inc. v. Fed. Election Comm'n</u>, 690 F.2d 1364, 1366 (11th Cir. 1982)).  "[A] legally protectable interest 'is something more than an economic interest.'" <u>Mt. Hawley Ins. Co. v. Sandy Lake Props, Inc.</u>, 425 F.3d 1308, 1311 (11th Cir. 2005) (quoting <u>United States v. S. Fla. Water Mgmt. Dist.</u>, 922 F.2d 704, 710 (11th Cir. 1991)).  "What is required is that the interest be one which the *substantive* law recognizes as belonging or being owned by the applicant." <u>S. Fla. Water Mgmt. Dist.</u>, 922 F.2d at 710 (emphasis in original) (quoting <u>New Orleans Pub Serv., Inc. v. United Gas Pipe Line Co.</u>, 732 F.2d 452, 464 (5th Cir. 1984)).

In the instant matter, the proposed intervenors are the beneficiaries, custodians, trustees, or sole owners of nine of the assets subject to the TRO.  (Doc. #103, pp. 2-4; Doc. #105, pp. 3-4, 6.)

**(1) Laird Lile**

Laird Lile seeks to intervene as custodian of the four DB accounts held for Isabella Devine or Conrad Homm, stating "Laird Lile, a Florida lawyer, has succeeded Susan Devine as Custodian, . . ." (Doc. #105, p. 3 n.1.)  Evidence has been presented that at least three of these four accounts contain proceeds from the penny stock scheme.  (Docs. ##29-45, 29-46, 29-47, 29-48, 30-61.)

**(2) Orion Corporate & Trust Services, Ltd.**

Orion Corporate & Trust Services, Ltd. seeks to intervene as the trustee of the Ciel Horizons Trust 704566, which was listed as number 36 on Susan Devine's asset list and is located in a bank in Belize. (Doc. #116-1; Doc. #129, p. 6-7.) Following the entry of the TRO, Devine moved the Court to release certain funds to pay for certain expenses, including attorneys' fees. (Doc. #44.) On August 3, 2015, the Court entered an Order adopting a joint proposal submitted by the parties that modified the TRO to release certain funds. (Doc. #68.) Specifically, the TRO was modified to permit the release of funds from the Ciel Horizons Trust, account ending in 4566, to pay for Isabella's dental work, Conrad's college tuition, and Susan Devine's living expenses and attorneys' fees. (Id.) Isabella Devine and Conrad Homm are the named beneficiaries of the Ciel trust. (Doc. #103, p. 3.)

**(3) Hosifa Stiftung Foundation 200017**

Hosifa Stiftung Foundation 200017 Account itself, as opposed to a trustee or representative, seeks to intervene. (Docs. ##103, 105.) The Hosifa Account is located at PHZ in Switzerland and was frozen by the Swiss authorities on January 14, 2014 in connection with an impending investigation regarding the penny stock scheme. (Doc. #105, p. 4 n.3; Doc. #129, p. 9.) To date, the account remains frozen. (Doc. #103-1, p. 3 n.1.) There is substantial evidence that proceeds within the account were derived from the

penny stock scheme.  (Doc. #10, p. 48.)   Because the Hosifa Account itself does not have the capacity to sue or be sued, or to move to intervene, the Court will deny the Motions to Intervene as to the Hosifa Account.   Accordingly, the Motions to Intervene are denied as to the Hosifa Account.

**(4) Conrad Homm**

Conrad seeks to intervene on behalf of himself as the sole owner of two Bank of America Accounts.  (Doc. #105, p. 4.)   It appears that he is also seeking to intervene individually in regard to the Fidelity Account which is held in the name of Susan Devine FBO Conrad Homm. (Id.)

With the exception of the Hosifa Stiftung Foundation, the Court finds the other proposed intervenors have a "direct, substantial, and legally protectable" interest in the assets at issue. As custodian, Laird Lile has a legal duty to the beneficiaries, Isabella and Conrad, to protect and care for the property for which he is the Custodian. See, e.g., N.Y. Est. Powers & Trusts Law § 7-6.12 (McKinney 2015); Fla. Stat. § 710.114. Likewise, as trustee, Orion Corporate and Trust Services, Ltd. has a fiduciary duty and right to protect the property that is within the trust for the beneficiaries of the trust.  Both of these interests are recognized by law and satisfy the Rule 24(a)(2) requirement.  Lastly, as the sole owner of the Bank of America and beneficiary of the Fidelity Accounts, Conrad Homm has a direct

legal interest in the accounts.  Accordingly, the Court finds that Laird Lile, Orion Corporate and Trust Services, Ltd., and Conrad Homm have alleged an interest sufficient under Rule 24(a)(2).

**C. Disposition of the Action May Impede the Intervenors' Ability to Protect their Interest(s)**

Intervenors argue that denial of their motions to intervene will substantially impede their ability to protect their interests.  (Docs. ##103, 105, 139.)  Specifically, intervenors assert that plaintiffs have already frozen, and seek to eventually seize, the assets to which the intervenors are custodians, beneficiaries, trustees, and/or sole owners.  (Doc. #103, p. 4; Doc. #105, p. 6; Doc. #129.)  The Court agrees.

 In the event a judgment is entered in this matter in favor of plaintiffs and the nine assets, or any portion thereof, are seized, or otherwise encumbered as a result, such an encumbrance would impair the putative intervenors' interests in the assets. Accordingly, the Court finds that the intervenors have satisfied the third requirement under Rule 24(a)(2).

**D. Adequate Representation**

When a party to the litigation has the same objectives as the intervenors, there is a presumption of adequate representation. Stone v. First Union Corp., 371 F.3d 1305, 1311 (11th Cir. 2004) (citing Clark v. Putnam County, 168 F.3d 458, 461 (11th Cir. 1999)).  The presumption, however, is weak and can be overcome by

evidence to the contrary. Id. (citing Clark, 168 F.3d at 461.)  If the presumption is overcome, "adequate representation exists '[1] if no collusion is shown between the representative and an opposing party, [2] if the representative does not have or represent an interest adverse to the proposed intervener, and [3] if the representative does fail in fulfillment of his duty.'" Id. (citing Clark, 168 F.3d at 461.)  The burden of showing inadequate representation is minimal and is met if "the application shows that the representation of [the intervenor's] interest 'may be' inadequate."  Clark, 168 F.3d at 461 (quoting Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972)).

The facts presented by the intervenors show a sufficient divergence of interests between the intervenors and defendant Devine to overcome the presumption of adequate representation. Although defendant and intervenors both seek to unfreeze the assets, intervenors have presented convincing arguments that defendant Devine may be less protective of their assets and has already created a conflict situation from which they have suffered financially. (Doc. #103, p. 5; Doc. #105, pp. 6-7; Doc. #139, pp. 2-4.)  The fact that defendant is utilizing funds from an account for whom Isabella Devine and Conrad Homm are the beneficiaries supports a finding of inadequate representation.  Accordingly, the Court finds that Laird Lile, Orion Corporate and Trust Services,

Ltd., and Conrad Homm have met the minimal burden of establishing that there is inadequate representation.

Plaintiffs assert that each of these assets are actually the defendant's, and the children are listed as nominal beneficiaries in an effort to continue to hide and protect fraudulently obtained assets. (<u>See</u> Docs. ##129-30.)   If, after discovery, it is determined that defendant is the true owner and party in interest as to the nine assets that are the subject of these motions, plaintiffs may challenge the intervenors' interest in the assets. At this point in the proceedings, the intervernors have met their burden.

Accordingly, it is hereby

**ORDERED:**

1.    Motion to Intervene (Doc. #103) and Motion to Intervene (Doc. #105) are **GRANTED in part and DENIED in part.**  The motions to intervene are **granted** as to Laird Lile, Orion Corporate and Trust Services, Ltd., and Conrad Homm and **denied** as to the Hosifa Account.

2.    Laird Lile, Orion Corporate and Trust Services, Ltd., and Conrad Homm are allowed to intervene for the limited purpose of protecting their interests in the assets described in their motions.

3.    The Clerk is hereby directed to add Laird Lile, Orion Corporate and Trust Services, Ltd., and Conrad Homm, as intervening defendants to the case.

4.    Plaintiffs' Motion for Order Requiring Defendant to Show Cause Why She Should Not Be Held in Contempt for Violation of the Temporary Restraining Order (Doc. #115) is **GRANTED** to the extent that the Court finds defendant Susan Elaine Devine violated the Court's July 1, 2015 Temporary Restraining Order by transferring the custodianship of the four DB accounts to Laird Lile.

5.    The Temporary Restraining Order is hereby modified to specifically include Laird Lile in his capacity as custodian and encompass the four accounts located at Deutsche Bank Alex. Brown for which Laird Lile has taken over custodianship.  Laird Lile, his officers, agents, servants, and employees and any persons in active concert or participation with them are restrained and enjoined from directly or indirectly transferring, selling, alienating, liquidating, encumbering, pledging, leasing, loaning, assigning, concealing, dissipating, converting, withdrawing, or otherwise disposing of the DB accounts ending in 9751, 3735, 9769, and 3727, including the property therein.  The DB accounts shall remain frozen pursuant to the Court's July 1, 2015 Temporary Restraining Order until further order of the Court.

6.    Defendant shall file a notice within seven (7) days of the date of the Opinion and Order disclosing all actions she or

anyone else has taken since the entry of the TRO to alter or modify in any way her ability to directly or indirectly control any of the assets subject to the TRO, including change in control of any entity that itself has direct or indirect control over any such asset.

     **DONE and ORDERED** at Fort Myers, Florida, this ___7th___ day of December, 2015.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record