UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ABSOLUTE ACTIVIST VALUE
MASTER FUND LIMITED,
ABSOLUTE EAST WEST FUND
LIMITED, ABSOLUTE EAST WEST
MASTER FUND LIMITED,
ABSOLUTE EUROPEAN CATALYST
FUND LIMITED, ABSOLUTE
GERMANY FUND LIMITED,
ABSOLUTE INDIA FUND LIMITED,
ABSOLUTE OCTANE FUND
LIMITED, ABSOLUTE OCTANE
MASTER FUND LIMITED, and
ABSOLUTE RETURN EUROPE FUND
LIMITED,

      Plaintiffs,

v.                       Case No: 2:15-cv-328-FtM-29MRM

SUSAN ELAINE DEVINE,

      Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on defendant Susan Devine's Motion to Dissolve Temporary Restraining Order (Doc. #96) filed on September 29, 2015. Plaintiffs filed a Motion to Strike defendants' Motion to Dissolve Temporary Restraining Order (Doc. #107) and Affidavit in support of same (Doc. #108) on October 5, 2015. Defendant Susan Devine filed an Opposition to plaintiffs' Motion to Strike (Doc. #122) on October 22, 2015. On November 16, 2015, plaintiffs filed a Memorandum in Opposition to the Motion to Dissolve the Temporary Restraining Order (Doc. #142), to which

Susan Devine filed a Reply (Doc. #161) on December 10, 2015.  Susan Devine filed a Notice of Supplemental Authority (Doc. #359) on April 13, 2016.

Also before the Court is Laird A. Lile, as custodian f/b/o Isabella Devine's Motion to Dissolve Temporary Restraining Order as to Specific Assets (Doc. #157-1) filed on December 8, 2015 and Laird A. Lile, as custodian f/b/o Conrad Homm's Motion to Dissolve or Modify Temporary Restraining Order[1] (Doc. #165) filed on December 14, 2015, as renewed (Doc. #225) on January 28, 2016. Plaintiffs filed a Memorandum in Opposition to Intervenor-Defendants' Motion to Dissolve or Modify the Temporary Restraining Order (Doc. #173) and Affidavit in Support of same (Doc. #174) on December 22, 2015.

## I.    Procedural Background

On June 1, 2015, plaintiffs filed a six-count Complaint against Ms. Susan Devine ("Devine") alleging that Devine engaged in a money laundering enterprise with her ex-husband, Florian Homm, to conceal tens of millions of dollars fraudulently taken from the plaintiffs pursuant to an illegal "Penny Stock Scheme."[2]  (Doc.

---

[1] Conrad's Motion also requests the release of funds for his living expenses and attorney's fees, which was addressed by separate Order (Doc. #233) on February 2, 2016.

[2] On January 14, 2016, plaintiffs filed an Amended Complaint (Doc. #196), which is now the operative pleading. Because the allegations in the initial and Amended Complaint are virtually identical, the Amended Complaint does not affect the arguments presented in the Motions before the Court as addressed in this

#2.)  Plaintiffs' Complaint, and now Amended Complaint (Doc. #196), asserts claims against Devine for:  (1) Violation of RICO, 18 U.S.C. § 1962(c); (2) RICO Conspiracy, 18 U.S.C. § 1962(d); (3) Florida RICO and Civil Remedies for Criminal Activities; (4) Florida RICO and Florida Civil Remedies for Criminal Activities—Conspiracy; (5) Unjust Enrichment; and (6) Constructive Trust. (Docs. ##2, 196.)  Concurrently with the filing of the initial Complaint, plaintiffs filed an *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction seeking to "restrain[] Devine from transferring or dissipating any and all assets in her name."  (Doc. #3, p. 10.)

On July 1, 2015, this Court entered an Order granting plaintiffs' Motion for Temporary Restraining Order.  (Doc. # 10.) The Temporary Restraining Order ("TRO") contained the following language:

> Defendant Susan Elaine Devine, her officers, agents, servants, and employees and any persons in active concert or participation with them are temporarily restrained and enjoined from directly or indirectly transferring, selling, alienating, liquidating, encumbering, pledging, leasing, loaning, assigning, concealing, dissipating, converting, withdrawing, or otherwise disposing of any money or other of Devine's assets, including: (i) any assets located in bank accounts or other financial accounts in Devine's name (or for her benefit or the benefit of her children) or the names of foundations benefitting or controlled by Devine, including but not limited to any account of Brek Stiftung, Loyr Stiftung, Hosifa Stiftung, Floma Foundation, and/or Levanne Stiftung, or otherwise under

Opinion and Order.

her direct or indirect control; (ii) Devine's residence in Naples Florida; and (iii) any other assets of any type, and in any form, held by Devine, or under her direct or indirect control, anywhere in the world.

(Id. at 66-67.)  Additionally, the Court ordered Devine to produce "documents sufficient to identify all assets, anywhere in the world, currently under her direct or indirect control." (Id. at 68.)  In response, Devine produced a list of eighty-two individually identified assets, eleven of which were shown as being held by Devine for the benefit of her children, Isabella Devine ("Isabella") and/or Conrad Homm ("Conrad").  (Docs. ##116-1, 130-1.)

Due to the freezing of these assets, on October 2, 2015, Laird Lile, as custodian f/b/o Isabella Devine and Conrad Homm, Orion Corporate & Trust Services, Ltd, Hosifa Stiftung Foundation, 200017, and Conrad Homm moved to intervene as a matter of right to protect their interests in assets subject to the Court's TRO. (Docs. ##103, 105.)  On December 7, 2015, the Court allowed intervention by Laird Lile in his custodial capacity, Orion Corporate & Trust Services, Ltd, and Conrad Homm. (Doc. #156.)

The TRO was initially in place for a period of fourteen days and has since been modified (see, e.g., Docs. ##68, 76, 198, 230, 233, 275, 313, 333) and, pursuant to agreement of the parties, extended through the trial on the merits. (Docs. ##81, 83.)  On September 29, 2015, less than two weeks after the Court entered an

- 4 -

Order on the parties' Joint Motion to Consolidate the Preliminary Injunction Hearing with the Trial on the Merits (Doc. #83), Devine filed a Motion to Dissolve the TRO, (Doc. #96).  Currently before the Court are Devine, Isabella, and Conrad's Motions to Dissolve the TRO (Docs. ##96, 157-1, 165, 225) and plaintiffs' Motion to Strike Devine's Motion to Dissolve, (Docs. ##107, 108).

## II.  Motion to Strike

"Motions to strike are generally viewed with disfavor and infrequently granted."  Quality Inns Int'l, Inc. v. Tampa Motel Assocs., Ltd., 154 F.R.D. 283, 287 (M.D. Fla. 1994) (citing Tingley Sys., Inc. v. Bay State HMO Mgmt., Inc., 833 F. Supp. 882, 884 (M.D. Fla. 1993)).  The determination of whether a motion to strike should be granted is within the trial court's discretion.  Id.

Plaintiffs assert that Devine's Motion to Dissolve should be stricken because the motion breaches the parties' agreement embodied in the September 16, 2015 joint motion and violates the Order entered on same.  (Doc. #107.)  Plaintiffs contend that they relied upon Devine's stipulation to combine the preliminary injunction hearing with the trial on the merits, and that the motion to dissolve is an attempt at a "de facto [preliminary injunction] hearing through a motion to dissolve the TRO."  (Id. at 8.)  The Court denies plaintiffs' Motion to Strike Devine's Motion to Dissolve the Temporary Restraining Order.

The parties have agreed that the hearing on the motion for preliminary injunction would be consolidated with the trial on the merits. (Doc. #81.) Devine's counsel, however, expressed a desire to preserve arguments regarding the propriety of the initial TRO, despite the agreed consolidation of the hearing on the preliminary injunction with the trial on the merits. (Doc. #122-2, p. 5.) The motion to dissolve the TRO primarily focuses on the Court's authority to issue it, and not on the factors to be considered during a preliminary injunction hearing.[3] (See Doc. #96.) The Court will address the authority issues presented in Devine's Motion to Dissolve, without considering the Motion for Preliminary Injunction, which has been consolidated with the trial on the merits. (See Doc. #83.) Accordingly, the Court denies plaintiffs' Motion to Strike Devine's Motion to Dissolve.

### III. Motions to Dissolve

Devine, Isabella, and Conrad move to dissolve the Court's TRO on the basis that the Court did not have authority to issue the TRO based on the causes of action alleged in plaintiffs' Complaint. For this reason, they assert, the TRO was improperly issued and

---

[3] The Court notes that Devine has included a small portion relating to whether plaintiffs have demonstrated, or can demonstrate, irreparable injury as required for the entry of a temporary restraining order. The Court will not consider this or any other argument relating to the preliminary injunction when ruling on the Motion to Dissolve. This argument is more appropriate for the hearing on the preliminary injunction.

should be dissolved. (Docs. ##96, 157-1, 165, 225.)  Plaintiffs respond that the Court was authorized to enter the TRO, and that there is no basis to dissolve or modify it. (Docs. ##142, 169, 173.)

## A. Standard of Review

The parties are at odds regarding the dissolution standard applicable to the TRO.  (Doc. #96, p. 14; Doc. #142, p. 9; Doc. #161, pp. 2-3.)  Plaintiffs argue that the applicable standard is that governing the dissolution of a preliminary injunction, while defendants assert that the proper standard is that governing dissolution of ex parte TROs.  (Id.)  This disagreement simply has no impact on the issues presently before the Court.  The issue before the Court is simply whether the district court was authorized to issue a TRO in this case.  Under any standard, a TRO which is issued by a court which lacks authority to do so must be improper.

## B. Purpose of the Temporary Restraining Order

Devine, Isabella, and Conrad first argue that it was improper to issue a TRO to establish a fund from which the plaintiffs could satisfy a future money judgment.  (Doc. #96, pp. 17-19; Doc. #157-1, pp. 3-6; Doc. #165, pp. 5-8)  Plaintiffs respond that the relief sought is equitable in nature, and that the purpose of the TRO is to preserve the ability to obtain equitable relief in regard to

the funds that were wrongfully taken from plaintiffs.  (Doc. #142, pp. 13-16; Doc. #173, pp. 14-17.)

As discussed previously by the Court (Doc. #10, pp. 63-64), the freezing of a defendant's assets prior to trial is improper where only legal relief in the form of money damages is sought. Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc., 527 U.S. 308 (1999) ("Grupo Mexicano"); Rosen v. Cascade Int'l, Inc., 21 F.3d 1520, 1530 (11th Cir. 1994).  Where equitable relief is sought, however, a district court can appropriately issue an asset freeze order to preserve funds for the equitable remedy, Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 987 (11th Cir. 1994),[4] even where the request for equitable relief is coupled with requests for money damages, SEC v. ETS Payphones, Inc., 408 F.3d 727, 734 (11th Cir. 2005).  Such alternative pleading is allowable under the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 8(a).

---

[4] Devine argues that Levi Strauss & Co. is inapplicable to the case at hand because the Lanham Act provided for a specific equitable remedy that the plaintiffs were seeking.  (Doc. #96, p. 14.)  The Court does not find this argument persuasive.  In Levi Strauss & Co., the parties were seeking equitable relief, as are the plaintiffs in this case.  Id.  The fact that the statute provided for specific equitable relief does not distinguish the case from the matter at hand in any material way.  In fact, the Florida RICO statute also provides for specific equitable relief. See Fla. Stat. § 895.05.  Additionally, the court approved the district court's utilization of the Lanham Act and its inherent equitable authority in issuing provisional equitable relief.  Levi Strauss & Co., 51 F.3d at 986-87.

As previously discussed, in the instant matter plaintiffs seek a number of equitable remedies, including an accounting, disgorgement, and the imposition of a constructive trust. (Doc. #196.) Additionally, the Florida legislature has explicitly authorized the imposition of injunctive relief under the Florida RICO statute, Fla. Stat. § 895.05(1), (6). Accordingly, the Court was authorized to issue an asset freeze to preserve funds for the equitable remedies sought by plaintiffs and pursuant to Fla. Stat. § 895.05(1), (6).

## C. Availability of Equitable Relief

Devine, Isabella, and Conrad assert, however, that equitable relief is not available to plaintiffs under the causes of action brought in the Amended Complaint.[5] (Docs. ##96, 157-1, 165, 225.) Therefore, they argue, the TRO was improperly issued and must be dissolved. (Id.)

### (1) Federal RICO

Counts I and II of plaintiffs' Amended Complaint assert claims pursuant to the Federal Racketeer and Corrupt Organization Act, 18 U.S.C. § 1962(c). (Doc. #196, pp. 101-10.) Devine, Isabella, and Conrad argue that the TRO was improperly issued because equitable

---

[5] The Court again notes that although the motions address plaintiffs' Complaint (Doc. #2), the Court will address the issues in regard to plaintiffs' Amended Complaint as the Amended Complaint only contained minor changes from the initial Complaint that do not affect the substance of the issued addressed in Devine, Isabella, and Conrad's Motions to Dissolve.

relief is not available for Federal RICO claims and plaintiffs have an adequate remedy at law. (Doc. #96, pp. 21-23; Doc. #157-1, pp. 9-10; Doc. #165, pp. 8-9.)

      **(a)  Availability of Equitable Relief Under Federal RICO Statute**

The circuits are split as to whether the federal RICO statute provides injunctive relief for private civil litigants. <u>Compare</u> <u>Nat'l Org. for Women, Inc. v. Scheidler</u>, 267 F.3d 687, 695 (7th Cir.), <u>rev'd on other grounds</u>, 537 U.S. 393 (2003), <u>with</u> <u>Religious Tech. Ctr. v. Wollersheim</u>, 796 F.2d 1076 (9th Cir. 1986).  The parties have not pointed to, nor can the Court find, a case where the Eleventh Circuit has taken a position on whether the federal RICO statute authorizes injunctive relief to private litigants.

The federal RICO statute contains the following civil remedies provision:

> The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to:  ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

18 U.S.C. § 1964(a).  The Court finds the reasoning in <u>Scheidler</u> to be persuasive.  Other courts have found that injunctive relief

is available to private litigants in a civil federal RICO action. See Bennett v. Berg, 685 F.2d 1053, 1064-65 (8th Cir. 1982) (injunctive relief possibly available), aff'd on reh'g, 710 F.2d 1361 (8th Cir. 1983); Chevron Corp. v. Donziger, 974 F. Supp. 2d 362, 568-69 (S.D.N.Y. 2014) (holding that private injunctive relief is available in civil federal RICO actions); In re Managed Care Litig., 298 F. Supp. 2d 1259, 1282-83 (S.D. Fla. 2003) (finding that the civil remedies portion of the federal RICO act authorized injunctive and declaratory relief to private plaintiffs); Motorola Credit Corp. v. Uzan, 202 F. Supp. 2d 239, 243-44 (S.D.N.Y 2002) (finding that courts have inherent equitable powers to grant injunctive relief in civil cases, including civil RICO actions), remanded on other grounds, 322 F.3d 130 (2d Cir. 2003).[6]  Accordingly, the Court had the authority to issue the TRO to preserve plaintiffs' equitable remedies available under their federal RICO claims.

### (b)  Adequate Remedy at Law

Devine, Isabella, and Conrad next assert that even if private injunctive relief is available under plaintiffs' federal RICO

---

[6] While the federal RICO statute does not explicitly provide for preliminary injunctive relief to private litigants, Devine, Isabella, and Conrad have only challenged whether equitable relief is available under the federal RICO statute, for which the Court can impose preliminary relief to preserve pursuant to its inherent equitable authority.  However, in order to obtain such equitable relief, and preliminary injunctive relief, a private plaintiff must make the appropriate showing to the Court.

claims, plaintiffs are not entitled to equitable relief because they have an adequate remedy at law. (<u>See</u> Doc. #96, p. 21; Doc. #157-1, p. 10; Doc. #165, pp. 6-7.)

As discussed <u>supra</u>, the Eleventh Circuit has held that alternative remedy pleading is permissible. The preclusion of equitable relief if there exists an adequate remedy at law does not preclude alternative pleading. <u>See</u> <u>Muzuco v. Re$ubmitlt, LLC</u>, No. 11-62628-Civ, 2012 WL 3242013, at *8 (S.D. Fla. Aug. 7, 2012); <u>Wiand v. Dewane</u>, No. 8:10-CV-246-T-17MAP, 2011 WL 4460095, at *8 (M.D. Fla. July 11, 2011); <u>Brown v. Tuscano</u>, 254 F.R.D. 690, 699 (S.D. Fla. 2008); <u>Adelphia Cable Partners, Inc. v. E & A Beepers Corp.</u>, 188 F.R.D. 662, 666 (S.D. Fla. 1999) ("Although equitable relief ultimately may not be awarded where there exists an adequate remedy at law, Plaintiff certainly may plead alternative equitable relief.").

Where both equitable and legal relief are sought, the presence of the request for legal relief does not preclude the Court's ability to issue preliminary injunctive relief to preserve the availability of the equitable relief. <u>ETS Payphones, Inc.</u>, 408 F.3d at 734. The preliminary injunctive relief, however, can only extend to those assets in which an equitable interest is being claimed. <u>United States ex rel. Rahman v. Oncology Assocs., P.C.</u>, 198 F.3d 489, 496 (1999) (Where a plaintiff asserts a claim "to specific assets of the defendant or seeks a remedy involving those

assets, a court may in the interim invoke equity to preserve the *status quo* pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested.").

In the instant action, plaintiffs have alleged a number of equitable remedies, including disgorgement, an accounting, and the imposition of a constructive trust. (Doc. #196, pp. 117-19.) It is clearly established that disgorgement is an equitable remedy and "a district court may freeze a defendant's assets to ensure the adequacy of a disgorgement remedy." CFTC v. Levy, 541 F.3d 1102, 1114 (11th Cir. 2008); ETS Payphones, Inc., 408 F.3d at 734 (upholding asset freeze as a justified "means of preserving funds for the equitable remedy of disgorgement"). Here, the asset freeze is proper to preserve plaintiffs' equitable remedies—i.e., the amount of funds that plaintiffs seek an equitable remedy to. The asset freeze, however, may not preserve any amount of assets in excess of the equitable relief sought.[7]

---

[7] Plaintiffs have alleged that $200,000,000 was illegally taken from them pursuant to the penny stock scheme. (Doc. #196, ¶ 2.) A review of Devine's most recent asset spreadsheet reveals that the amount currently frozen pursuant to the TRO does not exceed $200,000,000. (Doc. #176-1, pp. 1-8.) Because the amount frozen is clearly not in excess of the amount plaintiffs allege an equitable interest in (the amount taken from them for which they seek return), and due to the extensive allegations that Devine has engaged in a complex scheme to conceal the proceeds by transferring them in and out and among numerous different financial accounts across the world, the Court finds that assets frozen pursuant to the TRO are proper to preserve plaintiffs' equitable remedies.

Additionally, this Court finds that there is no adequate remedy at law for the funds at issue here. The crux of plaintiffs' Amended Complaint is based upon Devine's involvement in the penny stock scheme orchestrated by her ex-husband by concealing funds fraudulently obtained from plaintiffs and transferring them in and out of various financial accounts around the world. (Doc. #196.) Plaintiffs demonstrated to the Court the vast and complicated schemes utilized by Devine, in conjunction with her ex-husband, to conceal the proceeds that plaintiffs allege are rightfully theirs. The continuation of the TRO will prevent the ongoing scheme whereby penny stock scheme proceeds illegally taken from plaintiffs are continually transferred in and out and from one account to another in an effort to evade plaintiffs' ability to obtain their return.

Further, the funds are claimed by plaintiffs to be their own, under a theory of constructive trust. "A constructive trust is an equitable remedy designed to prevent the unjust enrichment of culpable parties." TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC, 929 F. Supp. 2d 1255, 1262 (M.D. Fla. 2013) (citing Bender v. CenTrust Mortg. Corp., 51 F.3d 1027, 1029 (11th Cir. 1995)). Additionally, a constructive trust may be imposed upon funds in the possession of third parties under certain circumstances. Id. at 1262 n.10. The Court considers those funds capable of reasonable tracing to be the res of a constructive trust, and if not enjoined, the funds will be dissipated, preventing plaintiffs

from regaining their *res*.  For these reasons, the Court finds that the plaintiffs have no adequate remedy at law for the funds they seek return of as properly belonging to them, and were entitled to an asset freeze for assets that have a reasonable connection with the illegal conduct that is the subject of plaintiffs' Amended Complaint.[8]

Under the circumstances of this case, the Court was authorized to freeze assets up to the amount alleged illegally taken from the plaintiffs as plaintiffs have no adequate remedy at law.  Due to the allegations of the intricate scheme to conceal and commingle these funds, the Court finds that it is reasonable to impose the TRO on funds of Devine, and those accounts alleged to be held nominally in the name of her children,[9] where Devine has not held a job in years and has been shown to distribute illegal funds throughout different accounts in hopes of eventually preventing

---

[8] Devine has filed a Notice of Supplemental Authority citing to a recent decision by the United States Supreme Court.  (Doc. #359.)  In Luis v. United States, 136 S. Ct. 1083 (2016), the Supreme Court examined the court's freezing of the defendant's untainted assets.  This is distinguishable from the case at hand. The Court explicitly limits its freeze to those assets reasonably related to the illegal conduct, as discussed in more detail infra.

[9] Plaintiffs have presented substantial evidence linking the accounts held for the benefit of Isabella and Conrad to the penny stock scheme. (Doc. #173, pp. 6-11.)  This is sufficient to justify the freezing of the assets held for the benefit of Isabella and Conrad.

the reasonable tracing and recovery of the actual penny stock scheme proceeds by plaintiffs.

**(2)  Florida RICO and Civil Remedies for Criminal Activities**

Counts III and IV of plaintiffs' Amended Complaint assert claims pursuant to the Florida Racketeer and Corrupt Organization Act, Fla. Stat. §§ 895.01-.06.  (Doc. #196, pp. 111-15.)

**(a)  Preliminary Injunctive Relief Expressly Authorized by Florida RICO Statute**

The Florida RICO statute specifically authorizes entry of a temporary restraining order and/or preliminary injunction limiting a defendant's right to dispose of assets during the pendency of litigation.  See Fla. Stat. § 895.05(6); Bardfield v. Chisholm Props. Circuit Events, LLC, No. 3:06cv232/MCR/MD, 2009 WL 1659641, at *2 (N.D. Fla. June 12, 2009).  Additionally, the state legislature has granted courts the authority to "enjoin violations of the provisions of s. 895.03 by issuing appropriate orders and judgments."  Fla. Stat. § 895.05(1).

The legislature can provide courts the ability to issue injunctive relief, and restrict such ability, and the courts must "heed" to the legislature's command.  Grupo Mexicano, 527 U.S. at 342 (Ginsberg, J., concurring in part and dissenting in part); Truax v. Corrigan, 257 U.S. 312, 376 (1921) (Brandeis, J. dissenting) ("What Congress can do in curtailing the equity power of the federal courts, state Legislatures may do in curtailing

equitable powers of the state courts, unless prevented by the Constitution of the state.  In other words, states are free since the adoption of the Fourteenth Amendment, as they were before, either to expand or to contract their equity jurisdiction."). Here, Florida's legislature has granted courts the authority to issue preliminary injunctive relief under the Florida RICO statute.

Accordingly, the Court finds that the legislature has explicitly provided for the preliminary injunctive relief sought by plaintiffs and awarded by the TRO.  Therefore, the Court was authorized to issue a TRO pursuant to Counts III and IV of plaintiffs' Amended Complaint.  See Fla. Stat. § 895.05(1), (6).

### (b)  Florida RICO's Extra-Territorial Application

Devine alleges that plaintiffs cannot obtain equitable relief for their Florida RICO claims because Florida RICO does not apply extra-territorially and, therefore, plaintiffs do not have viable claims under Florida RICO which would support the issuance of the TRO.  (Doc. #96, p. 24.)

"[T]he Florida RICO Act does not apply extraterritorially." Arthur v. JP Morgan Chase Bank, NA, 569 F. App'x 669, 681 (11th Cir. 2014).  A plaintiff needs to "allege Florida criminal activity in order to support a Florida RICO claim based on a federal law predicate act."  Id. at 682.  "Under federal law, venue is only appropriate in the district where the offense was

committed or, in cases of conspiracy or continuing offenses under 18 U.S.C. § 3237(a), where the defendant performed an overt act in furtherance of the crime." Id. (citation omitted).

Plaintiffs have alleged the following federal predicate acts to support their Florida RICO claims:  Money Laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); Money Laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i); Money Laundering in violation of 18 U.S.C. § 1956(a)(2)(A); Money Laundering in violation of 18 U.S.C. § 1956(a)(2)(B)(i); Monetary Transactions in Property Derived from Unlawful Activity in violation of 18 U.S.C. § 1957; Transportation of Stolen, Converted, or Fraudulently-Taken Goods, Securities, or Money in violation of 18 U.S.C. § 2314; Receipt, Possession, Concealment, Sale, or Disposal of Stolen, Converted, or Taken Goods in violation of 18 U.S.C. § 2315; and Wire Fraud in Violation of 18 U.S.C. § 1343.  (Doc. #196, ¶¶ 241-66, 285.)

Money Laundering in violation of 18 U.S.C. § 1956(a)(1) occurs when:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
> (A)
> (i) with the intent to promote the carrying on of specific unlawful activity; or
> (ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or

- 18 -

(B) knowing that the transaction is designed in whole or
in part—
(i) to conceal or disguise the nature, the location, the
source, the ownership, or the control of the proceeds of
specified unlawful activity; or
(ii) to avoid a transaction reporting requirement under
State or Federal law.[10]

18 U.S.C. § 1956(a)(1). Plaintiffs' first federal predicate act
alleged for their Florida RICO claim is violation of 18 U.S.C. §
1956(a)(1)(B)(i). (Doc. #196, ¶¶ 241-44B, 285.) Within
plaintiffs' Amended Complaint, plaintiffs allege that Devine
conducted numerous financial transactions, as listed in Appendix
1 to plaintiffs' Amended Complaint, involving proceeds from the
penny stock scheme. (Id. ¶¶ 242-44.) Plaintiffs allege that from
Florida, Devine directed the transfer of penny stock proceeds from
accounts in Switzerland, Singapore, and other countries to other
accounts, including those in the United States, and that Devine
traveled from Florida to other countries for the sole purpose of
furthering the concealment and transfer of penny stock scheme
proceeds. (Id. ¶¶ 217-21, 244B, 283; Doc. #174-24.)
Specifically, the Appendix attached to plaintiffs' Amended
Complaint shows that proceeds were transferred from Switzerland to

---

[10] The provision further provides that "[f]or purposes of this
paragraph, a financial transaction shall be considered to be one
involving the proceeds of specified unlawful activity if it is
part of a set of parallel or dependent transactions, any one of
which involves the proceeds of specified unlawful activity, and
all of which are part of a single plan or arrangement." 18 U.S.C.
§ 1956(a)(1).

a title company in Naples, Florida for the purpose of purchasing Devine's Naples home and to Bank of America accounts in Naples, Florida. (Doc. #196, pp. 129-30, 132-38.)  Pursuant to the asset list produced by Devine, the Bank of America accounts held in her name are located in Naples, Florida.  (Doc. #116-1; Doc. #176-1, pp. 1-8.)  Plaintiffs further allege that Devine maintained her "nerve center" or "headquarters" for her money laundering enterprise in Florida and that Devine and Florian Homm filed for their "sham" divorce in Florida. (Doc. #196, ¶¶ 224, 283.)

The Court finds more than an isolated relation to Florida has been alleged and demonstrated by plaintiffs.  While located in Florida, Devine conducted transactions with penny stock scheme proceeds in an attempt to transfer and conceal them.  Further, some of the transactions involving the penny stock proceeds were in and out of accounts located in Florida.  The specific transactions in and out of Florida also form the basis of the federal predicate acts for Money Laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(2)(A), 1956(a)(2)(B)(i). Accordingly, the Court finds that these allegations are sufficiently connected with Florida to support plaintiffs' Florida RICO claims and are not based solely on extra-territorial

activities.[11]   The Court was not precluded from issuing the TRO on the basis of extra-territorial conduct.

### (3)   Unjust Enrichment and Constructive Trust

Counts V and VI of plaintiffs' Amended Complaint assert claims for unjust enrichment and constructive trust.   (Doc. #196, ¶¶ 301-12.)   Devine, Isabella, and Conrad allege that plaintiffs' unjust enrichment claim does not permit the equitable relief sought by plaintiffs.   (Doc. #95, pp. 28-30; Doc. #157-1, pp. 8, 11-12; Doc. #165, pp. 11-12.)   Devine, Isabella, and Conrad further argue that imposition of a constructive trust is not a cause of action, that plaintiffs have an adequate remedy at law, and that a constructive trust must cover specific, not general, assets.   (Doc. #96, pp. 30-32; Doc. #157-1, pp. 11-12; Doc. #165, pp. 12-14.)   In light of these considerations, defendants argue, the Court was not authorized to issue the TRO on the basis of these counts.

### (a)   Unjust Enrichment Claim Based Upon Wrongful Conduct

Devine asserts that plaintiffs' claim for unjust enrichment fails because it is premised upon wrongful conduct, which is an improper basis for such a claim, and therefore equitable relief would not be authorized under this invalid unjust enrichment claim.   (Doc. #96, pp. 28-29.)   In response, plaintiffs argue that (1)

---

[11] The same allegations are used to support the other federal predicate acts for plaintiffs' Florida RICO claims.   Accordingly, the Court does not need to engage in an analysis for each predicate act alleged.

plaintiffs assert their claim for unjust enrichment alternatively of any alleged wrongdoing and (2) Devine's distinction between claims of wrongful enrichment and unjust enrichment are not recognized in Florida. (Doc. #142, pp. 16-17; Doc. #169, pp. 11-12.)

Plaintiffs argue that they have "pleaded in the alternative that Devine has been unjustly enriched regardless of any wrongdoing on her part." (Doc. #142, p. 16; Doc. #169, p. 12.)  It is well established that alternative pleading is permissible under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a).  In the instant case, however, plaintiffs have incorporated paragraphs involving allegations of wrongdoing into their unjust enrichment claim, which defeat their arguments of alternative pleading. (See Doc. #196, ¶ 301.)

In support of her argument that an unjust enrichment claim cannot be predicated upon wrongful conduct, Devine cites to cases which all rely on the decision in Guyana Tel. & Tel. Co. v. Melbourne Int'l Commc'ns, Ltd., 329 F.3d 1241 (11th Cir. 2003) ("Guyana Tel."). (Doc. #96, pp. 28-29.)  In Guyana Tel., the Court relied upon a Law Review article that was not premised upon Florida law that found a distinction between unjust enrichment and wrongful enrichment. Id. at 1245 n.3.  As plaintiffs point out, no Florida Court has made a distinction between unjust enrichment and wrongful enrichment, State Farm Fire & Cas. Co. v. Silver Star

Health & Rehab. Inc., No. 6:10-cv-1103-Orl-31GJK, 2011 WL 6338496, at *6 (M.D. Fla. Dec. 19, 2011), aff'd, 739 F.3d 579 (11th Cir. 2013), and more recent Florida cases have allowed recovery under unjust enrichment based upon wrongful conduct. (Doc. #142, p. 17; Doc. #169, p. 11.) In the absence of Florida law on this issue, the Court declines to make such a distinction.

> **(b) Availability of Equitable Relief for Unjust Enrichment Claim**

Devine, Isabella, and Conrad assert that equitable relief is not available to plaintiffs for their unjust enrichment claim, and therefore the Court was not authorized to issue the TRO. (Doc. #96, pp. 28-30; Doc. #157-1, pp. 11-12; Doc. #165, pp. 11-14.) Plaintiffs argue to the contrary. (Doc. #142, pp. 16-19; Doc. #169, pp. 11-12.)

As previously held by this Court, "Florida courts have long recognized a cause of action for unjust enrichment 'to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity.'" State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, 739 F.3d 579, 584 (11th Cir. 2013) (quoting Butler v. Trizec Props., Inc., 524 So. 2d 710, 711 (Fla. 2d DCA 1988)). The focus should be on the relief requested and available under plaintiffs' unjust enrichment

claim.[12]  Plaintiffs are clearly requesting the equitable remedies of an accounting, disgorgement, and imposition of a constructive trust for their unjust enrichment claim.  (Doc. #196, pp. 118-19.)

Devine attempts to attack each equitable remedy requested by plaintiffs.  Devine argues that an accounting is not available to plaintiffs because plaintiffs can obtain the information they seek through an accounting by conducting discovery.  (Doc. #161, pp. 8-9.)  Contrary to Devine's position, the Eleventh Circuit has held that an accounting is available, despite the availability of discovery, where there is "a sufficiently complicated transaction and an inadequate remedy at law."  Zaki Julaibee Establishment v. McFliker, 771 F.3d 1301, 1311 (11th Cir. 2014).  The case at hand is a prime example of "sufficiently complicated transactions" to justify an accounting.[13]

Devine next argues that a constructive trust is unavailable as a remedy for unjust enrichment and that nowhere have plaintiffs claimed that a constructive trust is a claim for which an asset-freezing injunction may be granted.[14]  (Doc. #161, p. 8.)  As

---

[12] This Court has held that a cause of action of unjust enrichment is an equitable claim.  Llorca v. Rambosk, No. 2:15-cv-17-FtM-29CM, 2015 WL 2095805, at *2 (M.D. Fla. May 5, 2015) (quoting Tooltrend, Inc. v. CMT Utensili, SRL, 198 F.3d 802, 805 (11th Cir. 1999)).

[13] The Court has already held that plaintiffs have no adequate remedy at law for the funds they seek return of.

[14] Isabella and Conrad do not assert that plaintiffs are not entitled to a constructive trust under their unjust enrichment

previously held, constructive trust is not a cause of action, but an equitable remedy based upon an established cause of action. Collinson v. Miller, 903 So. 2d 221, 228 (Fla. 2d DCA 2005). A constructive trust is "designed to prevent the unjust enrichment of culpable parties." TempPay, Inc., 929 F. Supp. 2d at 1262 (citing Bender, 51 F.3d at 1029).

Devine argues that a confidential relationship is a necessary requirement for the imposition of a constructive trust. (Doc. #96, p. 31 n.13.) However, in 1957, the Florida Supreme Court stated that "breach of a confidential relationship [is] but one of several circumstances in which the imposition of a constructive trust is equitable and just." Silver v. Digges, No. 6:06-CV-290-Orl-19DAB, 2006 WL 2024935, at *4 (M.D. Fla. July 17, 2006) (citing Wadlington v. Edwards, 92 So. 2d 629, 631 (Fla. 1957)). A constructive trust "is 'constructed' by equity to prevent an unjust enrichment of one person at the expense of another as the result of fraud, undue influence, abuse of confidence or mistake in the transaction that originates the problem." Wadlington, 92 So. 2d at 631 (citations omitted). A constructive trust is a flexible remedy, with "no unyielding formula" and the "equity of the

claim. (Doc. #157-1, p. 11; Doc. #165, pp, 11-12.) Instead, Isabella and Conrad only argue that plaintiffs are only entitled to a constructive trust "upon specific property that has been wrongfully taken and may not be imposed on [] defendant's general assets." (Id.)

transaction must shape the measure of relief." <u>Collinson</u>, 903 So.
2d at 228 (citations omitted).  The Court finds that plaintiffs
have adequately asserted the remedy of a constructive trust under
the circumstances of this case, and the Court had the authority to
grant the TRO.

Lastly, plaintiffs have requested the equitable remedy of
disgorgement in their unjust enrichment claim.  Disgorgement is
an equitable remedy and "a district court may freeze a defendant's
assets to ensure the adequacy of a disgorgement remedy." <u>Levy</u>,
541 F.3d at 1114.

**D. Scope of the Temporary Restraining Order**

Devine, Isabella, and Conrad assert that the scope of the TRO
is too broad in that it covers assets that illegal proceeds have
not been traced to and assets in the name of Isabella and Conrad—
and no illegal conduct has been alleged against Isabella and
Conrad.  (Doc. #96, pp. 26-28; Doc. #157-1, pp. 12-14; Doc. #165,
pp. 12-14.)

"In exercising such equitable powers, the Court must examine
the relationship between the asset and the conduct." <u>Smith v.
Copeland</u>, No. 1:09-CV-1200-RWS, 2009 WL 2223926, at *2 (N.D. Ga.
July 23, 2009).  Accordingly, although Devine had already agreed
to an extension of the TRO and consolidation of the preliminary
injunction hearing with the trial on the merits, plaintiffs are
only entitled to preliminary injunctive relief to assets which

they are seeking equitable relief and that have reasonable relation
to the alleged wrongful conduct.  See CFTC v. Sidoti, 178 F.3d
1132, 1138 (11th Cir. 1999) (alteration in original) (quoting SEC
v. First City Fin. Corp., 890 F.2d 1215, 1231 (D.C. Cir. 1989))
("Since disgorgement primarily serves to prevent unjust
enrichment, the court may exercise its equitable power only over
property causally related to the wrongdoing . . . [D]isgorgement
may not be used punitively.").

Here, when moving for the *ex parte* TRO, plaintiffs submitted
documentation to the Court preliminarily showing Devine's
involvement in the penny stock scheme and the transfer of funds
throughout different bank accounts.  (Docs. ##3-4.)  However, the
Court holds that plaintiffs are only entitled to freeze assets up
to the amount that they seek to disgorge and they must make a
preliminary showing that each asset they desire to remain frozen
contains, or was purchased with, illegal penny stock scheme
proceeds.  In making such a showing, only "a reasonable
approximation of a defendant's ill-gotten gains [is required] . .
. . Exactitude is not a requirement." ETS Payphones, Inc., 408
F.3d at 735 (alteration in original) (citation omitted).

The basis of plaintiffs' Amended Complaint is that Devine has
taken extreme measures to conceal proceeds from the penny stock
scheme in an effort to commingle them and prevent plaintiffs from
obtaining the return of their money.  (Doc. #196.)  These

allegations, coupled with the fact that since 1989 Devine has either not worked or only performed unpaid work, justifies the reasonable belief that the assets subject to the TRO are comprised of illegal proceeds from the penny stock scheme. Further, pursuant to stipulation of the parties, the Court has released items clearly obtained prior to the commencement of the penny stock scheme. (Doc. #68.)

The Court also finds that it was appropriate to freeze some assets held for the benefit of Conrad and Isabella. Plaintiffs' Amended Complaint explains an intricate plan by Devine to hide illegal proceeds in accounts in the names of her children in an effort to shield the assets. Plaintiffs have produced substantial evidence showing that the accounts held for the benefit of Isabella and Conrad have been funded with penny stock scheme proceeds. (Doc. #173.) Plaintiffs have also submitted evidence indicating that Devine utilized these accounts for her own personal expenses. (Id.) Accordingly, the Court finds that it had a sufficient basis to freeze the assets which are subject to the TRO.

Plaintiffs have alleged that approximately $200 million was wrongfully taken from them pursuant to the penny stock scheme and they seek return of that amount. (Doc. #196, ¶¶ 2, 72.) Accordingly, a freeze of assets above this amount would be improper as such amount in excess of $200 million would not serve the purpose of preserving equitable relief. A review of the asset

spreadsheet provided by Devine shows that the assets frozen pursuant to the Court's TRO do not exceed $200 million. (See Doc. #176, Ex. A.) Accordingly, the Court holds that the TRO does not exceed that which is appropriate to preserve the availability of plaintiffs' equitable remedies.

Accordingly, it is hereby

**ORDERED:**

1. Plaintiffs' Motion to Strike Defendant's Motion to Dissolve Temporary Restraining Order (Doc. #107) is **DENIED**.

2. Defendant's Motion to Dissolve Temporary Restraining Order (Doc. #96) is **DENIED**;

3. The Motion to Dissolve Temporary Restraining Order as to Specific Assets and Supporting Memorandum of Law (Doc. #157-1) is **DENIED**; and

4. The Motion on Behalf of Conrad Homm to Dissolve or Modify Temporary Restraining Order as to Specific Assets and Supporting Memorandum, as Renewed (Docs. ##165, 225) is **DENIED**.

**DONE and ORDERED** at Fort Myers, Florida, this ___19th___ day of April, 2016.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record