UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ABSOLUTE ACTIVIST VALUE MASTER
FUND LIMITED, ABSOLUTE EAST
WEST FUND LIMITED, ABSOLUTE
EAST WEST MASTER FUND LIMITED,
ABSOLUTE EUROPEAN CATALYST
FUND LIMITED, ABSOLUTE
GERMANY FUND LIMITED,
ABSOLUTE INDIA FUND LIMITED,
ABSOLUTE OCTANE FUND LIMITED,
ABSOLUTE OCTANE MASTER FUND
LIMITED and ABSOLUTE RETURN
EUROPE FUND LIMITED,

      Plaintiffs,

v.                                     Case No:  2:15-cv-328-FtM-29MRM

SUSAN ELAINE DEVINE,

      Defendant.

_____/

## ORDER

This cause comes before the Court on Plaintiffs' Motion for a Determination of Privilege Waiver by Defendant (Doc. 439) filed on August 5, 2016. Defendant filed a response (Doc. 455) on August 31, 2016. Plaintiffs filed a reply (Doc. 462) on September 14, 2016. Defendant filed a sur-reply (Doc. 468) on September 22, 2016. The matter has been extensively briefed and is ripe for review.

## I.     Background

Plaintiffs seek an Order finding that Defendant "has waived any privilege or protection that may have applied to the documents in Devine's January 29 Production, including the seven

documents Devine specifically identified in her June 8 letter." (Doc. 439 at 14).[1] Plaintiffs additionally request that the Court "hold that the Funds may use and rely on all of those documents in this litigation." (*Id.*). The seven disputed documents were submitted to the Court *ex parte* and under seal for the Court's review. (Doc. S-478).

Plaintiffs state that Defendant produced 3,532 documents on January 29, 2016. (Doc. 439 at 2). Plaintiffs further state that on February 4, 2016, they informed Defendant that "her January 29 Production contained a document that appeared to be privileged." (*Id.*). Plaintiffs state that Defendant then "clawed back" the single document identified by Plaintiff. (*Id.*). Plaintiffs state that for the following four months, Defendant did not inform Plaintiffs "of any other documents she claimed had been inadvertently produced or provide a log of any documents she was withholding from production due to privilege." (*Id.*). However, on June 8, 2016, Defendant sent a letter to Plaintiffs that "purported to claw back, as privileged, seven documents that she had produced as part of the January 29 Production." (*Id.*). On June 16, 2016, Plaintiffs state that "Devine's counsel purported to claw back the *entire* January 29 Production and requested that the Funds sequester – and cease using – that production so that it could be reviewed for privilege." (*Id.* (emphasis in original)). Plaintiffs state that Defendant was asked "to withdraw her baseless claims of privilege and potential privilege, but she refused to do so." (*Id.*).

Plaintiffs argue that Defendant has "waived any privilege or protection that may have applied to any document in her January 29 Production." (*Id.* at 3). Specifically, pursuant to Federal Rule of Evidence 502, Plaintiffs argue that (1) Defendant "did not take reasonable steps

---

[1] The pinpoint citations in this Order relating to the parties' filings are to the CM/ECF pagination therein, not the parties' pagination.

to prevent disclosure of privileged material," and (2) Defendant "inordinately and unjustifiably delayed asserting the privilege after being specifically informed on February 4 that the January 29 Production contained material that she confirmed was privileged." (*Id.*). Additionally, Plaintiffs argue that Defendant's "attempt to claw back the entire January 29 Production has no legal basis." (*Id.*).

In her response (Doc. 455), Defendant offers an explanation for the events described in Plaintiffs' Motion. Defendant states that she was represented previously by attorneys from the Blank Rome law firm. (Doc. 455 at 4). One of the attorneys, Bridget Mayer Briggs, oversaw the collection of "hard copy documents and electronically stored information ("ESI") from Ms. Devine's home in Naples, Florida." (*Id.*). Ms. Briggs identified a large number of "potentially responsive hard copy documents at Ms. Devine's home that were collected and then placed into approximately ten boxes." (*Id.*). Defendant states that many of these documents were loose records, not stapled, and lacked logical order. (*Id.*). Defendant utilized the services of an e-discovery vendor to scan and process the documents. (*Id.*). The vendor loaded the documents into a web-based review database. (*Id.*). Another attorney, Michael Montalbano, reviewed these documents under the supervision of Ms. Briggs. (*Id.*). After review, Defendant produced "what were believed to be non-privileged, responsive hard-copy documents on January 19, 2016, and again on January 29, 2016." (*Id.* at 5).

Defendant states that following her January 2016 productions of hard-copy documents, Defendant began to prepare a log of the privileged documents that had been identified and excluded from those productions. (*Id.* at 5). Defendant states that "Mr. Montalbano then began to review Ms. Devine's ESI, which had been collected and loaded into the web-based review database, and he completed his ESI review on or about June 2, 2016." (*Id.*). Defendant states

that "[t]he next day, on June 3, Mr. Montalbano began cross-referencing the scanned hard copy documents identified on the draft privilege log with ESI that was similar to, or included the content of, the scanned hard copy documents identified on the draft privilege log." (*Id.*). Defendant states that "[t]he goal of the cross-referencing process was to provide additional context for the privilege assertions on the draft privilege log of scanned hard copy documents, and to confirm that documents on the draft privilege log were privileged." (*Id.*).

Defendant states that during this process, Mr. Montalbano discovered, for the first time, that seven documents produced as part of the January 29, 2016 production "included similar or identical documents he had subsequently identified as privileged during the review of the ESI." (*Id.* at 6). Defendant states that "[t]he ESI documents contained the cover emails that were absent from the scanned hard copies." (*Id.*). Defendant states that Mr. Montalbano immediately brought the issue to the attention of another attorney, Kevin Passerini, on June 6, 2016, and they discussed the matter with other counsel including Matthew Lee and Ian Comisky on June 7, 2016. (*Id.*). On June 8, 2016, Defendant's counsel notified Plaintiffs' counsel. (*Id.*).

Based on these discoveries and a separate finding that additional privileged documents may have been inadvertently produced, Defendant states that her "legal team decided to undertake a full re-review of the January 29 production to determine if any additional privileged documents may have been inadvertently produced." (*Id.* at 7). Defendant's counsel sought to claw back the entire January 29 production. (*Id.*). Complicating matters, however, was the fact that "Mr. Comisky and Mr. Lee gave notice to Blank Rome that they were moving their law practice to Fox Rothschild." (*Id.*). Defendant states that the full review of the January 29 production was delayed due to this transition of counsel. (*Id.* at 8).

In this instance, Defendant maintains that the seven specific documents at issue are privileged. (*Id.* at 9). Furthermore, Defendant contends that she has not waived the privilege. (*Id.* at 14). Specifically, Defendant argues that the inadvertent disclosure of the documents does not constitute a waiver of privilege pursuant to the parties' Stipulation and Protective Order (Doc. 64). (*Id.*). In the alternative, Defendant contends that the inadvertent production of documents does not constitute a waiver under Federal Rule of Evidence 502. (*Id.* at 15-20).

## II.      Analysis

The Court examines the issues raised by Plaintiffs' Motion, beginning with whether the subject documents are privileged.

### A.      Whether the Seven Documents are Privileged

The Court must first evaluate whether the seven subject documents are indeed privileged. Federal Rule of Evidence 501 governs the applicability of privileges in federal court. *See* Fed. R. Evid. 501. Specifically, the Rule states:

> The common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege unless any of the following provides otherwise:
>
> • the United States Constitution;
>
> • a federal statute; or
>
> • rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

*Id.*

In this case, only Plaintiffs' state-law unjust enrichment claims remain. (*See* Doc. 521). Because only state-law claims remain, state law provides the applicable rule of decision and,

therefore, the application of any privilege. *See* Fed. R. Evid. 501; *Allstate Ins. Co. v. Levesque*, 263 F.R.D. 663, 666 (M.D. Fla. 2010).

In Florida, the attorney-client privilege is codified in Fla. Stat. § 90.502. *See Centennial Bank v. Servisfirst Bank Inc.*, No. 8:16-mc-00082-CEH-JSS, 2016 WL 6037552, at *4 (M.D. Fla. Oct. 14, 2016). Under the statute, "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client." Fla. Stat. § 90.502(2). The statute defines a "lawyer" as "a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation." *Id.* at § 90.502(1)(a). A "client" is defined as "any person, public officer, corporation, association, or other organization or entity, either public or private, who consults a lawyer with the purpose of obtaining legal services or who is rendered legal services by a lawyer." *Id.* at § 90.502(1)(b). Finally, a "communication between lawyer and client is 'confidential' if it is not intended to be disclosed to third persons other than: 1. Those to whom disclosure is in furtherance of the rendition of legal services to the client. 2. Those reasonably necessary for the transmission of the communication." *Id.* at § 90.502(1)(c). The burden of demonstrating that a privilege applies to any communication is on the proponent of the privilege. *Aldora Aluminum & Glass Prods., Inc. v. Poma Glass & Specialty Windows, Inc.*, No. 3:14-cv-1402-J-34JBT, 2016 WL 7668484, at *2 (M.D. Fla. Feb. 18, 2016).

Upon review of the documents (Doc. S-478), the supporting affidavits provided by Defendant, and the parties' arguments, the Court is satisfied that Defendant has met her burden of demonstrating that a privilege exists as to the seven documents. *See Aldora Aluminum*, 2016 WL 7668484, at *2.

First, as explained below, the Court finds Defendant has provided sufficient evidence demonstrating that the seven documents were communications "made in the rendition of legal services to the client." *See* Fla. Stat. § 90.502(2). This point, however, was contested. Specifically, Plaintiffs point out that it is unclear who created the seven documents and for what purpose. (*See* Doc. 462 at 3-6). For instance, Plaintiffs note that Defendant's counsel previously stated that the seven documents at issue had been "created by Ms. Devine *or her counsel*." (*See* Doc. 440-7 at 2 (emphasis added)). Additionally, Plaintiffs note that the privilege log provided to Plaintiffs' counsel described two of the documents as being "compilations of counsel's mental impressions." (Doc. 462 at 3).[2]

Nevertheless, the Court finds that Defendant has presented sufficient evidence demonstrating that she created the documents at the request of and/or for the benefit of her attorneys in the rendition of legal services. *See* Fla. Stat. § 90.502(2). The Court places great weight on Defendant's affidavit stating that she created the seven documents and transmitted those documents to her attorneys for the purpose seeking and/or receiving legal advice. (Doc. 455-6). Furthermore, upon review of the content of the documents, the Court finds that all seven documents indeed appear to be specifically directed at seeking and/or receiving legal advice. (*See* Doc. S-478). Thus, the Court finds that Defendant has met her burden of demonstrating that the seven documents were communications "made in the rendition of legal services to the client." *See* Fla. Stat. § 90.502(2).

Furthermore, the Court finds that the communications were intended to be confidential. Fla. Stat. § 90.502(1)(c). Specifically, the Court notes that Defendant states that she "created, revised, and maintained" all seven documents on a home computer, and also maintained hard

_____

[2] These two documents are "SDEVINE0015663-15669" and "SDEVINE0015670-15679."

copies of these documents in her home. (Doc. 455-6 at 3-5). Defendant further states that all seven documents were sent to her attorneys via an email account—legalprivate10@gmail.com. (*Id.*). Defendant states that this email account was used "for the purpose of communicating with my U.S. and non-U.S. attorneys, and consulting experts hired by my attorneys to assist them in providing legal advice and services to me." (*Id.* at 2 ¶ 3). Defendant states that she is "the only person who uses, and has access to, this email address, and I have not shared my login information with anyone except my lawyers for the purpose of discovery." (*Id.*).

Additionally, although not apparent on the documents provided to the Court (*see* Doc. S-478), Defendant further states that she typically included a header on her emails to her attorneys indicating that the email is "private and confidential." (Doc. 455-6 at 2 ¶ 3). Defendant notes, however, that she "often printed materials and maintained paper copies of documents." (*Id.*). Thus, Defendant states that "not all of my hard-copy documents" – including the documents at issue here – "contained such a header or would have otherwise alerted a reviewer to the fact that such documents were prepared for and/or requested by my attorneys." (*Id.*).

Upon review, the Court finds that the use of this email account provides sufficient evidence that the communications were intended to be confidential. *See* Fla. Stat. § 90.502(1)(c). While Plaintiffs point out that Defendant never stated that the email address was *only* used for confidential communications with counsel (Doc. 462 at 5), Defendant's affidavit sufficiently demonstrates that these seven documents were created and transmitted with the intention that only her counsel or those persons assisting counsel would see them. *See* Fla. Stat. § 90.502(1)(c). Moreover, there is no indication in the record that any of these seven documents were sent to persons other than her attorneys, except in the inadvertent production at issue.

Accordingly, the Court finds that the seven documents were intended to be confidential communications. *See* Fla. Stat. § 90.502(1)(c).

In sum, Defendant has met her burden of demonstrating that a lawyer-client privilege exists under Florida law for the seven documents at issue here. *See* Fla. Stat. § 90.502(2). Because a lawyer-client privilege exists as to these seven documents, the Court must now address whether this privilege was waived by Defendant's inadvertent disclosure.

### B.      Waiver of the Privilege

#### i.      *The Stipulation and Protective Order (Doc. 64)*

Defendant contends that "[t]he Court-ordered Stipulation and Protective Order governs the issue of privilege waiver." (Doc. 455 at 14). The relevant provision of the Stipulation and Protective Order is Paragraph 17. This paragraph states:

> 17. Pursuant to Federal Rule of Evidence 502(d), disclosure of Discovery Material subject to the attorney-client privilege or work-product doctrine or any other applicable privilege or immunity from disclosure without the express intent to waive such privilege, protection or immunity from disclosure shall not be deemed a waiver in whole or in part of the privilege, work-product or other applicable immunity, either as to the specific information disclosed or as to the same or related subject matter. If a Party promptly notifies the opposing Party or Parties in writing by hand delivery, overnight delivery, or e-mail (which e-mail must be considered delivered when sent) of the inadvertent disclosure of documents or other information which that Party believes in good faith to be subject to a claim of privilege, including but not limited to attorney-client privilege or attorney work product, Federal Rule of Evidence 502 and Federal Rule of Civil Procedure 26(b)(5)(B) must apply. Such notice must include a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5)(A).

(Doc. 64 at 7).

Defendant points to language in the Stipulation and Protective Order that states that a disclosure "'without the express intent to waive such privilege' shall not be deemed to be a waiver." (Doc. 455 at 15). Defendant argues that this provision is dispositive in deciding the

issue of waiver. (*See id.*). Specifically, Defendant contends that this provision prevents waiver when any inadvertent disclosure occurs. (*See id.*).

Plaintiffs disagree with Defendant's interpretation of the Stipulation and Protective Order. (Doc. 462 at 7). Plaintiffs contend that the "second sentence of Paragraph 17 qualifies the first sentence" and, therefore, "mandates the application of Federal Rule of Evidence 502." (*Id.*). Plaintiffs argue that the express terms of the Stipulation and Protective Order provide that "while there is no *per se* waiver of privilege in the absence of an intent to waive, the question of whether an 'inadvertent disclosure' constituted a waiver turns on the application of Rule 502." (*Id.* at 8). Plaintiffs point out that "Rule 502(b), titled 'Inadvertent Disclosure,' is the only part of Rule 502 where those words appear." (*Id.*). Thus, Plaintiffs argue that Federal Rule of Evidence 502(b) provides the applicable standard for review. (*See id.*).

Upon review, the Court finds that Plaintiffs' reading of the Stipulation and Protective Order is correct. Specifically, the Court notes that there are three sentences in Paragraph 17 of the Stipulation and Protective Order (Doc. 64). These three sentences collectively state the parties' expectations and obligations when addressing the issue of waiver in disclosures between the parties.

The first sentence of Paragraph 17 begins with the phrase "Pursuant to Federal Rule of Evidence 502(d)." (*Id.*). Rule 502(d) is entitled "Controlling Effect of a Court Order." Fed. R. Evid. 502(d). The Rule states "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." *Id.* Congress' intent regarding Rule 502(d) was to allow "parties to conduct and respond to discovery expeditiously, without the need for exhaustive pre-production privilege reviews, while still preserving each

10

party's right to assert the privilege to preclude use in litigation of information disclosed in such discovery." Fed. R. Evid. 502 addendum to advisory committee notes. Federal district courts, including those in Florida, routinely enter orders pursuant to this Rule upon request of the parties. *See, e.g.*, *TracFone Wireless, Inc. v. Urge Mobile, LLC*, No. 1:16-CV-20655, 2016 WL 4249945, at *1 (S.D. Fla. July 15, 2016).

In this case, the parties specifically stated that the Stipulation and Protective Order was entered into "for the purposes of expediting the flow of discovery material, facilitating the prompt resolution of disputes over confidentiality, protecting adequately material entitled to be kept confidential, and ensuring that protection is afforded only to material so entitled." (Doc. 64 at 1). Thus, the Stipulation and Protective Order is clearly consistent with Congress' intentions.

The rest of the first sentence provides:

> . . . disclosure of Discovery Material subject to the attorney-client privilege or work-product doctrine or any other applicable privilege or immunity from disclosure without the express intent to waive such privilege, protection or immunity from disclosure shall not be deemed a waiver in whole or in part of the privilege, work-product or other applicable immunity, either as to the specific information disclosed or as to the same or related subject matter.

(Doc. 64 at ¶ 17).

The Court agrees with Defendant that first sentence of Paragraph 17 stands for the proposition that the mere fact of disclosure "without the express intent to waive such privilege" shall not be deemed to be a waiver of any privilege. (Doc. 455 at 15). Stated differently, when disclosing Discovery Material, only an *express intent* to waive a privilege will serve to waive any applicable privilege *at the time of disclosure*. (*See id.*). The value in this provision, of course, is that the parties may exchange discovery materials freely because the mere fact of the disclosure of a privileged document – without more – will not waive any privilege.

The first sentence of Paragraph 17, however, does not address what happens when privileged materials are inadvertently disclosed. Instead, the second sentence of Paragraph 17 addresses this issue. This sentence memorializes the parties' obligations when there is an inadvertent disclosure of privileged materials. The second sentence states, in relevant part, that "[i]f a Party promptly notifies the opposing Party in writing. . . of the inadvertent disclosure of documents or other information which that Party believes in good faith to be subject to a claim of privilege . . . Federal Rule of Evidence 502 and Federal Rule of Civil Procedure 26(b)(5)(B) must apply." (Doc. 64 at ¶ 17).

The second sentence has several component parts. The second sentence begins with detailing extensive "notice" requirements to the opposing party. (*See id.*). For instance, the second sentence begins with an assumption of "prompt" notice. (*See id.*). Additionally, the notice must be "in writing." (*Id.*). Further, the Stipulation and Protective Order requires a party to "describe the documents or other information which that Party believes in good faith to be subject to a claim of privilege." (*See id.*). Finally, pursuant to the third sentence of Paragraph 17, the required "notice" must include a privilege log that complies with Fed. R. Civ. P. 26(b)(5)(A)—*i.e.*, a party must "expressly make the claim" and also must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

Assuming that the notice requirements are met, the second sentence then states that Fed. R. Evid. 502 and Fed. R. Civ. P. 26(b)(5)(B) *must* apply. (Doc. 64 at ¶ 17). On the one hand, Fed. R. Civ. P. 26(b)(5)(B) addresses what a receiving party must do after receiving

inadvertently disclosed privileged materials.[3]  On the other hand, Fed. R. Evid. 502 addresses a number of issues with attorney-client privilege and work product including limitations on waiver.  There does not appear to be any dispute between the parties regarding the application of Fed. R. Civ. P. 26(b)(5)(B).  The same cannot be said, however, with regard to Fed. R. Evid. 502.

Specifically, Plaintiffs argue that Rule 502(b) provides the applicable standard for review for inadvertent disclosures.  (Doc. 462 at 8).  Defendant, however, argues that the first sentence of the Stipulation and Protective Order provides the applicable standard.  (Doc. 455 at 15).  Upon review, the Court notes that the *express* terms of the Stipulation and Protective Order state that Fed. R. Evid. 502 *must* apply if the notice requirements are met.  (Doc. 64 at ¶ 17).  There are no limitations or exclusions in the plain language of the Order that any particular subsection of Rule 502 should not apply.  (*See id.*).  Because there are no limitations or exclusions, the Court finds that Stipulation and Protective Order requires that the *entirety* of Fed. R. Evid. 502 must apply when the notice requirements are met.  (*See id.*).  Furthermore, as Plaintiffs note, only one subsection of Rule 502 addresses "inadvertent disclosures"—*i.e.*, subsection (b).  (Doc. 462 at 8).  Because the entirety of Fed. R. Evid. 502 must apply, Plaintiffs are correct that Federal Rule of Evidence 502(b) provides the applicable standard for review for inadvertent disclosures under the terms of the Stipulation and Protective Order.  (*See id.*).

On this point, the Court finds that the application of Fed. R. Evid. 502(b) is not inconsistent with the first sentence of Paragraph 17.  By mandating that Rule 502(b) must apply, the Stipulation and Protective Order requires the parties to comply with the requirements of the

---

[3] In pertinent part, the Rule instructs parties to "promptly return, sequester, or destroy the specified information and any copies it has."  Fed. R. Civ. P. 26(b)(5)(B).  Additionally, parties "must not use or disclose the information until the claim is resolved."  *Id.*

Rule, including that "the holder of the privilege or protection took reasonable steps to prevent disclosure" and that "the holder promptly took reasonable steps to rectify the error." Fed. R. Evid. 502(b)(2)-(3). Thus, the application of Rule 502(b) requires a party asserting privilege to be proactive in the event of an inadvertent disclosure. Stated differently, while a privilege is not waived by a mere disclosure to another party without an express intent to waive such privilege, the party making the disclosure cannot sit idly and do nothing to prevent inadvertent disclosures, nor can that party fail to take steps to rectify an inadvertent disclosure once one has been discovered.

Nevertheless, the Court would be remiss in not addressing an apparent issue of faulty drafting by the parties in the Stipulation and Protective Order. The Order states that "*[i]f a Party promptly notifies* the opposing Party in writing . . . of the inadvertent disclosure . . . Federal Rule of Evidence 502 and Federal Rule of Civil Procedure 26(b)(5)(B) must apply." (Doc. 64 at ¶ 17 (emphasis added)). While the Stipulation and Protective Order clearly assumes the parties will comply with the notice requirements, the Order does not address the scenario or the procedure if the notice requirements are not met. (*See id.*). Moreover, the Court notes that "promptly" is not defined. (*See id.*). The Court finds, however, that it need not address the scenario or the procedure for when the notice requirements are not met. Specifically, as illustrated below, it is clear that Defendant gave Plaintiffs prompt and proper notice in writing of her inadvertent disclosures and her claims of privilege. Moreover, Plaintiffs do not appear to contest that proper notice was given, but instead argue that Defendant failed to adequately comply with the requirements of Fed. R. Evid. 502(b). (Doc. 462 at 8). Thus, the Court's analysis is limited to addressing whether Defendant met the requirements of Fed. R. Evid. 502(b).

###### ii. *Federal Rule of Evidence 502(b)*

Fed. R. Evid. 502(b) provides:

(b) Inadvertent Disclosure.  When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:

(1) the disclosure is inadvertent;

(2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and

(3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

In addition to the requirements of Fed. R. Evid. 502, Defendant cites to *Ray v. Cutter Labs., Div. of Miles, Inc.*, 746 F. Supp. 86, 88 (M.D. Fla. 1990), as setting forth the factors courts evaluate in determining whether inadvertent disclosure constitutes a waiver of privilege.  Indeed, this Court has applied the factors from *Ray* in determining a waiver of privilege.  *See Butterworth v. Lab. Corp. of Am. Holdings*, No. 3:08-CV-411-J-34JRK, 2010 WL 11470895, at *7 (M.D. Fla. Dec. 2, 2010), *aff'd*, No. 3:08-CV-411-J-34JRK, 2011 WL 13137953 (M.D. Fla. Oct. 14, 2011).  The five factors courts consider in determining whether an inadvertent disclosure waives the attorney-client privilege are:  "(1) the reasonableness of the precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness."  *Id.* (citing *Ray*, 746 F. Supp. at 88).  The Court addresses these issues in turn below.

###### 1. *The Disclosure Is Inadvertent*

Under Fed. R. Evid. 502(b), the disclosure must be inadvertent to prevent a finding of a waiver.  Here, the parties do not dispute that Defendant's disclosure of the seven documents was inadvertent.  Defendant clearly contends that the disclosure was inadvertent.  (*See* Doc. 455 at

15).  Additionally, Plaintiffs do not contest this issue but instead argue that Defendant did not take adequate steps to prevent the "inadvertent disclosure."  (Doc. 462 at 8).  Because this issue is not contested, the Court finds that Defendant's disclosure of privileged documents was inadvertent.

## 2. *The Holder of the Privilege Took Reasonable Steps to Prevent Disclosure*

Fed. R. Evid. 502(b)(2) requires that "the holder of the privilege or protection took reasonable steps to prevent disclosure."  Additionally, courts evaluate the reasonableness of the precautions taken to prevent inadvertent disclosure.  *See Butterworth*, 2010 WL 11470895, at *7.

In this instance, Defendant argues that she took reasonable steps to prevent the inadvertent disclosure.  For instance, Defendant states that her counsel "reviewed Ms. Devine's scanned hard copy documents but did not immediately recognize that each of the seven documents were authored for the purpose of assisting her counsel in providing her legal advice." (Doc. 455 at 17).  Additionally, Defendant states that her counsel did not "immediately recognize that Ms. Devine had communicated these documents to her attorneys" because "there were no obvious indications on their face that the seven hard copy documents were privileged."  (*Id.*). Defendant states that "[o]nly after completing review of the ESI and comparing the scanned hard copy documents on the draft privilege log to ESI containing similar information did Ms. Devine's counsel become aware that the seven documents were in fact privileged."  (*Id.*). Defendant states that "despite taking reasonable precautions to prevent disclosure, a mistake occurred."  (*Id.*).

Additionally, in mitigation of the error, Defendant states that while she typically includes a header on her emails to her attorneys indicating that the email is "private and confidential." (Doc. 455-6 at 2 ¶ 3).  Defendant states that she nevertheless "often printed materials and

maintained paper copies of documents." (*Id.*). Thus, Defendant states that "not all of my hard-copy documents" – including, apparently, the seven documents here – "contained such a header or would have otherwise alerted a reviewer to the fact that such documents were prepared for and/or requested by my attorneys." (*Id.*).

Plaintiffs argue that the circumstances in this case should have alerted Defendant's counsel that "extra care must be taken." (Doc. 462 at 8). Plaintiffs further argue that Defendant's initial review was too limited under the circumstances to be reasonable. (*See id.* at 8-9).

Upon consideration, while Defendant likely could have done more to prevent the inadvertent disclosure here, the Court is unwilling to find Defendant's precautions were unreasonable. Here, it is clear that Defendant's counsel undertook the effort to specifically review hard copy documents collected from Defendant for privilege. (Doc. 455 at 17). Defendant's counsel then later re-reviewed those documents with other ESI. (*Id.*). It was only on re-review that the inadvertent disclosure came to light. (*Id.*). Additionally, in the Court's review of the documents, the Court notes that none of the documents state the words "privileged," "private," or "confidential" on their face. (Doc. S-478). Thus, it is not readily apparent from the face of the documents that they are privileged or confidential—only a more thorough examination with the documents explained in their proper context demonstrates the privileged nature of the documents. (*See id.*). While Plaintiffs make a compelling argument that the circumstances in this case should have alerted Defendant's counsel that "extra care must be taken" (Doc. 462 at 8), the Court nevertheless finds that the steps Defendant took were *reasonable* in the first instance, even if they were not successful.

### 3. The Holder Promptly Took Reasonable Steps to Rectify the Error

Fed. R. Evid. 502(b)(3) requires that "the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Additionally, courts evaluate the "the time taken to rectify the error." *See Butterworth*, 2010 WL 11470895, at *7.

Plaintiffs argue that Defendant should have discovered the inadvertent disclosure much sooner. (Doc. 439 at 10). Specifically, Plaintiffs contend that Defendant should have been put on notice that there were issues with her production when Plaintiffs previously identified an inadvertent disclosure and sent a letter to Defendant on February 4, 2016. (*See id.*). Plaintiffs argue that Defendant's failure to take reasonable steps has resulted in waiver. (*Id.*).

Defendant argues, however, that she "is required to act within a reasonable time under the circumstances to rectify an error – not to discover the error." (Doc. 455 at 18). Defendant points out that Plaintiffs' counsel first notified them on February 4, 2016 that a single privileged email had been discovered. (*Id.* at 19). Defendant states that her counsel acted promptly to rectify that error. (*Id.*). Defendant states that the discovery of the single screening failure "did not alert Ms. Devine's counsel that the seven hard-copy documents were in fact privileged or that any other privileged documents may have been produced." (*Id.*). Instead, Defendant states that her counsel "was only able to identify that the seven hard-copy documents were privileged, after undertaking a lengthy and complete review of the ESI." (*Id.*). Defendant states that "prior to cross-referencing the scanned hard copy documents with the ESI, there were no obvious indications that the seven hard copy documents were privileged, let alone any 'obvious indications' that they had been inadvertently produced." (*Id.* at 20).

Furthermore, Defendant states that her counsel acted promptly to rectify the issue after discovery of the inadvertent disclosure. (*Id.* at 6). The Court notes that Defendant states that "Mr. Montalbano immediately brought the issue to the attention of Mr. Passerini on June 6, 2016, and they discussed the matter with Mr. Lee and Mr. Comisky on June 7, 2016." (*Id.*). On June 8, 2016, Defendant's counsel notified Plaintiffs' counsel. (*Id.*).

Upon review, the Court finds that Defendant has shown that she took reasonable steps to rectify the error after discovering that the error occurred. *See* Fed. R. Evid. 502(b)(3). For instance, in evaluating the time taken to rectify the error, *see Butterworth*, 2010 WL 11470895, at *7, the record shows that once Defendant's counsel discovered the error, her counsel notified Plaintiffs within two days of discovering the inadvertent disclosure. (Doc. 455 at 6). While Plaintiffs contend that Defendant should have been aware of the potential for additional inadvertent disclosures when Plaintiffs previously notified Defendant on February 4, 2016 that a document had been inadvertently disclosed (Doc. 439 at 10), the Court is unwilling to find that a single inadvertent disclosure among a *much* larger document production necessarily alerted Defendant that there were greater or systemic issues with her document production. Defendant and her counsel have represented to the Court that they were "only able to identify that the seven hard-copy documents were privileged, after undertaking a lengthy and complete review of the ESI." (Doc. 455 at 18).

Furthermore, after discovering the error, it is clear that Defendant used the parties' specific and agreed-upon procedure for addressing an inadvertent disclosure. Specifically, Defendant's counsel sent a letter and a privilege log to Plaintiffs on June 8, 2016. (*See* Doc. 440-7). This letter and privilege log clearly sought to comply with Paragraph 17 of the

Stipulation and Protective Order, and there is no indication that Defendant's actions failed to comply with the notice requirements of Paragraph 17.

While Defendant likely could have taken additional steps to discover the inadvertent disclosure sooner, the Court is unwilling to find that the steps she took to rectify the inadvertent disclosure – once discovered – were unreasonable. Once Defendant's counsel discovered the inadvertent disclosure, they acted quickly, diligently, and in compliance with the Stipulation and Protective Order (Doc. 64) to correct the error. Thus, the Court finds that Defendant took reasonable steps to rectify the error. *See* Fed. R. Evid. 502(b)(3).

### 4. Scope of the Discovery, Extent of Disclosure, and Overriding Issues of Fairness

Finally, in addition to the requirements of Fed. R. Evid. 502(b), courts also evaluate the scope of the discovery, the extent of the disclosure, and the overriding issue of fairness. *See Butterworth*, 2010 WL 11470895, at *7. In this instance, all three factors weigh in favor of Defendant. Specifically, even though Plaintiffs state that there were only 3,532 documents at issue, the Court notes that discovery in this case has been voluminous and extensive. Additionally, the seven documents at issue here constitute an objectively small percentage of Defendant's total document production. Although it is entirely possible that Defendant could have undertaken some additional steps to prevent inadvertent disclosure from occurring, the Court finds that it would be manifestly unfair under these circumstances to find that Defendant's inadvertent disclosure resulted in a waiver of the lawyer-client privilege as to the small number of documents at issue.

### 5. Conclusion

In sum, the Court finds that Defendant has not waived the attorney-client privilege as to the seven documents inadvertently disclosed to Plaintiffs. Plaintiffs' Motion (Doc. 439) is, therefore, due to be denied.

## III.     Miscellaneous Issues

The Court notes that Plaintiffs also seek a determination that Defendant has waived any privilege or protection that may have applied to all of documents produced on January 29, 2016. (Doc. 439 at 14). In this Order, the Court holds that Defendant's inadvertent disclosure has not resulted in a waiver of the lawyer-client privilege as to the seven documents. Additionally, in light of the time that has elapsed between when the Motion was filed and the present, the Court expects that Defendant has had ample time to re-review the entire January 29, 2016 Production to Plaintiffs. At this time, the Court has no reason to suspect that there are any other issues as to any other documents from the January 29, 2016 production.

Similarly, Plaintiffs contend that Defendant had no grounds for a "wholesale clawback" of documents. (*Id.* at 12). Defendant did not specifically address this issue in her response. Again, in light of the time between when the Motion was filed and the present, the Court expects that Defendant has had ample time to re-review the entire January 29, 2016 production to Plaintiffs to identify any further inadvertent production of privileged materials therein. Thus, the Court will not authorize a wholesale clawback of the January 29, 2016 document production. To do so would unreasonably deprive Plaintiffs of the use of the relevant, non-privileged documents contained in the document production. Instead, Defendant must identify with specificity any other privileged documents she contends were inadvertently disclosed within that production. If Plaintiffs dispute Defendant's entitlement to demand the return of those additional documents

pursuant to a claim of privilege, then Plaintiffs may file an appropriate motion seeking relief from the Court.  (*See* Doc. 64 at ¶ 17).

Further, the Court notes that Plaintiffs took issue with the lack of a privilege log by Defendant.  (*Id.* at 6).  At this time, however, all privilege logs certainly should have been produced.  The Court, therefore, need not address this issue at this time.  If Plaintiffs still maintain that Defendant has failed to produce a privilege log, Plaintiffs may renew their motion on that issue.

Finally, because the Court has addressed the merits of Plaintiffs' Motion, the Court need not address Defendant's contention that Plaintiffs delayed in bringing their Motion.  (*See* Doc. 455 at 9).

IV.      **Conclusion**

For the reasons articulated above, the Court hereby **ORDERS** that:

Plaintiffs' Motion for a Determination of Privilege Waiver by Defendant (Doc. 439) is **DENIED**.

**DONE AND ORDERED** in Fort Myers, Florida on April 13, 2017.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties