```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                    FORT MYERS DIVISION
```

ABSOLUTE ACTIVIST VALUE MASTER FUND LIMITED, ABSOLUTE EAST WEST FUND LIMITED, ABSOLUTE EAST WEST MASTER FUND LIMITED, ABSOLUTE EUROPEAN CATALYST FUND LIMITED, ABSOLUTE GERMANY FUND LIMITED, ABSOLUTE INDIA FUND LIMITED, ABSOLUTE OCTANE FUND LIMITED, ABSOLUTE OCTANE MASTER FUND LIMITED, and ABSOLUTE RETURN EUROPE FUND LIMITED,

      Plaintiffs,

v.                                  Case No: 2:15-cv-328-FtM-29MRM

SUSAN ELAINE DEVINE,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on defendant's Motion to Dissolve Ex Parte Temporary Restraining Order Based on Court's Dismissal of Counts I, II, III, IV, and VI of Plaintiffs' Amended Complaint (Doc. #530) filed on March 6, 2017. Plaintiffs filed an Opposition to Defendant's Fourth Motion to Dissolve Temporary Restraining Order (Doc. #539) on March 20, 2017, to which defendant filed a Reply (Doc. #550) on April 7, 2017, and plaintiffs filed a Sur-Reply (Doc. #553) on April 21, 2017.

**I.**

On June 1, 2015, plaintiffs filed a six-count Complaint against Ms. Susan Devine ("Devine") alleging that Devine engaged in a money laundering enterprise with her ex-husband, Florian Homm, to conceal tens of millions of dollars fraudulently taken from the plaintiffs pursuant to an illegal "Penny Stock Scheme." (Doc. #2.) Plaintiffs' initial and Amended Complaint asserted claims against Devine for: (1) Violation of RICO, 18 U.S.C. § 1962(c); (2) RICO Conspiracy, 18 U.S.C. § 1962(d); (3) Florida RICO and Civil Remedies for Criminal Activities; (4) Florida RICO and Florida Civil Remedies for Criminal Activities—Conspiracy; (5) Unjust Enrichment; and (6) Constructive Trust. (Docs. ##2, 196.) Concurrently with the filing of the initial Complaint, plaintiffs filed an *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction seeking to "restrain[] Devine from transferring or dissipating any and all assets in her name or under her control." (Doc. #3, p. 10.)

On July 1, 2015, this Court entered an Order granting plaintiffs' Motion for Temporary Restraining Order. (Doc. # 10.) The Temporary Restraining Order ("TRO") contained the following language:

> Defendant Susan Elaine Devine, her officers, agents, servants, and employees and any persons in active concert or participation with them are temporarily restrained and enjoined from directly or indirectly

>   transferring, selling, alienating, liquidating, encumbering, pledging, leasing, loaning, assigning, concealing, dissipating, converting, withdrawing, or otherwise disposing of any money or other of Devine's assets, including: (i) any assets located in bank accounts or other financial accounts in Devine's name (or for her benefit or the benefit of her children) or the names of foundations benefitting or controlled by Devine, including but not limited to any account of Brek Stiftung, Loyr Stiftung, Hosifa Stiftung, Floma Foundation, and/or Levanne Stiftung, or otherwise under her direct or indirect control; (ii) Devine's residence in Naples Florida; and (iii) any other assets of any type, and in any form, held by Devine, or under her direct or indirect control, anywhere in the world.

(Id. at 66-67.) Additionally, the Court ordered Devine to produce "documents sufficient to identify all assets, anywhere in the world, currently under her direct or indirect control." (Id. at 68.) In response, Devine produced a list of eighty-two individually identified assets, eleven of which were shown as being held by Devine for the benefit of her children, Isabella Devine ("Isabella") and/or Conrad Homm ("Conrad"). (Docs. ##116-1, 130-1.)

Due to the freezing of these assets, on October 2, 2015, Laird Lile, as custodian f/b/o Isabella Devine and Conrad Homm, Orion Corporate & Trust Services, Ltd., Hosifa Stiftung Foundation, 200017, and Conrad Homm moved to intervene as a matter of right to protect their interests in assets subject to the Court's TRO. (Docs. ##103, 105.) On December 7, 2015, the Court allowed

intervention by Laird Lile in his custodial capacity, Orion Corporate & Trust Services, Ltd., and Conrad Homm. (Doc. #156.)

The TRO was initially in place for a period of fourteen days and has since been modified, (Docs. ##68, 76, 198, 230, 233, 275, 313, 333, 445, 556), and, pursuant to agreement of the parties, extended through the trial on the merits, (Docs. ##81, 83). Defendant moved to dissolve the TRO (Doc. #96) and her motion was denied on April 19, 2016 (Doc. #368).[1]

On February 8, 2017, the Court granted in part and denied in part defendant's Motion to Dismiss Amended Complaint, dismissing without prejudice plaintiffs' federal and Florida RICO claims and dismissing with prejudice plaintiffs' constructive trust claim, leaving only the unjust enrichment claim remaining. (Doc. #521.) The Court allowed plaintiffs twenty-one days to amend, should they desire. (Id.) On February 28, 2017, plaintiffs notified the Court that they would be proceeding on their sole remaining state law claim of unjust enrichment. (Doc. #527.)

---

[1] On May 17, 2016, defendant sought reconsideration of the Court's Order denying her Motion to Dissolve Temporary Restraining Order, (Doc. #380), and on May 19, 2016, defendant filed a Notice of Interlocutory Appeal of the Court's Order denying her Motion to Dissolve Temporary Restraining Order, (Doc. #383). The Motion for Reconsideration has since been denied as moot due to the change in posture as a result of this Court's Order on defendant's Motion to Dismiss and the newly-filed Motion to Dissolve currently before the Court.

On May 8, 2017, the Court directed plaintiffs to file a Second Amended Complaint containing only their unjust enrichment claim and the related allegations. (Doc. #559.) On May 15, 2017, plaintiffs filed a Second Amended Complaint, the operative pleading before the Court. (Doc. #560.)

The Second Amended Complaint contains one count for unjust enrichment under Florida law. (Id.) The extensive factual allegations have been set forth in the Court's previous order (see Doc. #521) and remain substantially the same in the plaintiffs' Second Amended Complaint.[2] The crux of the allegations are that Devine and her ex-husband, Florian Homm, fraudulently took and concealed tens of millions of dollars from the plaintiffs pursuant to an illegal Penny Stock Scheme. (Doc. #560.) Plaintiffs' unjust enrichment claim is based on Devine's direct involvement in transferring and concealing the proceeds of the Penny Stock Scheme which belonged to plaintiffs. (Id.) The unjust enrichment count alleges that a direct benefit was conferred on Devine as a result of the Penny Stock Scheme, Devine was aware of this benefit, and provided no consideration in exchange. (Id. at 97-98.) Plaintiffs allege that Devine thus has been unjustly enriched and it would be inequitable for Devine to retain the benefits

---

[2] The minor changes are due to the removal of allegations relating to the dismissed claims.

conferred.  (Id. at 98.)  Plaintiffs' Second Amended Complaint seeks the following relief:

> (a)  An order that Devine, her officers, agents, servants, and employees and any persons in active concert or participation with them be, and are, restrained and enjoined from directly or indirectly transferring, selling, alienating, liquidating, encumbering, pledging, leasing, loaning, assigning, concealing, dissipating, converting, withdrawing, or otherwise disposing of any money or other of Devine's assets;
> (b)  An accounting;
> (c)  Disgorgement;
> (d)  Imposition of a constructive trust; and
> (e)  Such other legal and equitable relief as the Court may deem just and proper.

(Id. at 98-99.)  Plaintiffs do not specifically seek a money judgment.

Defendant moves to dissolve the *Ex Parte* TRO as a result of the dismissal of Counts I, II, III, IV, and VI.  (Doc. #530.) Although the Motion to Dissolve was filed before plaintiffs filed their Second Amended Complaint,[3] the arguments presented in the Motion to Dissolve remain applicable to the Second Amended Complaint.

## II. Subject Matter Jurisdiction

After dismissal of plaintiffs' federal claims, the Court has a *sua sponte* obligation to confirm that it continues to have subject matter jurisdiction over the remaining claim and parties

---

[3] Defendant's Motion to Dissolve was filed on March 6, 2017 (Doc. #530) and plaintiffs' Second Amended Complaint was not filed until May 15, 2017 (Doc. #560).

before it. Williams v. Chatman, 510 F.3d 1290, 1293 (11th Cir. 2007).

District Courts have original jurisdiction over civil actions involving parties with diverse citizenship where the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity, i.e., that every plaintiff is diverse from every defendant. Palmer v. Hosp. Auth. of Randolph Cty., 22 F.3d 1559, 1564 (11th Cir. 1994) (citing Strawbridge v. Curtiss, 7 U.S. 267, 267 (1806)). Within their Second Amended Complaint, plaintiffs allege that there is complete diversity of citizenship because "the Funds are citizens of a foreign state and Devine is a citizen of Florida."[4] (Doc. #560, ¶ 25.) Plaintiffs allege that they are corporations registered in the Cayman Islands as "exempted 'compan[ies] limited by shares.'" (Id. ¶ 9.) They allege that both their places of incorporation and principal places of business are in the Cayman Islands. (Id.) Plaintiffs further allege that the "amount in controversy exceeds $75,000, exclusive of interest and costs" (id.), and the alleged facts clearly supports this allegation.

---

[4] While plaintiffs allege elsewhere that Devine is a citizen of the United States and Brazil (id. ¶ 10), the Eleventh Circuit has held that "an individual who is a dual citizen of the United States and another nation is only a citizen of the United States for the purposes of diversity jurisdiction under § 1332(a)." Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1341 (11th Cir. 2011).

The Second Amended Complaint thus adequately alleges federal jurisdiction based upon diversity of citizenship.

## III.

**A. Standard for Dissolution**

As previously stated by this Court, a temporary restraining order that has been extended beyond the time period specified in Federal Rule of Civil Procedure 65 is treated as a preliminary injunction. Sampson v. Murray, 415 U.S. 61, 87 (1974). When moving to dissolve a preliminary injunction, "the movant must show a change in circumstances that justifies the relief requested." CWI, Inc. v. LDRV Holdings Corp., No. 8:13-CV-93-T-35MAP, 2013 WL 12123229, at *2 (M.D. Fla. Oct. 16, 2013) (citing Hodge v. Dep't of Hous. & Urban Dev., 862 F.2d 859, 861-62 (11th Cir. 1989)). Where a movant establishes a change in circumstances "between entry of the injunction and the filing of the motion that . . . render[s] the continuance of the injunction in its original form inequitable," the Court may modify the injunction in light of the changed circumstances. Id. (quoting Favia v. Ind. Univ. of Pa., 7 F.3d 332, 337-38 (3d Cir. 1993)).

Since the entry of the injunction and the filing of the underlying Motion to Dissolve *Ex Parte* Temporary Restraining Order, this Court entered an Order dismissing some of plaintiffs' claims, in particular those arising under federal law. (See Doc. #521.) As a result, the sole remaining claim is a state law claim

for unjust enrichment.  The Court finds this a sufficient change in circumstances to justify review of the arguments presented in defendant's Motion to Dissolve.  Defendant correctly asserts that because the federal claims have been dismissed, they can no longer support the maintenance of the TRO, and its continued viability must be analyzed based on the remaining state law claim of unjust enrichment.  (Doc. #530, p. 10.)

Defendant asserts that the *Ex Parte* TRO should be dissolved because plaintiffs' only surviving cause of action does not provide an adequate basis for the pre-judgment restraint of assets.  (Id. at 9.)  Alternatively, defendant asserts that defendant's "non-Florida assets must be released from the *Ex Parte* TRO because Florida law does not permit restraint of assets outside of this state and certainly not worldwide."  (Id.)

Plaintiffs respond that defendant's Motion to Dissolve is moot because it is duplicative of her motion for reconsideration[5] and the sole issue is whether the Court has legal authority to maintain the TRO.  Plaintiffs also argue that defendant's assertions regarding the likelihood of success on the merits of the unjust enrichment claim are not properly before the Court.[6]

---

[5] Defendant's Motion for Reconsideration has been denied as moot, thus mooting plaintiffs' argument on this issue.

[6] The Court agrees that the issue is whether the Court has the legal authority to maintain the TRO with plaintiffs' sole remaining unjust enrichment cause of action.  However, this legal authority necessarily carries with it the obligation to confirm

(Doc. #539, pp. 3-15.) Plaintiffs also assert that when initially issuing the TRO, the Court correctly applied the law which supports the order prohibiting the transfer of items located both in and outside of Florida. (Id. at 15-21.)

### B. Viability of the TRO for the Unjust Enrichment Claim

Defendant asserts that plaintiffs' unjust enrichment claim does not support maintenance of the TRO because it requires proof beyond a reasonable doubt, which plaintiffs cannot establish; plaintiffs have failed to sufficiently trace the *res* of the trust to the assets of the defendant; plaintiffs have not shown that they directly enriched defendant; and Florida law prohibits the imposition of preliminary injunctive relief under the circumstances presented in this case. (Doc. #530, pp. 11-19.) The Court addresses the last issue first.

#### 1) Availability of Preliminary Injunctive Relief for Unjust Enrichment Claim

Federal law supported the issuance of the TRO when it was initially entered, and still provides the procedural mechanism for issuance of preliminary injunctive relief. Ferrero v. Associated Materials, Inc., 923 F.2d 1441, 1448 (11th Cir. 1991). Defendant

---

that, as the case stands now, there is a likelihood of success on the underlying claim. The Court finds that defendant's arguments presented are validly raised due to the change in posture of the case.

asserts, however, that the TRO must now be dissolved because Florida law does not allow for preliminary injunctive relief for plaintiffs' sole remaining state law claim of unjust enrichment. (Doc. #530, pp. 18-19.)  The Court agrees.

Federal law governs the issuance, and dissolution, of a preliminary injunction in a diversity action.  <u>Ferrero</u>, 923 F.2d at 1448.  It is state law, however, that determines whether injunctive relief is available for the given state cause of action or remedy.  <u>Noventa Ocho LLC v. PBD Props. LLC</u>, 284 F. App'x 726, 728 & n.4 (11th Cir. 2008) (looking to Florida law to see if preliminary injunctive relief is available); <u>Sims Snowboards, Inc. v. Kelly</u>, 863 F.2d 643, 647 (9th Cir. 1988); <u>APR Energy, LLC v. First Inv. Grp. Corp.</u>, 88 F. Supp. 3d 1300, 1312 (M.D. Fla. 2015).

While Florida Statute section 77.031 does provide a mechanism for prejudgment garnishment of a defendant's assets,[7] plaintiffs

---

[7] This statute provides:

> Before judgment has been obtained by the plaintiff against the defendant:
>
> (1) A writ of garnishment shall be issued by the court or by the clerk on order of the court.
>
> (2) To obtain issuance of the writ, the plaintiff, or the plaintiff's agent or attorney, shall file in the court where the action is pending a verified motion or affidavit alleging by specific facts the nature of the cause of action; the amount of the debt and that the debt for which the plaintiff sues is just, due, and unpaid; that the garnishment is not sued out to injure

did not utilize or attempt to utilize this mechanism when requesting the imposition of the TRO. (Doc. #3.)  Instead, plaintiffs requested and received the imposition of a temporary restraining order under Federal Rule of Civil Procedure 65. (Id.; Doc. #10.)

---

either the defendant or the garnishee; and that the plaintiff believes that the defendant will not have in his or her possession, after execution is issued, *tangible or intangible property in this state and in the county* in which the action is pending on which a levy can be made sufficient to satisfy the plaintiff's claim. The writ of garnishment shall set forth a notice to the defendant of the right to an immediate hearing for dissolution of such writ pursuant to s. 77.07. Upon issuance of the writ of garnishment, the clerk of the court shall provide by mail a copy of the writ to the defendant.

(3) Except when the plaintiff has had an attachment writ issued, no writ of garnishment before judgment shall issue until the plaintiff, or the plaintiff's agent or attorney, *gives a bond with surety to be approved by the clerk payable to the defendant in at least double the amount of the debt demanded*, conditioned to pay all costs, damages, and attorney's fees that the defendant sustains in consequence of the plaintiff's improperly suing out the writ of garnishment. A garnishment bond is not void or voidable because of an informality in it, nor shall the obligors be discharged because of the informality, even though the garnishment is dissolved because of the informality.

(4) The motion or pleading need not negative any exemptions of the defendant.

Fla. Stat. § 77.031 (emphasis added).

The general rule in Florida is that a preliminary injunction cannot be issued solely to preserve funds to satisfy eventual monetary relief. Pianeta Miami, Inc. v. Lieberman, 949 So. 2d 215, 217 (Fla. 3d DCA 2006) ("It is well settled that an injunction cannot be used to restrain the use of a party's unrestricted assets prior to the conclusion of an action at law." (citation omitted)); Lawhon v. Mason, 611 So. 2d 1367, 1368 (Fla. 2d DCA 1993) ("An injunction cannot be used to enforce money damages or prevent a party from disposing of assets prior to the conclusion of an action at law." (citation omitted)). See also Rosen v. Cascade, 21 F.3d 1520, 1527 (11th Cir. 1994). "Even where the party seeking injunctive relief alleges that the opposing party may dissipate bank assets, a judgment for money damages is adequate and injunctive relief is improper, notwithstanding the possibility that a money judgment will be uncollectible." Weinstein v. Aisenberg, 758 So. 2d 705, 706 (Fla. 4th DCA 2000). The test is "whether a judgment can be obtained, not whether, once obtained, it will be collectible." Id. at 708 (Gross, J., concurring) (citation omitted). Florida law recognizes an exception to this general rule that preliminary injunctive relief is improper to preserve funds in an action at law where a party seeks injunctive relief "to protect what is asserted to be the res of a trust during the pendency of litigation." M.I. Indus. USA Inc. v. Attorneys' Title Ins. Fund, Inc., 6 So. 3d 627, 629 (Fla. 4th DCA 2009)

(citing Gruder v. Gruder, 433 So. 2d 23, 24 (Fla. 4th DCA 1983)); Weinstein, 758 So. 2d at 707-08 (noting that the party requesting the injunction did not "seek an injunction to an action to impose a constructive trust on the bank accounts" (Gross, J., concurring) (citations omitted))).

While a claim for unjust enrichment is often referred to as equitable, in Florida, unjust enrichment is an action at law.[8] Because unjust enrichment is an action at law, money damages are available, and therefore such a claim does not alone support the imposition of preliminary injunctive relief. M.I. Indus. USA Inc., 6 So. 3d at 629 (dissolving preliminary injunction that froze assets because "an action for unjust enrichment is an action at law," therefore "money damages will suffice to compensate any loss"); Weinstein, 758 So. 2d 705, 707 (Fla. 4th DCA 2000) (Gross, J., concurring). Further, "[a]n action at law does not become an equitable action simply because a request for an injunction has

---

[8] This Court, and even some Florida courts, have described a cause of action for unjust enrichment as equitable. See Llorca v. Rambosk, No. 2:15-cv-17-FtM-29CM, 2015 WL 2095805, at *2 (M.D. Fla. May 5, 2016) (quoting Tooltrend, Inc. v. CMT Utensili, SRL, 198 F.3d 802, 805 (11th Cir. 1999)). However, this relates to the fact that it is invoked in regard to the sense of fairness, not the "equity side of the court." Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc., 695 So. 2d 383, 390 (Fla. 4th DCA 1997) ("Although some Florida courts have described [unjust enrichment] as being 'equitable in nature,' the term has been used in a sense of 'fairness,' to describe that quality which makes an enrichment unjust, and not as a reference to the equity side of the court.").

been made." Lopez-Ortiz v. Centrust Sav. Bank, 546 So. 2d 1126, 1127 (Fla. 3d DCA 1989) (citation omitted).

Plaintiffs' Second Amended Complaint only requests equitable relief and does not, on its face, request monetary damages for their unjust enrichment claim. (Doc. #560, pp. 98-99.) Despite the equitable titles affixed to the relief requested, plaintiffs are essentially seeking one thing – money.[9] Should plaintiffs receive the relief requested in their Second Amended Complaint, they would obtain an award of monetary damages. Because plaintiffs are requesting monetary damages for their action at

---

[9] The County's claims in this case, while sounding in equity, are no more than a claim for damages stemming from a breach of contract: Count I of the complaint seeks a declaration determining whether SUFA charged and collected fees in excess of that allowed by the parties' contract and, if so, whether the County is entitled to any portion of the excess collected; Count II seeks an accounting to determine whether any fees collected by SUFA should have been paid to the County; and Count III seeks only to freeze SUFA's bank accounts because "[o]n information and belief," SUFA had been collecting fees in excess of that allowed and had been either misusing these funds or failing to remit them to the County as alleged in Counts I and II of the complaint. Because the allegations assert no more than a breach of contract compensable by a damage award, no irreparable harm essential to secure injunctive relief freezing SUFA's bank accounts could be demonstrated.

Stand Up for Animals, Inc. v. Monroe County, 69 So. 3d 1011, 1013 (Fla. 3d DCA 2011)

law, Florida law precludes the imposition of preliminary injunctive relief to preserve the ultimate availability of otherwise unrestricted funds. Therefore, the only viable basis for the continued imposition of the TRO is to protect the res of a constructive trust. The Court will now address defendant's arguments challenging the availability of a constructive trust as a remedy under the circumstances of this case.

**2) Tracing of Assets to Support Constructive Trust**

Defendant asserts that plaintiffs' request for a constructive trust as a remedy for their unjust enrichment claim does not support the continued imposition of the TRO because plaintiffs have failed to sufficiently trace the *res* of the trust to the assets of the defendant. (Doc. #530, pp. 12-16.)

Florida law is clear that a constructive trust may be imposed only where the trust res is "specific, identifiable property or if it can be clearly traced in assets of the defendant." Stand Up for Animals, Inc., 69 So. 3d at 1013-14 (citation omitted); Bank of Am. v. Bank of Salem, 48 So. 3d 155, 158 (Fla. 1st DCA 2010). "Because the res of a trust must be specifically identifiable, funds deposited into an account and comingled [sic] with other funds cannot ordinarily be the subject of an injunction." Stand Up for Animals, Inc., 69 So. 3d at 1013–14 (emphasis added) (citation omitted). See also BNB Constr., Inc. v. Nicon Constr., Inc., 13 So. 3d 1107, 1108 (Fla. 4th DCA 2009); M.I. Indus. USA Inc., 6 So.

3d at 629 (finding injunction improper where funds were commingled).

A review of the tracing allegations reveals that most, if not all, of the funds plaintiffs are seeking to establish as the res of a constructive trust have been commingled multiple times with funds in other accounts and with other funds when purchasing real estate and other items. (See Doc. #2, pp. 14, 59-64; Doc. #560, pp. 14, 57-63 (discussing difficulty tracing assets; discussing "one dozen cash transactions" between 2007 and 2009 at PHZ; discussing funds being "further distributed" among accounts; discussing cash transactions to prevent tracing; discussing transfers that consist "at least in part of Penny Stock Scheme proceeds"; discussing transfers to numerous existing accounts)); (Doc. #3, p. 16 (discussing that proceeds used to purchase gold and other metals are not easily traced; discussing cash withdrawals and deposits among accounts)); (Doc. #10, pp. 37 (discussing 83% of funds transferred were from Penny Stock Scheme; discussing transfer of €4 million, approximately €1,660,217 originated from the recent sale of plaintiffs' stock; discussing transfers in and out and among numerous accounts)).

Due to the commingling of funds in accounts and when investing in real estate and other items, the cash transactions, and the admitted difficulty in tracing the assets, the Court does not find a substantial likelihood that plaintiffs will be able to ultimately

establish their entitlement to the imposition of a constructive trust.[10] Plaintiffs have not set forth any factual basis for this Court to find that the funds were not commingled and instead point to case law out of the Southern District of New York and a federal bankruptcy case. (Doc. #539, p. 13 n.10.) The Court finds that these cases are either factually distinguishable or not binding on this Court. The clear trend in Florida is to not allow preliminary injunctive relief to protect the res of a constructive trust where the funds have been commingled.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendant's Motion to Dissolve Ex Parte Temporary Restraining Order Based on Court's Dismissal of Counts I, II, III, IV, and VI of Plaintiffs' Amended Complaint (Doc. #530) is **GRANTED.**

2. The Temporary Restraining Order imposed by this Court on July 1, 2015 is hereby **dissolved**.

**DONE and ORDERED** at Fort Myers, Florida, this __25th__ day of July, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record

---

[10] The Court clarifies that it does not hold that it is impossible to trace the funds among the assets.