UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ABSOLUTE ACTIVIST VALUE
MASTER FUND LIMITED,
ABSOLUTE EAST WEST FUND
LIMITED, ABSOLUTE EAST WEST
MASTER FUND LIMITED,
ABSOLUTE EUROPEAN CATALYST
FUND LIMITED, ABSOLUTE
GERMANY FUND LIMITED,
ABSOLUTE INDIA FUND LIMITED,
ABSOLUTE OCTANE FUND
LIMITED, ABSOLUTE OCTANE
MASTER FUND LIMITED, and
ABSOLUTE RETURN EUROPE FUND
LIMITED,

      Plaintiffs,

v.                         Case No: 2:15-cv-328-FtM-29MRM

SUSAN ELAINE DEVINE,

      Defendant.

_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on defendant's Motion for Award of Costs and Fees (Doc. #713 and Doc. #741[1]) filed on July 25, 2018. Also filed are the Declaration of Matthew D. Lee (Doc. #714) and a proposed Bill of Costs (Doc. #715) in the amount of $104,725.37. Plaintiffs filed an Opposition (Doc. #732) on August 22, 2018, along with the Declaration of David Spears in Support (Doc. #733). Defendant filed a Reply in Support (Doc. #750) of

_____

[1] A public version and a sealed version of the motion were filed.

her motion and another Declaration (Doc. #751) with exhibits on October 2, 2018. Plaintiffs filed a Sur-Reply (Doc. #752), and a Declaration of Christopher Dysard (Doc. #753) on October 23, 2018. The parties were granted leave to file the motion, response, and supporting declarations under seal. (Docs. ## 728, 729, 738, 739, 741, 742.)

## I.   Procedural History

The Court briefly summarizes the relevant portions of the lengthy and contentious procedural history of this case as follows:

The case was initiated on June 1, 2015, by a Complaint (Doc. #2) and an E*x Parte M*otion (Doc. #3) filed under seal. (Doc. #7.) The six-count, 144-page Complaint alleged a money laundering enterprise to conceal fraudulently obtained funds taken in a penny stock scheme orchestrated by defendant Susan Devine and her non-party former husband Florian Homm.

On July 1, 2015, the Court entered a 69-page Opinion and Order (Doc. #10) granting plaintiffs an *ex parte* Temporary Restraining Order enjoining defendant from transferring, converting, withdrawing or otherwise disposing of any money or other assets. Defendant was also enjoined from the destruction or disposal of her financial documents, and limited discovery was permitted. Plaintiffs were required to post a $10,000 bond, and a preliminary injunction hearing was set. The bond monies were deposited with the Clerk of Court on July 7, 2015. (Doc. #15.)

The Temporary Restraining Order was extended through July 30, 2015 (Doc. #55), and then through October 1, 2015 (Doc. #67), and was modified and extended on August 3, 2015 (Doc. #68) to exclude certain assets and August 24, 2015 (Doc. #76) to release sums to pay expenses. On September 17, 2015, the Court granted the parties' joint request to consolidate the preliminary injunction hearing with the trial on the merits (Doc. #83). On September 25, 2015, a Case Management and Scheduling Order (Doc. #89) was entered. Laird Lile, Orion Corporate and Trust Services, Ltd., and Conrad Homm were allowed to intervene for the limited purpose of protecting their interests in the assets described in their motions. (Doc. #156.)

On January 14, 2016, plaintiffs filed an Amended Complaint (Doc. #196) to correct certain pleading deficiencies. The 147-page Amended Complaint alleged two federal RICO claims (Counts I and II), a state RICO claim and a Florida Civil Remedies for Criminal Activities claim (Counts III and IV), a state law unjust enrichment claim (Count V), and a state law constructive trust claim (Count VI).

On February 1, 2016, the temporary restraining order was further amended to allow defendant to pay for the maintenance and upkeep of foreign properties from foreign accounts, and to allow the opening of accounts to accept rental income for entities with rental income. (Doc. #230.) On February 2, 2016, the temporary

restraining order was modified to allow a release of funds for the reasonable living and educational expenses and attorneys' fees for Isabella Devine and Conrad Homm. (Doc. #233.) On March 21, 2016, a modification was granted to allow defendant to rent out a villa in Spain with the rental income to be reported to plaintiffs on a monthly basis. (Doc. #333.)

On April 19, 2016, the Court denied defendant's request to dissolve the Temporary Restraining Order, leaving the issue of the preliminary injunction for trial. (Doc. #368.) Defendant filed a Notice of Interlocutory Appeal (Doc. #383), but the appeal was later voluntarily dismissed. (Doc. #601.)

On February 8, 2017, the Court granted in part defendant's Motion to Dismiss Amended Complaint. (Doc. #521.) The Court dismissed Counts I and II (the federal RICO counts) and the Florida RICO and Florida Civil Remedies for Criminal Activities claims (Count III and IV) without prejudice because they did not set forth plausible claims that the wrongful acts were committed domestically and not abroad. (Id., p. 56.) Count VI was dismissed with prejudice because constructive trust is not a freestanding cause of action but a remedy to the unjust enrichment claim. (Id., p. 62.) The motion was denied as to the unjust enrichment claim. (Id., p. 63.) The Court granted plaintiffs leave to file a second amended complaint. (Id., p. 65.)

On February 28, 2017, plaintiffs notified the Court that they were choosing not to file a Second Amended Complaint (Doc. #527), leaving only Count V for unjust enrichment as the operative claim. Defendant moved to dissolve the Temporary Restraining Order as not being justified by the unjust enrichment claim, the only remaining claim. (Doc. #530.) On May 8, 2017, the Court directed plaintiffs to file a Second Amended Complaint which included only the remaining state claim of unjust enrichment without the superfluous allegations. (Doc. #559.) On May 15, 2017, the Second Amended Complaint (Doc. #560) was filed.

On July 25, 2017, the Court issued an Opinion and Order (Doc. #575) granting defendant's motion to dissolve the Temporary Restraining Order. Plaintiffs filed an interlocutory appeal (Doc. #576), which on February 20, 2018, was deemed voluntarily dismissed by plaintiffs. (Doc. #681.) On February 14, 2018, plaintiffs filed a Notice of Voluntary Dismissal Without Prejudice Pursuant to Rule 41(a)(1)(A)(i) (Doc. #680).

On February 21, 2018, the Court entered an Order (Doc. #682) dismissing the case without prejudice pursuant to the Notice of Voluntary Dismissal Without prejudice (Doc. #680), and directed the Clerk to close the case.

On April 20, 2018, defendant filed a Motion for Entry of Partial Final Judgment (Doc. #685). This Motion sought entry of a final judgment in favor of defendant as to the counts of the

Amended Complaint which had been dismissed on February 8, 2017. After extensive briefing, on July 11, 2018, the Court directed judgment in favor of defendant and against plaintiffs dismissing Counts I, II, III, IV, and VI with prejudice. (Doc. #707.) Judgment (Doc. #708) was issued on July 11, 2018.

Defendant now seeks an award of costs pursuant to Federal Rule of Civil Procedure 54(d) as a prevailing party; costs and attorney's fees pursuant to Fed. R. Civ. P. 37(d), the Court's inherent authority, and the Florida RICO Act; and damages pursuant to Fed. R. Civ. P. 65 against the temporary restraining order bond. The Court discusses each below.

## II.  Taxable Costs

Defendant seeks taxable costs of either $105,425.37 (Doc. #713, p. 11; Doc. #714, p. 2 ¶ 4) or $104,725.37 (Bill of Costs, p. 1) pursuant to Fed. R. Civ. P. 54(d) as the prevailing party in this case.  A "prevailing party" is entitled to recover costs other than attorney fees as a matter of course unless a federal statute, the Federal Rules, or a court order provide otherwise. Fed. R. Civ. P. 54(d)(1).  The costs which may be taxed in favor of a prevailing party are set forth in 28 U.S.C. § 1920. Plaintiffs object to many of the costs, discussed below, and seek to reduce taxable costs to $3,264.50. (Doc. #732, p. 29.)

Plaintiffs have provided a chart (Doc. #753-10) of the requested costs and their objections.

## A. Costs Incurred After February 28, 2017

Plaintiffs argue the Court should deny all costs incurred after February 28, 2017, the date plaintiffs filed their Notice of election to pursue only the unjust enrichment count. (Doc. #527.) Plaintiffs implicitly acknowledge that defendant became the prevailing party as to the five counts plaintiffs decided not to pursue as of this date. Plaintiffs argue, however, that their subsequent February 14, 2018 voluntary dismissal of the unjust enrichment count pursuant to Rule 41(a)(1)(A)(i) did not create prevailing party status as to that last remaining count because a voluntary dismissal is not a resolution on the merits. Since defendant was not a prevailing party as to the unjust enrichment count, plaintiffs argue, it would be inequitable to tax any costs incurred between these dates since these costs could only relate to the unjust enrichment claim. (Doc. #732, pp. 30-32.) Plaintiffs compute these impermissible costs as totaling $12,712.33. (Doc. #753-10, p. 8.) The Court rejects this position for several reasons.

It is certainly well-settled that "[p]revailing parties are entitled to receive costs under Fed. R. Civ. P. 54(d)", U.S. EEOC v. W&O, Inc., 213 F.3d 600, 620 (11th Cir. 2000), while non-prevailing parties cannot be awarded such costs, Lipscher v. LRP

Publ'ns, Inc., 266 F.3d 1305, 1321 (11th Cir. 2001). But prevailing party status relates to the case, not just individual counts within the federal case. Thus, a party may be considered a "prevailing party" under Rule 54(d) without prevailing on all counts. Head v. Medford, 62 F.3d 351, 354-55 (11th Cir. 1995); Lipscher, 266 F.3d at 1321. To be a prevailing party,

> [a] party need not prevail on all issues to justify a full award of costs, however. Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of rule 54(d).... A party who has obtained some relief usually will be regarded as the prevailing party even though he has not sustained all his claims.... 10 Wright & Miller, supra, § 2667, p. 129-130. Cases from this and other circuits consistently support shifting costs if the prevailing party obtains judgment on even a fraction of the claims advanced.

Medford, 62 F.3d at 354-55 (quoting United States v. Mitchell, 580 F.2d 789, 793-94 (5th Cir. 1978) (citations omitted)). Ordinarily, to be a prevailing party requires a judgment or some "judicial *imprimatur*" that prompts a material alteration in the legal relationship of the parties. Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605 (2001).

The five unpursued counts were dismissed with leave to amend on February 8, 2017; plaintiffs decided not to re-file such counts on February 28, 2017; and an order and a judgment were entered on July 11, 2018 dismissing the five counts with prejudice and the

unjust enrichment count in the Second Amended Complaint without
prejudice. (Docs. ## 707, 708.) Defendant thus became the
prevailing party in the case as of July 11, 2018, when defendant
succeeded on significant claims and there was a change in the legal
relationship between the parties through a resulting enforceable
judgment. Farrar v. Hobby, 506 U.S. 103, 109, 111 (1992). The
Court will not exclude costs simply because they were incurred
after February 28, 2017.

**B. Items of Taxable Costs**

Defendant submitted a proposed Bill of Costs (Doc. #715) of
$104,725.37. It is undisputed that the Court may tax six
categories of litigation expenses as costs:

> **(1)** Fees of the clerk and marshal;
>
> **(2)** Fees for printed or electronically
> recorded transcripts necessarily obtained for
> use in the case;
>
> **(3)** Fees and disbursements for printing and
> witnesses;
>
> **(4)** Fees for exemplification and the costs of
> making copies of any materials where the
> copies are necessarily obtained for use in the
> case;
>
> **(5)** Docket fees under section 1923 of this
> title;
>
> **(6)** Compensation of court appointed experts,
> compensation of interpreters, and salaries,
> fees, expenses, and costs of special
> interpretation services under section 1828 of
> this title.

28 U.S.C. § 1920.  All parties agree that taxable costs are limited to those costs enumerated in § 1920.  The Court addresses each category of costs sought by defendant.

**(1)  Filing and Docket Fees**

Pursuant to 28 U.S.C. § 1923, the Bill of Costs seeks the costs of docket fees associated with plaintiffs' discontinuance of the civil action ($5.00) and the fee for filing a motion for judgment ($5.00).  (Doc. #715, p. 1, and Exh. 6.)  These are taxable costs, 28 U.S.C. § 1920(1), and the $10.00 will be taxed.

The Bill of Costs also seeks the cost of the $505 appellate filing fee paid on May 20, 2016, in conjunction with defendant's interlocutory Notice of Appeal (Doc. #383) from the Opinion and Order (Doc. #368) denying defendant's Motion to Dissolve the Temporary Restraining Order.  (Doc. #715, p. 1, and Exh. 1.)  This appeal was later voluntarily dismissed by defendant.  (Doc. #601.)  Since defendant was not the prevailing party in this appellate proceeding, the Court will not allow the appellate filing fee as a taxable cost.

**(2)  Service of Process and Subpoena Costs**

The Bill of Costs seeks a total of $715.00 for service of process fees by four private process servers.  (Doc. #715, p. 1, and Exh. 5.)  Private process server fees, including travel, service, and other expenses, are taxable under 28 U.S.C. § 1920(1), and may be taxed to the limits allowed in 28 U.S.C. § 1921.  EEOC

v. W & O, Inc., 213 F.3d at 624.  Under § 1921(b), the Attorney General sets the amounts of the fees by regulation.  In 28 C.F.R. § 0.114(a)(3), the fee for personal service of process is $65 per hour or portion thereof, plus travel costs and other out-of-pocket expenses.  Defendant has not provided any information establishing the time it took to serve process, or the travel costs or expenses.  Accordingly, the Court will tax **$260** ($65 for each of the four process servers).

### (3)  Transcripts of Court Hearings and Depositions

The Bill of Costs seeks to tax the costs of court hearing transcripts and deposition transcripts in the total amount of $16,532.74.  (Doc. #715, p. 1 and Exh. 2.)  These Costs include transcripts of four court status conferences and deposition costs related to eleven witnesses.

"Expenses for 'the stenographic transcript necessarily obtained for use in the case' are permitted by § 1920[2]."  Maris Distrib. Co. v. Anheuser-Busch, Inc., 302 F.3d 1207, 1225 (11th Cir. 2002).  This may include depositions of witnesses identified for discovery purposes.  Maris Distrib. Co., 302 F.3d at 1225.  But "[w]here the deposition costs were merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only, the costs are not recoverable."  W&O, Inc., 213 F.3d at 620 (citation omitted).  The costs of transcripts of court proceedings may be taxed under the same standard.

**(a)  Court Proceedings**

Defendant seeks the costs of transcripts of four status conferences, totaling $715.05.  (Doc. #715, Exhibit 2.) Plaintiffs seek to exclude the costs of three of the four status conferences because the conferences were primarily about scheduling and not substantive matters. (Doc. #732, p. 32.)  The July 20, 2015, status conference included discussions about hammering out a protective order for review by the Magistrate Judge, jurisdictional issues that may be raised, and scheduling. (Doc. #39.)  The Court agrees this transcript was not necessary for use in the case and the costs will be denied.  The July 28, 2015, status conference was extensive and discussed the financials of defendant and her need for a release of funds for living expenses.  (Doc. #57.)  The Court concludes that this transcript was necessarily obtained for use in the case, and therefore the cost of this transcript ($355.25) will be taxed.  Plaintiffs do not challenge the cost of the July 30, 2015, status conference, and therefore $173.70 will be taxed.  The transcript of a short status conference conducted on October 1, 2015 was not necessarily obtained for use in the case, but rather was for the convenience of counsel.  This cost will not be taxed.

In sum, the Court will tax **$495.95** ($322.25 plus $173.70) for the costs of the necessary transcripts of the court proceedings.

**(b)  Deposition Costs**

Defendant seeks to tax costs of $15,817.69 for deposition transcripts and/or associated costs for the depositions of eleven witnesses. (Doc. #715, Exh. 2.) Plaintiffs seek to eliminate the deposition costs associated with rough drafts, litigation packages, Optical Character Recognition (OCR) costs, processing, shipping, delivery, handling, color exhibits, translation synchronization, and expedited transcripts. (Doc. #732, pp. 32-33.)

Defendant must submit a request which enables the Court to determine which costs are properly taxed. Loranger v. Stierheim, 10 F.3d 776, 784 (11th Cir. 1994). Taxing the costs of expedited transcripts is generally frowned upon, but may be permissible under the proper circumstances if necessary for use in the case. Maris Distrib. Co., 302 F.3d at 1226. Where additional expenses such as condensed transcripts, electronic transcripts, CD copies, exhibits, and shipping "are only for the convenience of counsel, they are not reimbursable." Woods v. Deangelo Marine Exhaust Inc., No. 08-81579-CIV, 2010 WL 4116571, at *8 (S.D. Fla. Sept. 27, 2010), report and recommendation adopted, No. 08-81579-CIV-HURLEY, 2010 WL 4102939 (S.D. Fla. Oct. 18, 2010) (collecting cases). "[W]hen a party notices a deposition to be recorded by nonstenographic means, or by both stenographic and nonstenographic means, and no objection is raised at that time by the other party

to the method of recordation", costs may be taxed (citing Fed. R. Civ. P. 30(b))). Morrison v. Reichhold Chems., Inc., 97 F.3d 460, 464-65 (11th Cir. 1996). Video must still be "necessarily obtained" for use in the case in order to be taxable. Morrison, 97 F.3d at 465.

The Court finds that defendant has not shown that the costs of expedited transcripts were necessary for the witnesses identified in this case. The Court also finds that defendant has not justified the extraneous costs associated with the individual depositions. Therefore, the litigation packages, rough drafts, shipping and handling costs, and other miscellaneous deposition costs will be eliminated.

Plaintiffs argue that defendant cannot recover costs for both a transcript and a video of the same deposition, as requested for Glenn E. Kennedy, Karen Neptune, and her own deposition, without justifying the need for both. (Doc. #732, p. 33.) Plaintiffs do not point to any contemporary objection to the video at the time of these depositions, however, both versions were not necessary. Therefore, the cost of one or the other will be permitted as to Kennedy and Neptune, but not both. The Court will allow the higher amount of the two options.

Plaintiffs argue that the cost of exhibits used for a deposition taken by defendant cannot be taxed. (Doc. #732, p. 33.) The Court finds that exhibits associated with plaintiff's

corporate designees should be permitted, however the remaining exhibits are deemed to have been for the convenience of counsel. Plaintiffs further argue that defendant noticed depositions that were improper and intended to circumvent a pending motion for protective order, knowing full well that plaintiff entities would not appear. (Id., p. 32.) As discussed below in relation to the request for attorney fees and expenses under Rule 37(d), the Court disagrees with the position of plaintiffs. The following deposition costs will be allowed:

| Witness | Deposition Job Date | Description of Costs Allowed | Amount |
|---|---|---|---|
| Karen Neptune | 1/29/16 | Certified Transcript, and minimal Exhibits, | $197.60 |
| Karen Neptune | 1/29/16 | Video -DVD | $ 00.00 |
| Brian Escalante | 3/14/16 | Pages | $505.05 |
| Guillermo Sampere | 5/25/16 | Virtual participant | $195.00 |
| Ronald Tompkins | 5/22/17 | Transcript services | $172.35 |
| Ronald Tompkins | 5/23/17 | Transcript services | $914.95 |
| Isabella Devine | 7/19/16 | Certified transcript | $280.00 |
| Rep., AAVMFL | 1/24/18 | Videography | $360.00 |
| Rep., Absolute India | 1/26/18 | Transcript services | $125.00 |
| Rep., Absolute VMFL | 1/24/18 | Certificate on non appearance, statement on record, delivery and handling | $207.00 |
| Rep., Absolute Ger. | 1/25/18 | Certificate of non appearance | $155.00 |
| Susan Devine | 7/25/17 | Transcript services | $2,529.25 |
| Susan Devine | 7/29/15 | Certified transcript | $1,042.80 |
| Susan Devine | 7/29/15 | Video | $ 00.00 |
| Glen Kennedy | 12/1/17 | Transcript services | $1,990.00 |
| Glen Kennedy | 12/1/17 | Videography | $ 00.00 |
| **TOTAL:** | | | **$8,674.00** |

The Court will allow a total of **$8,674.00** for depositions after reductions.

**(4)  Witnesses Fees**

The Bill of Costs seeks $180.00 in witness fees for four witnesses. (Doc. #715, p. 1 and Exh. 5.)  Witness fess may be taxed as costs under 28 U.S.C. § 1920(3).  Under 28 U.S.C. § 1821, a witness attending court or a deposition shall be paid an attendance fee of $40 per day, plus other allowed travel expenses, including mileage.  28 U.S.C. § 1821(b).  The Court may not tax an amount in excess of that allowed by § 1821.  <u>Morrison</u>, 97 F.3d at 463.  No travel expenses or mileage is identified, and two of the requested witness fees exceed the rate of $40 per day. Therefore, the total will be lowered from the requested $180 to **$160.00** ($40 per witness).

**(5)  Document Copying**

The Bill of Costs seeks $86,782.63 for copying documents necessarily obtained for use in the case. (Doc. #715, p. 1 and Exhibit 3.)  Supporting documentation is contained in Exhibits 2-4 of the Bill of Costs.

Copying costs are taxable when "the costs of making copies of any materials where the copies are necessarily obtained for use in the case."  28 U.S.C. 1920(4).  "[I]n evaluating copying costs, the court should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue."  <u>W&O, Inc.</u>, 213 F.3d at 623.

The Bill of Costs divides the copying costs into two categories: traditional paper copying and e-discovery copying.

**(a)    Traditional Paper Copying**

Defendant requests $5,584.49 in paper copying costs. (Doc. #715, Exhibit 3.)  Plaintiffs argue that none of these copying costs should be allowed because no explanation has been provided as to why the costs were necessary for use in the case. (Doc. #732, p. 33.)  Defendant did not discuss these costs in the Reply.

Exhibit 2 to the Bill of Costs contains a list of vendors, dates, and the costs of copying totaling $16,532.74.  "[B]illing records which merely list "copies" or "photocopies" without any description of the nature or purpose of the photocopying was insufficient."  United States ex rel. Christiansen v. Everglades Coll., Inc., No. 1260185-CIV-DIMITROULE, 2014 WL 11531631, at *4 (S.D. Fla. Nov. 13, 2014), report and recommendation adopted, No. 12-60185-CIV, 2014 WL 11531632 (S.D. Fla. Dec. 5, 2014).  This costs will not be allowed.

Plaintiffs argue that defendant cannot recover costs for copies of exhibits used in the deposition of Mr. Kennedy because it was defendant who took the deposition.  The Court has not allowed the request for "exhibit management" expenses associated with the deposition of Glenn E. Kennedy, therefore this issue is moot.

The billing records for the date of the reproduction of documents shows "Park Evaluations and Translations of Swiss Prosecution Letter and Mallorca Property Declaration." It is unclear if the request is for copies of the translations, and to what end. Therefore, the entire amount will be denied.

**(b) E-Discovery Copying**

Plaintiffs argue that the $81,198.14 in e-discovery costs should be disallowed entirely under Wiand v. Wells Fargo Bank, N.A., No. 8:12-CV-557-T-27EAJ, 2015 WL 12839237, at *10 (M.D. Fla. June 10, 2015), report and recommendation adopted, No. 8:12-CV-557-T-27EAJ, 2016 WL 355490 (M.D. Fla. Jan. 29, 2016) (citing Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp., 2 F. Supp. 3d 1306, 1318 (N.D. Ga. 2014)). In reply, defendant argues that e-discovery costs are often awarded, and the amount sought is not "unreasonably large." (Doc. #750, p. 16.)

With regard to the prior version of § 1920(4), the Eleventh Circuit stated that section 1920(4) "allows recovery only for the reasonable costs of actually duplicating documents, not for the cost of gathering those documents as a prelude to duplication." Allen v. U.S. Steel Corp., 665 F.2d 689, 697 n.5 (5th Cir. Unit B 1982). The United States Supreme Court recently and clearly stated that e-discovery expenses are not authorized under § 1920. Rimini St., Inc. v. Oracle USA, Inc., 139 S. Ct. 873, 878 (Mar. 4,

2019).   Following the principle that only copying costs are permitted under § 1920(4), the Federal Circuit concluded that:

> recoverable costs under section 1920(4) are those costs necessary to duplicate an electronic document in as faithful and complete a manner as required by rule, by court order, by agreement of the parties, or otherwise. To the extent that a party is obligated to produce (or obligated to accept) electronic documents in a particular format or with particular characteristics intact (such as metadata, color, motion, or manipulability), the costs to make duplicates in such a format or with such characteristics preserved are recoverable as "the costs of making copies ... necessarily obtained for use in the case." 28 U.S.C. § 1920(4). But only the costs of creating the produced duplicates are included, not a number of preparatory or ancillary costs commonly incurred leading up to, in conjunction with, or after duplication.

CBT Flint Partners, LLC v. Return Path, Inc., 737 F.3d 1320, 1326 (Fed. Cir. 2013).   As Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp., 2 F. Supp. 3d 1306, 1318 (N.D. Ga. 2014) stated:

> The Federal Circuit divided e-discovery costs into three categories: (1) the cost of "imaging" hard drives containing ESI and processing that single-file "image" to extract individual documents with their original properties and metadata intact; (2) the cost of organizing the extracted documents into a database and then indexing, decrypting, de-duplicating, filtering, analyzing, searching and reviewing those documents to determine which are responsive; and (3) the cost of copying responsive documents onto DVDs or the like for delivery to the requesting party.

Akanthos, 2 F. Supp. 3d at 1314 (citing CBT Flint Partners, LLC v. Return Path, Inc., 737 F.3d 1320 (Fed. Cir. 2013)).   The first

category is "mostly" taxable, the second category is "mostly" nontaxable, and the third category is taxable. <u>Id.</u> <u>See also</u> <u>Deere & Co. v. Duroc LLC</u>, 650 F. App'x 779, 782 (Fed. Cir. 2016) (e-discovery costs incurred in procedures required by a ESI Agreement can come within the scope of § 1920). Generally speaking, "while the costs of digitizing paper documents and making duplicates of electronic documents are recoverable, many of the other costs associated with e-discovery (such as creating and maintaining a dynamic, indexed, and searchable database) are not recoverable." <u>HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.</u>, No. 6:14-CV-2004-ORL-40KRS, 2018 WL 1863778, at *10 (M.D. Fla. Mar. 26, 2018), <u>report and recommendation adopted</u>, No. 6:14-CV-2004-ORL-40KRS, 2018 WL 1863779 (M.D. Fla. Apr. 13, 2018).

In this case, defendant argues that there are several categories of allowable electronic discovery costs, including formatting, extraction while preserving all associated metadata, the creation of load files. (Doc. #741, p. 11 n.9) (citing <u>Procaps v. Patheon Inc.</u>, No. 12-24356-CIV, 2016 WL 411017, at *12-13 (S.D. Fla. Feb. 2, 2016)). In the September 21, 2015 Case Management Report (Doc. #86, ¶ IV.G), the parties indicated that they would be entering into an agreement to govern the production of electronically stored information. The e-discovery costs are listed by date and amount. (Doc. #715, Exh. 4, p. 51.) The

following e-discovery costs, billed at a rate of $275.00 an hour or at a unit price by DTI[2], are sought:

| Invoice Date | Description | Amount Sought |
|---|---|---|
| 10/31/2015 | Data Collection at Client Site, Remote Email Collection, Mobile/Tablet Collection, and Data Collection at DTI Site | $24,600.00 |
| 11/30/2015 | Data Ingestion, Scanning E-work – Glass work, Scan B/W 8.5x11, OCR, Project Management | $7,504.04 |
| 12/31/2015 | Project Management, Data Ingestion, Technical Time, Data Collection at Client Site, Project Management | $2,417.00 |
| 2/16/2016 | Hard Drive (Pictera Solutions) | $159.00 |
| 2/29/2016 | Monthly Storage Fee, Loading Fee, Image Endorsement, OCR Conversion, PDF Conversion, Native Document Export, Native Production Export, Project Management, Data Extraction, CD Media | $5,218.76 |
| 3/31/2016 | Loading Fee, Image Endorsement, OCR Conversion, Hard Drive Media, Native Production/Export, Project Management, Data Extraction | $6,311.90 |

---

[2] The 2/16/2016 Invoice is from Pictera Solutions as identified in the Chart. (Doc. #715, p. 69.)

| | | |
|---|---|---|
| 4/30/2016 | Loading Fee, Project Management | $3,162.20 |
| 5/31/2016 | Loading Fee, Project Management, OCR Conversion, Hard Drive Media, Native Production/Export, Drive Imaging at Client Site, Hard Drive Media, Data Extraction, Scanning BW, OCR | $6,092.19 |
| 6/30/2016 | Loading Fee, Project Management, PDF conversion Hard Drive Media, Data Ingestion, Data Extraction | $20,420.06 |
| 9/30/2016 | Loading Fee, Project Management | $757.40 |
| 10/31/2016 | Loading Fee, Image Endorsement, Native Exports, OCR Conversion, PDF Conversion, Subset/TIFF Conv, Project Management | $4,555.59 |
| **TOTAL:** | | $81,198.14 |

(Id., pp. 52-69.)

Defendant submits that her costs follow the amounts allowable, however most of the detailed costs are for the convenience of counsel, i.e., conversions, or management by the hired company for review by counsel. The actual electronic copies must be limited to data ingestion or extraction as a substitute for physical copying. Therefore, the only allowable "copying" costs are those for data ingestion on 11/30/2015 ($3,190.00), data ingestion on 12/31/2015 ($740.00), the native document export and

production export ($946.22) and CD Media ($225.00) on 2/29/2016, the hard drive media and native production/export on 3/31/2016 ($1,690.00), the hard drive media and native production/export on 5/31/2016 ($1,770.00), hard drive media and data ingestion on 6/30/2016 ($3,750.00), native exports on 10/31/2016 ($129.50), and the hard drive invoiced by Pictera Solutions ($159.00). This provides for a sum total of **$12,599.72**.

A total of **$22,199.67 in costs** will be taxed in favor of defendant pursuant to Rule 54(d).

### III. Attorney's Fees and Expenses

#### A. Rule 37(d)

Defendant seeks attorney's fees and expenses as a sanction pursuant to Fed. R. Civ. P. 37(d) for the failure of plaintiff's counsel to attend properly noticed depositions.

The depositions of Glenn Kennedy and Absolute East West Fund were noticed and scheduled by defendant. (Doc. #692, ¶ 57.) A motion for protective order was filed by plaintiffs, and the Magistrate Judge cancelled the deposition of Absolute East West Fund pending resolution of the motion. (Id., ¶¶ 61-62.) The parties reached an agreement to reschedule Mr. Kennedy's deposition for a later date. (Id., ¶¶ 64-65.)

Thereafter, while the motion for protective order remained pending, defendant served notices of depositions for the Absolute Activist Value Master Fund, the Absolute Germany Fund, and the

Absolute India Fund.  (Id., ¶ 71.)  Plaintiffs notified counsel

for defendant that "No witness will appear."  (Id., ¶ 72.)

Plaintiffs wrote a letter objection to defendant's counsel asking

that the improper notices be withdrawn, but did not file a second

motion for protective order with the Court.  (Id., ¶ 75.)  Despite

actual notice of an intent not to appear, "an associate from the

Fox Rothschild firm in Philadelphia prepared for the depositions;

sent two boxes of materials by express mail to Ft. Myers; flew to

Florida on January 23; stayed overnight at a hotel; traveled

locally; appeared at the January 24 'deposition'" of one of the

Funds, ready to go, but only to note on the record the non-

appearance of the Fund before returning.  (Doc. #738, p. 27.)

Defendant seeks her costs and attorney fees associated with

the failure of plaintiffs to attend the depositions.   The

pertinent portion of Rule 37 provides:

> (d) Party's Failure to Attend Its Own
> Deposition, Serve Answers to Interrogatories,
> or Respond to a Request for Inspection.
>
> (1) In General.
>
> (A) Motion; Grounds for Sanctions. The court
> where the action is pending may, on motion,
> order sanctions if:
>
> (i) a party or a party's officer, director, or
> managing agent--or a person designated under
> Rule 30(b)(6) or 31(a)(4)--fails, after being
> served with proper notice, to appear for that
> person's deposition; or
>
> . . .

(B) Certification. A motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action.

(2) Unacceptable Excuse for Failing to Act. A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c).

(3) Types of Sanctions. Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(d).

The amount that plaintiffs may be ordered to pay for failure to attend their own deposition is "reasonable expenses, including attorney's fees". Taylor v. Taylor, 133 F. App'x 707, 709 (11th Cir. 2005). "Substantially justified means that reasonable people could differ as to the appropriateness of the contested action." Maddow v. P&G Co., 107 F.3d 846, 853 (11th Cir. 1997) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)).

Plaintiffs' motion for protective order regarding the cancelled depositions was granted in part, and Absolute East West Fund Limited was required to designate in writing an individual to

testify on the permitted topics.  (Doc. #679.)  Exactly one week later, plaintiffs moved to dismiss the last remaining count without prejudice.  Based on these facts, plaintiffs argued that there was not a reasonable basis for the failure to appear.  While plaintiffs did not file a second motion for protective order, defendant also did not file a motion for sanctions after plaintiffs failed to appear at the scheduled depositions.  Of course, the voluntary dismissal intervened before defendant had an opportunity to pursue the matter.

Defendant argues that even if a motion for a protective order had been pending, this does not relieve the duty to appear for other noticed depositions, and plaintiffs did not even try to get a protective order.  Plaintiffs argue that refusing to appear at improperly noticed depositions does not warrant sanctions.

Defendant incurred costs in the amount of $28,200.86 as a result of plaintiffs' failure to attend the depositions.  (Doc. #742, ¶ 28.)  If plaintiffs were planning to dismiss the action, an effort should have been taken to avoid the unnecessary cost to defendant.  Travel-related expenses for the depositions that were not attended by plaintiffs are listed as $4,018.51, however the numbers do not add up to explain the discrepancy in the amount of legal fees ($22,729) plus expenses, and the total provided.  (Doc. #714-17, Exh. Q.)  Counsel charged hourly rates ranging from $390

an hour to $595 an hour, and billing records were not provided. (Doc. #714-29, ¶ 6.)

Plaintiffs argue that the amounts should be denied as they are unsupported, and much of the fees are for preparation and not as a result of the failure to appear. (Doc. #738, pp. 29-30.) Defendant declined to provide billing records to verify the sums until such time as the Court requested the unredacted billing records for an in camera review. (Doc. #714, ¶ 27 n.2.) The Court is not inclined to carry the burden to aid defendant's collection efforts for an amount that greatly exceeds any reasonable attorney's fees that would have been incurred for the failure to appear. The Court will allow the messenger services, the air travel, the taxi/Uber expenses, and the hotel. The Court will also allow a portion of the meals for a total of $80. (Doc. #714-17, Exh. Q.) The Court declines to award the translation fees that were unrelated to the appearance of the deponents. Therefore, the Court will award **$886.60** in expenses for the failure to appear.

### B.   Inherent Authority

Defendant argues that attorney fees and costs should be imposed as a sanction pursuant to the Court's inherent authority to do so. Absent statutory authority or an enforceable contract, recovery of attorney fees by even a "prevailing party" is ordinarily not permitted under the "American Rule." <u>Alyeska</u>

Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975);

Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human

Res., 532 U.S. 598, 602 (2001).

Defendant alleges bad faith conduct on the part of plaintiffs

justifying an award of attorney fees and expenses on top of taxable

costs.  "As document discovery and motion practice continued in

this Action, Ms. Devine learned that Plaintiffs' collaboration

with the Swiss government continued throughout this litigation and

even after the dismissal of Plaintiffs' suit."  (Doc. #741, p. 5.)

Defendant argues that even if some merit existed, the case was

about harassment and that the Court is "well within its authority

to impose sanctions, including attorneys' fees" for plaintiffs'

conduct.  (Doc. #741, p. 21.)

> Courts have the inherent power to police those
> appearing before them.  Chambers v. NASCO,
> Inc., 501 U.S. 32, 46 (1991).  A court's
> inherent power is "governed not by rule or
> statute but by the control necessarily vested
> in courts to manage their own affairs so as to
> achieve the orderly and expeditious
> disposition of cases."  Id. at 43 (citing Link
> v. Wabash R.R., 370 U.S. 626, 630-31 (1962)).
> This power "must be exercised with restraint
> and discretion" and used "to fashion an
> appropriate sanction for conduct which abuses
> the judicial process."  Id. at 44-45.  A court
> may exercise this power "to sanction the
> willful disobedience of a court order, and to
> sanction a party who has acted in bad faith,
> vexatiously, wantonly, or for oppressive
> reasons."  Marx v. Gen. Revenue Corp., 568
> U.S. 371, 382 (2013) (citing Chambers, 501
> U.S. at 45-46).  The dual purpose of this
> power is to vindicate judicial authority
> without resorting to a contempt of court

> sanction and to make the prevailing party
> whole. See Chambers, 501 U.S. at 46. The key
> to unlocking a court's inherent power is a
> finding of bad faith. See Sciarretta [v.
> Lincoln Nat. Life Ins. Co., 778 F.3d 1205,
> 1212 (11th Cir. 2015)].

Purchasing Power, LLC v. Bluestem Brands, Inc., 851 F.3d 1218, 1223 (11th Cir. 2017). As noted by plaintiffs, defendant cites to an objective standard applied under 28 U.S.C. § 1927 and Rule 11, however a different standard is applied for inherent power sanctions, i.e., a subjective bad-faith standard. Id. at 1223.

Although defendant continually raises this theory of bad faith and collusion, there is insufficient information to support the imposition of sanctions, even if plaintiffs were working with the Swiss government or collecting data for discovery in related cases. The high standard of finding bad faith cannot be met in the absence of fraud on the Court, proof of forum shopping, unreasonable and vexatious multiplying of proceedings, pursuing a case barred by the statute of limitations, or purposely vexatious behavior as exhibited in Purchasing Power and the several cases cited by defendant. (Doc. #741, p. 21.) This case did not arise to this level by any stretch of the imagination, and the Court will decline to impose such extraordinary sanctions in this case.

## C. Florida RICO

Defendant seeks to have the Court impose all reasonable attorney's fees and court costs under the statute, and not only those associated with Florida's RICO claim. (Doc. #741, p. 34,

n.34.)   A party is entitled to reasonable attorney's fees and court costs if it "proves by clear and convincing evidence that he or she has been injured by reason of any violation of" the Civil Remedies for Criminal Practices Act, commonly referred to as Florida's RICO statute.   Fla. Stat. § 772.104(1) (2006).   "The defendant shall be entitled to recover reasonable attorney's fees and court costs in the trial and appellate courts upon a finding that the claimant raised a claim which was without substantial fact or legal support."   Fla. Stat. § 772.104(3) (2006)[3].   "The intent of the Florida legislature in adopting this less stringent standard was 'to discourage frivolous RICO claims or claims brought for the purpose of intimidation because the stigma and burden of defending such claims is so great.'"   Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc., 162 F.3d 1290, 1330-31 (11th Cir. 1998) (citation omitted).   "[A]n action is 'substantially justified' for the purpose of attorney's fees where it advances in good faith a novel but credible extension or interpretation of the law."   Beck v. Olstein, 588 So. 2d 317, 318 (Fla. 3d DCA 1991) (citation omitted).

In the Opinion and Order granting a temporary restraining order, the Court found that the evidence showed a common purpose

---

[3] The previous version of this statute placed this language in the first paragraph.   See Fla. Stat. § 772.104 (1997).   This language was simply moved to a separate paragraph in the current version of the statute.

to conceal the Penny Stock Scheme proceeds for the benefit of their children, bank records showed that defendant ordered certain transfers for the same purpose, and that plaintiffs "are substantially likely to establish an association-in-fact enterprise." (Doc. #10, p. 53.) The Court noted it was "likely that the transactions involved the proceeds of statutorily specified unlawful activity", and that it was "also likely that Devine knew the proceeds were derived from some form of illegal activity." (Id., p. 55) (citations omitted). The Court found that defendant "likely knew that a purpose of the transactions was to conceal or disguise the nature, location, source, ownership, or control of the proceeds." (Id., p. 56.) The Court concluded that plaintiffs could establish that defendant conducted numerous money laundering transactions, and could demonstrate a substantial likelihood of success on the merits of the RICO claims. (Id., pp. 58-59.) The Court continued to find that the claims were viable in denying defendant's Motion to Dissolve Temporary Restraining Order. (Doc. #368.)

On July 19, 2016, the Magistrate Judge set a briefing schedule to address the effect of RJR Nabisco, Inc. v. European Cmty., 136 S. Ct. 2090 (2016) on the pending motions. (Doc. #424.) In deciding the Motion to Dismiss, the Court noted that many acts of misconduct were alleged to have taken "place entirely outside the United States and therefore cannot form the basis of RICO

recovery." (Doc. #521, pp. 56, 60.) "Given the intervening decision in RJR Nabisco Inc.", the Court allowed plaintiffs to file a second amended complaint "to state plausible RICO claims", and declined to address the remaining arguments. The federal and Florida RICO claims were dismissed without prejudice. (Id.) A Second Amended Complaint (Doc. #560) was filed on May 15, 2017, only seeking relief for unjust enrichment. As a result, the temporary restraining order was dissolved. (Doc. #575.) The Court granted partial judgment in favor of defendants on the abandoned claims deeming them dismissed with prejudice. (Doc. #707.)

The Court cannot find that defendants raised a claim without substantial fact or legal support. It appeared that the injury to plaintiffs was only extraterritorial but even with the intervening case of RJR Nabisco Inc., the Court provided an opportunity to amend. Plaintiffs advanced a theory for a violation of Florida's RICO in good faith. This was not a directed verdict, summary judgment, or even a dismissal on the merits even if it was ultimately a dismissal with prejudice. The motion for attorney's fees will be denied.

**D. Damages on Temporary Restraining Order Bond**

Defendant argues that the decision to abandon this case only after causing her to incur millions in legal fees "reveals" that plaintiffs acted in bad faith. Defendant further argues that the

temporary restraining order "foisted serious financial" hardships on her. (Doc. #741, p. 17.) Defendant argues that the bond amount was considerably less than the costs and fees that she incurred, and she should be awarded damages on the bond amount. Plaintiffs respond that the injunction was only dissolved after an intervening change in the law resulted in the dismissal of the RICO claims, and not because it should not have been issued in the first place.

An injunction may issue only if the movant gives security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "[A] prevailing defendant is entitled to damages on the injunction bond unless there is a good reason for not requiring the plaintiff to pay in the particular case." State of Ala. ex rel. Siegelman v. United States EPA, 925 F.2d 385, 390 (11th Cir. 1991) (citing Coyne-Delany Co. v. Capital Dev. Bd. of Illinois, 717 F.2d 385, 391 (7th Cir. 1983)).

On April 19, 2016, the Court issued an Opinion and Order (Doc. #368) denying requests to dissolve the temporary restraining order. A year later, on July 25, 2017, after dismissal of all the federal claims, the Court dissolved the temporary restraining order. (Doc. #575.) Even without records of the damages incurred by defendant as a result of the bond, the Court finds good reason

to not require the payment of damages by plaintiffs on the bond. The injunction was properly granted, and it was timely dissolved after it was no longer appropriate. The motion will be denied.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendant's Motion for Award of Costs and Fees (Doc. #713 and Doc. #741) is **GRANTED in part and DENIED in part.** Defendant is awarded a total of **$22,199.67** in taxable costs ($10.00 in docketing fees, $260 in service fees, $495.95 for transcripts, $8,674.00 for depositions, $160 for witness fees, and $12,599.72 for electronic copying), and **$886.60** in non-taxable expenses. The motion is otherwise denied.

2. Defendant shall submit a revised Bill of Costs to the Clerk of Court.

3. The Clerk shall tax costs pursuant to the revised Bill of Costs upon receipt, and also enter judgment awarding in favor of defendants for the $886.60 in expenses under Fed. R. Civ. P. 37(d).

**DONE and ORDERED** at Fort Myers, Florida, this __1st__ day of August, 2019.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record

- 34 -